UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC U.S.A., INC. and UNILOC SINGAPORE PRIVATE LIMITED, Plaintiffs, v. MICROSOFT CORPORATION, Defendant. | Civil Action No. 03-CV-440 (WES) |

**APPLICATION FOR A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (MR. CARY DREELAN)**

Defendant Microsoft Corporation ("Microsoft") hereby applies to the Court for issuance of a Letter Of Request For International Judicial Assistance ("Letter of Request") to conduct the deposition of Mr. Cary Dreelan pursuant to Federal Rule of Civil Procedure 28(b) and the laws of Australia and South Australia. Rule 28(b) provides that letters of request shall be issued on application and notice and on terms that are just and appropriate. Attached as Exhibit A to this memorandum is a proposed Letter of Request for submission to the Supreme Court of South Australia.

Plaintiffs Uniloc U.S.A., Inc. and Uniloc Singapore Private Limited ("Uniloc"), brought this patent infringement suit against Microsoft Corporation ("Microsoft") for infringement of U.S. Patent No. 6,490,216 (the '216 patent) issued to Fredric B. Richardson and entitled "System For Software Registration" on September 26, 2003. Uniloc has identified Mr. Dreelan in its Rule 26(a)(1) initial disclosures as an individual who may have knowledge and information concerning the structure, function, operation, and use of the subject matter disclosed and claimed in the '216 patent, and Microsoft understands that he was the first person to build a working

embodiment of the technology in the '216 patent. Documents provided by Uniloc and statements made by the inventor of the '216 patent, Mr. Richardson, indicate that Mr. Dreelan was at least partially responsible for the development of Uniloc's technology. Mr. Dreelan's knowledge of the facts surrounding the development of Uniloc's patented technology is highly relevant to the parties' claims and defenses. For example, Mr. Dreelan will very likely have knowledge related to the conception and reduction to practice of the invention described in the '216 patent, embodiments of the '216 patent, the prior art to the '216 patent, and efforts to commercialize the technology in the '216 patent. The facts and circumstances surrounding Mr. Dreelan's work may be highly relevant to issues ranging from the damages available to Plaintiffs to the noninfringement, invalidity, and unenforceability of the '216 patent.

The United States and Australia are both signatories to the Hague Convention. *See* Hague Convention on the Taking of Evidence in Civil or Commercial Matters, Oct. 7, 1972, 23 UST 2355 (herein the "Convention"). Under Article 1 of the Convention, a judicial authority of the United States may request the competent authority in Australia to compel witness testimony for use at trial by means of a letter of request. The State of South Australia, in which Mr. Dreelan resides, has implementing legislation for the taking of evidence pursuant to letters of request from foreign tribunals. Issued letters of request must be addressed to the Registrar of the Supreme Court of South Australia, and may be submitted through an Australian attorney. In addition to the letter of request, the Australian attorney submits a summons and a supporting affidavit along with the issued letter of request to the Supreme Court of South Australia.

In order to commence proceedings to consider a letter of request in the Supreme Court of South Australia, a party must either nominate local counsel in Australia, or request that the office of the Attorney General of South Australia commence the proceedings. In the interests of time

and conservation of the Attorney General's resources, Microsoft requests that local counsel, John Swinson of the law firm of Mallesons Stephen Jaques in Brisbane, Australia, be nominated to commence proceedings to consider the Letter of Request on behalf of Microsoft.

Attached as Exhibit A to this Application is a proposed Letter of Request adhering to the requirements of the Convention and Australian law, including the subjects for which testimony is sought from Mr. Dreelan.

Microsoft respectfully requests that the Court grant Microsoft's Application for a Letter of Request for International Judicial Assistance. If this application is granted, Microsoft will thereafter transmit the issued Letter of Request via local counsel the Registrar for the Supreme Court of South Australia.

Dated: July 11, 2005

By: Frank E. Scherkenbach (by Scott V. Campbell)

Frank E. Scherkenbach
Kurt L. Glitzenstein
Fish & Richardson, P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Of Counsel:

Isabella E. Fu, Esq.
MICROSOFT CORPORATION
One Microsoft Way
Redmond, WA 98052-6399
Telephone: (425) 882-8080
Facsimile: (425) 936-7329

Attorneys for Defendant
MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

I certify that on July 11, 2005 I caused a true and correct copy of the foregoing APPLICATION FOR A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (MR. CARY DREELAN); and, LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (MR. CARY DREELAN) to be served as follows:

Francis A. Connor, III
Jennifer L. Buckley
Taylor Duane Barton & Gilman, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903

Attorneys for Plaintiffs
UNILOC USA, INC. and UNILOC
SINGAPORE PRIVATE LIMITED

(via hand delivery)

Paul J. Hayes
Dean G. Bostock, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111

Counsel for Plaintiffs
UNILOC USA, INC. and UNILOC
SINGAPORE PRIVATE LIMITED

(via overnight delivery)



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC U.S.A., INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Civil Action No. 03-CV-440 (WES) |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**

**(MR. CARY DREELAN)**

TO THE REGISTRAR OF THE SUPREME COURT OF SOUTH AUSTRALIA, ADELAIDE SA 5001, AUSTRALIA:

The United States Federal District Court for the District of Rhode Island hereby presents this Letter Of Request For International Judicial Assistance ("Letter of Request") to the Supreme Court of South Australia for its assistance in obtaining testimony from Mr. Cary Dreelan for use at trial in the above-captioned matter *Uniloc U.S.A., Inc. and Uniloc Singapore Private Limited v. Microsoft Corporation*, Civil Action No. 03-CV-440 (WES), currently pending in this Court. This request is being made pursuant to Rule 28 of the United States Federal Rules of Civil Procedure and the Laws of Australia and South Australia, and the Hague Convention on the Taking of Evidence in Civil or Commercial Matters, Oct. 7, 1972, 23 UST 2355 (herein the "Convention").

Plaintiffs Uniloc U.S.A., Inc. and Uniloc Singapore Private Limited ("Uniloc"), brought this patent infringement suit against Microsoft Corporation ("Microsoft") for infringement of U.S. Patent No. 6,490,216 (the '216 patent) entitled "System For Software Registration" on

September 26, 2003. In its complaint, Uniloc alleges that Microsoft has infringed the '216 patent by making, using, and selling products using Microsoft's Product Activation technology. Microsoft has filed a counterclaim for judgment that it does not infringe the '216 patent, and that the '216 patent is invalid and unenforceable.

In the United States, the circumstances surrounding the conception and first reduction to practice of a patented invention, as well as the design and operation of embodiments of the patent, can be highly relevant to the validity of a patent, its interpretation, and its infringement. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *Lamoureux v. Genesis Pharm. Services, Inc.*, 226 F.R.D. 154, 160 (D. Conn. 2004); *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Dow Chemical Co. v. Astro-Valcour, Inc.*, 110 F. Supp. 2d 104, 106 (N.D.N.Y. 2000). In addition, the circumstances surrounding the commercialization, marketing and distribution of a patented article are relevant to the validity of the patent, and a plaintiff's potential recovery. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1564 (Fed. Cir. 1995); *Wahl Instruments, Inc. v. Acvious, Inc.*, 950 F.2d 1575, 1581 (Fed. Cir. 1991); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 829 (Fed. Cir. 1991).

Uniloc has identified Mr. Dreelan in its mandatory initial disclosures as an individual who may have knowledge and information concerning the structure, function, operation, and use of the subject matter disclosed and claimed in the '216 patent.

Defendant Microsoft has requested that this Court issue this Letter of Request to obtain the testimony of Mr. Dreelan for the purpose of obtaining his testimony for use at trial regarding the claims and defenses of the parties. In support of this Letter of Request, Microsoft has offered

the following information, set forth in numbered paragraphs, all of which are allegations and are not findings of this Court:

1. Mr. Dreelan was one of the first, if not the first, software programmers employed by two of Uniloc's predecessors, Computrix and Uniloc Corporation. While at Computrix and Uniloc Corporation, Mr. Dreelan was involved in the early development of the technology disclosed by the '216 patent along with the named inventor of the '216 patent, Fredric B. Richardson.

2. Upon information and belief, during a February 8, 2005 telephone conversation with counsel for Microsoft, Mr. Dreelan stated that he designed and built the first version of the system embodying the subject matter of the '216 patent. Mr. Dreelan also stated that he conceived and developed functions that improved Uniloc Corporation's technology.

3. Documents provided by Plaintiffs indicate that Mr. Dreelan was at least partially responsible for the development of Uniloc's technology. [*See* UNILOC 531-32, Ex. B.] On information and belief, Mr. Dreelan is the "programmer" referenced in the statement "[t]ogether with his programmer, [Mr. Richardson] seems to have developed a unique method of copy protection and distribution for software" found on the page designated UNILOC 531.

4. Mr. Dreelan's knowledge of the facts and circumstances surrounding the development, design, and manufacture of products embodying the subject matter of the '216 patent may be highly relevant to Microsoft's defenses and counterclaims related to non-infringement, invalidity, unenforceability, and damages available to Plaintiffs.

5. In and around 1993 to 1995, Uniloc Corporation was party to a licensing agreement with IBM for the distribution of software using Uniloc technology embodying the subject matter of the '216 patent. On information and belief, Mr. Dreelan stated during the

February 8, 2005 call that he was employed at Uniloc Corporation while the license agreement with IBM was in effect.

6. Mr. Dreelan's knowledge of events and circumstances related to Uniloc's efforts to commercialize the technology of the '216 patent is directly relevant to issues including the damages recovery available to Plaintiffs, and the invalidity of the '216 patent.

Microsoft has applied to this Court for issuance of this Letter of Request for the purpose of obtaining Mr. Dreelan's testimony responsive to the topics of examination attached as Exhibit A to this Letter of Request.

This Court requests that you compel the appearance of Mr. Dreelan at a convenient location to obtain testimony under oath for use at trial in the above-captioned judicial proceeding. This Court also requests that the parties to this lawsuit be notified of the time and location of the execution of this Letter of Request so that they may attend the deposition. In addition, this Court requests that U.S. counsel to the parties be allowed to conduct the examination of the witness before a competent person appointed or authorized by you for that purpose.

This Court also requests that a stenographer and/or videographer be permitted to attend the oral deposition to transcribe and record Mr. Dreelan's testimony for use at trial. If permitted, Microsoft shall arrange for the attendance of a stenographer and/or videographer at the deposition. This Court also requests that the parties be permitted to arrange for a notary public or justice of the peace to administer an oath to Mr. Dreelan similar to that administered in U.S. practice. In addition, this Court requests that Mr. Dreelan review and sign the transcript of his testimony indicating that the testimony is his own, and that he make any necessary corrections to the transcript at that time. Upon execution, the executed request is to be returned to counsel for

the defendant, John Swinson, Mallesons Stephen Jacques, Level 30, Waterfront Place, 1 Eagle Street, Brisbane QLD 4000, Australia.

Mr. Dreelan's current home address and contact information is as follows:

84a River Drive
Athelstone, SA 5076, Australia
Tel: +61 8 8336 4643
Email: cary@groundhog.com.au

The parties to this case may be contacted through their respective counsel of record in the United States. For Defendant Microsoft:

Frank E. Scherkenbach
Kurt L. Glitzenstein
Fish & Richardson, P.C.
225 Franklin Street
Boston, Massachusetts 02110

For Plaintiff Uniloc:

Paul J. Hayes
Dean G. Bostock
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111

Microsoft's Australia solicitor:

John Swinson
Mallesons Stephen Jaques
Level 30, Waterfront Place
1 Eagle Street
Brisbane QLD 4000, Australia
Tel: +61 7 3244 8000
Fax: +61 7 3244 8999

This Court requests that Microsoft, by its Australian solicitor, Mr. John Swinson, of Mallesons Stephen Jaques (or if Mr. Swinson is unavailable, another partner of Mallesons Stephen Jaques) be nominated for the purpose of commencing proceedings under Rules 79.01 - 79.07 of the

Rules of the Supreme Court of South Australia (*Supreme Court Rules* 1987 (SA)) with respect to this Letter of Request.

The United States District Court for the Northern District of California extends to the appropriate judicial authority of the Courts of South Australia the highest consideration for its courtesy and assistance in this matter.

| | |
|---|---|
| ______________________<br>Date | ____________________________<br>Judge William E. Smith<br>United States District Judge |
| | ____________________________<br>Clerk of the Court |

**EXHIBIT A**

**Topics for Examination of Mr. Dreelan:**

1 Initial development of Uniloc's patented technology:

1.1 Prior art to Uniloc's patented technology;

1.2 The conception of Uniloc's patented technology;

1.3 The first reduction to practice of an embodiment of Uniloc's patented technology;

1.4 Mr. Dreelan's role in, or contribution to, the development of Uniloc's patented technology;

1.5 Mr. Richardson's role in, or contribution to, the development of Uniloc's patented technology;

1.6 Others' role(s) in, or contribution to, the development of Uniloc's patented technology;

1.7 Conversations regarding the development of Uniloc's patented technology;

1.8 Other similar technologies available at the time Uniloc's patented technology was first conceived, reduced to practice, and patented;

1.9 Identities of other possible inventors of Uniloc's patented technology;

1.10 Identities of individuals involved in the initial development of Uniloc's technology;

2 The '216 patent:

2.1 The design and manufacture of products embodying Uniloc's patented technology;

2.2 Conversations regarding the '216 patent;

2.3 Conversations regarding patent applications for subject matter related to the '216 patent;

2.4 Conversations with Mr. Richardson regarding the technology disclosed in the '216 patent;

2.5 The manufacture of embodiments of the '216 patent;

2.6 The sale and marketing of embodiments of the '216 patent;

2.7 The structure, function, operation, and use of the subject matter disclosed and claimed in the '216 patent;

3 The IBM license agreement:

3.1 The identity of individuals from Uniloc involved in the negotiations leading to the licensing agreement with IBM;

3.2 The circumstances surrounding the execution of the IBM licensing agreement;

3.3 The identity of individuals from IBM involved in the negotiations leading to the licensing agreement with IBM;

3.4 Uniloc's performance under the licensing agreement;

3.5 IBM's performance under the licensing agreement;

3.6 The reasons for the termination of the IBM license agreement.

To Stephen Conwell

australian intellectual property law bulletin

intellectual property laws are formly designed to provide tection to artists, inventors and er creative people. The reason providing this protection is to courage those creative people nd those who will come after em) to develop and to keep veloping objects in their area of pertise and to provide a echanism for them to be roperly compensated for sharing e fruits of their labour with the est of the world.

One question therefore is whether or not copyright rotection achieves this goal for oftware. Another question is whether there is any reason for oftware to be treated differently o any other patentable subject natter.

The latter question appears to e the easiest to answer; there eems to be absolutely no reason why this should be. Provided that oftware can meet all the tests which apply to any patent, why houldn't it be afforded the same protection? The first question is more problematic and involves the lassic lawyers answer: "it depends".

In the overwhelming majority of cases the only protection vailable is copyright; if that protection is not adequate we eed a whole new intellectual property regime – a discussion which is well beyond the scope of his paper. If someone writes a ew program to handle the "accounts receivable" of an organisation, it should be enough hat the actual code which is written is protected and this is a ob which is adequately handled by copyright (subject of course to he look and feel debate).

There are, however, a few cases where patent protection may e available and copyright protection does not provide a wide enough protection. Perhaps this can best be illustrated by reference to a practical example involving a client of mine.

### Uniloc

Ric Richardson is now the managing director of Uniloc Corp Pty Ltd. In September 1992, he was the developer and salesman of TrueTime, a software product for musicians. The market was relatively small and difficult to access, so Ric considered alternative ways of getting his product on the market. Together with his programmer, he seems to have developed a unique method of copy protection and distribution for software.

The UnilocTM program can be added to any existing application program without degradation of function as Uniloc takes only approximately 15k. So far it is only available for Macintosh, but versions for the PC and other platforms of Uniloc are planned.

Once Uniloc has been added to an application, the application can be used only when the user has obtained a registration number from the copyright owner (or his or her agent). The registration number is supplied in return for details of the user and, of course, credit card details so that the appropriate charge can be levied.

So far it probably sounds like a number of registration/authorisation systems used in the past, usually by hardware vendors with their proprietary software. The beauty of Uniloc though (and the really inventive step) is that the authorised software can then be copied by other users and automatically reverts to being locked once they try to use it. However, the software can be unlocked again by the new user using the same process which unlocked it in the first place. This process can be repeated as often as needed.

Once an application has been subjected to Uniloc it becomes CopywareTM. That is, it becomes software which can be freely and legally (within the terms of a licence) copied and distributed to as many people as desired.

In fact, users can be encouraged to copy software and give it to their friends and colleagues; only those who pay for it will be able to use it. In this sense Copyware is the ultimate shareware.

Therefore, not only does Uniloc facilitate the distribution of software, it provides an effective method of combating piracy. All previous locking systems for software involved a hardware element. Apart form being cumbersome, such methods were not always reliable, something which was graphically illustrated in *Autodesk v Dyason* (1992) AIPC 90-885

Uniloc is extremely flexible. Not only can software be authorised for unlimited use, it can be rented for a short time to allow a full trial by a user deciding whether or not the software is really what they want. If necessary it can also be applied to data.

The effect that Uniloc will have on software distribution remains to be seen. It is, however, easy to imagine CD-ROM's full of software being available for the cost of the disc. At the other end of the scale, developers can simply release their software into the market (without the expense of arranging distributors) and let the market render a verdict. Like all revolutions it's hard to predict just where it will go.

When Ric came in, there was no question in my mind but that he should apply for a patent. So far as I was aware, and nothing in the intervening period has changed my initial perception, no one had ever offered this before. ➤



UNILOC 531

australian intellectual property law bulletin

➤ Now that Uniloc is being used and Copyware is being registered on a daily basis, others may well see the value of this invention. Some of those people will quite easily be able to divine the method of operation of Uniloc. They can write systems which have the same function without ever seeing the source code for Uniloc or even so much as a flow chart of its logic. There would be no need; the mere fact that Uniloc works, means that others can direct their efforts in the same direction secure in the knowledge that there is a solution to the problem.

This brings us back to our initial questions: does copyright provide adequate protection for this invention and should Ric be able to register a patent for Uniloc?

1. Clearly copyright does not provide sufficient protection. Unless we are successful in achieving patent protection, Uniloc Corp can expect that others with greater resources will be able to set up and run the all important authorisation centres. With patent protection however, Ric can expect to be rewarded for his inventiveness for 16 years. The size of these rewards may be large but they will depend upon the computer market. People have, until now, got along very well without copyware, and if the price for its use is not competitive it will not earn anything.

2. In answer to the second question, the fact that Ric's invention does not involve any hardware is the most inventive part of the system. It would be strange indeed, if Ric were to be penalised for being truly creative and solving a problem in a way which no one had previously thought to be possible.

### *Spreadsheets*

The contrary view can also be illustrated by reference to an example: should Mitch Kapor, the man who is reputed to have invented the spreadsheet, have applied for a patent? If he had obtained a patent would that have been in the interests of the computer industry or the world at large?

Spreadsheets have been a boon to industry and form the basis of many modern management systems. They have allowed complicated "what if" analyses ("what if the interest rates change?", "what if we give a 5 per cent wage rise") to be performed with absolute ease. If spreadsheets were not widely available wouldn't that hinder industry generally?

The first point to make with this example is that according to the patent attorney closely associated with the IBM case, even under the liberalised position following that case, spreadsheets would still not qualify for patent protection as they are merely a computerised version of something which accountants have been doing since time immemorial (F Old, Paper to NSW Society for Computers and the Law, 3 February 1993).

More fundamentally, however, all the computer-related inventions, as well as an incalculable number of inventions in other areas of endeavour, have been a boon to industry.

Many of these inventions have been the subject of patents which have not hindered their spread into general use (think of the telephone). If the inventors of these items have become rich, this has surely encouraged others to spend the arduous hours of research and testing necessary to provide these items for our use.

## Unfair competition

Before leaving this topic we should examine at least one of the competing proposals. The unfair competition test is grounded in EEC law.

The basic proposition is that one does not consider copyright or patents with respect to software. Instead, one examines a competitive product to see whether its use constitutes unfair competition with the inventor/developer of the initial product. This doctrine would be very useful in a case such as *Autodesk v Dyason* where a court would probably find it easier to find against the respondents than they have using copyright law.

On the other hand, the protection afforded by the doctrine would probably stop far short of the patent protection which should be available for Uniloc. Until such a doctrine has become properly established and well thought out, patent protection will remain the strongest form of protection available to software and a form which will be much sought after.

## Conclusion

Identifying patentable subject matter for computer-related inventions requires a good deal of careful analysis, as well as the education of inventors and a high degree of communication between the inventor and the patent advisers. Many inventors believe that only scientific breakthroughs and technological leaps are patentable; computer scientists and software engineers in particular tend to believe that nothing they do is truly "inventive".

There can never be a "how to" guide in an area such as this, but the following questions may be useful in establishing whether or not a particular invention is patentable and, if it is, will help form the basis of a patent specification. The process could conceivably assist the inventor in new lines of inquiry or to



UNILOC 532