**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNILOC USA, INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED<br>Plaintiffs,<br>vs.<br>MICROSOFT CORPORATION,<br>Defendant. | ) | Civ. A. No. 03-CV-440 (WES) |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF LICENSE AGREEMENT**

Plaintiffs, Uniloc USA, Inc. and Uniloc Singapore Private Limited (together "Uniloc"), hereby respectfully move the Court for an order compelling production by defendant, Microsoft Corporation ("Microsoft"), of a patent license agreement between Microsoft and Intertrust Technologies Corporation. This license agreement relates to the determination of a reasonable royalty measure of damages. Further, it is needed to rebut the opinion of Microsoft's damages expert who relies upon other license agreements entered into between Microsoft and other third parties. For the reasons set forth in the accompanying memorandum of law, Uniloc respectfully requests that this motion be granted.

**CERTIFICATE OF COMPLIANCE WITH FED.R.CIV.P. 37(a)(2)(A)**

The undersigned certifies that Uniloc's counsel has attempted to confer with Microsoft's counsel in a good-faith attempt to secure the relief requested in this motion and that the attempt was not successful.

**UNILOC USA, INC.**
**UNILOC SINGAPORE PRIVATE LIMITED**

Dated: November 16, 2005 By: ______________________________

Francis A. Connor, III (R.I. Bar No. 4640)
Sherri L. Pizzi (R.I. Bar No. 5720)
**TAYLOR DUANE BARTON & GILMAN, LLP**
10 Dorrance Street, Suite 700
Providence, Rhode Island 02903
(401) 273-7171 (Telephone)
(401) 273-2904 (Facsimile)

OF COUNSEL:

Paul J. Hayes, Esq.
Rosemary Allen, Esq. (R.I. Bar No. 5407)
Paul J. Cronin, Esq.
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
(617) 542-6000 (Telephone)
(617) 542-2241 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served on local counsel for Microsoft Corporation, Joseph V. Cavanagh, Esq. of Bliss and Cavanagh, Commerce Center, 30 Exchange Terrace, Providence, Rhode Island 02903, by hand delivery and on national counsel for Microsoft Corporation, Frank R. Scherkenbach, Esq. of Fish & Richardson P.C., 225 Franklin Street, Boston, Massachusetts 02110, by overnight courier on November 16, 2005.

______________________________



LIT 1549813v1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED<br>Plaintiffs,<br>vs.<br>MICROSOFT CORPORATION,<br>Defendant. | Civ. A. No. 03-CV-440 (WES) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF <u>LICENSE AGREEMENT</u>**

Plaintiffs, Uniloc USA, Inc. and Uniloc Singapore Private Limited (together "Uniloc"), respectfully submit this memorandum of law in support of their motion for an Order compelling defendant, Microsoft Corporation ("Microsoft"), to produce a copy of a patent license agreement recently entered into between Microsoft and a third party regarding the very technology at issue in this case. For the reasons set forth below, Uniloc respectfully requests that this motion should be granted.

**<u>BACKGROUND</u>**

This is a patent infringement case in which Uniloc alleges that Microsoft infringes Uniloc's U.S. Patent No. 5,490,216 ("the 216 Patent"). More particularly, Uniloc alleges that certain anti-piracy technology used in numerous well-known Microsoft products such as Windows XP and Office XP infringes the '216 Patent. The accused technology is known as

"Product Activation" and is used to prevent unauthorized and unlicensed use of Microsoft's products. *See* Ex. A. As a remedy for Microsoft's infringement, Uniloc is entitled by statute to no less than a reasonable royalty resulting from Microsoft's unlawful use of the patented technology. *See* 35 U.S.C. § 284. The withheld license is relevant to the determination of the royalty rate.

This is not the first patent case involving Microsoft's Product Activation technology. Microsoft was previously sued by a company known as Intertrust Technologies Corporation ("Intertrust") in the U.S. District Court for the Northern District of California, Civil Action No. C01-1640 SBA. According to Intertrust's website, Microsoft settled that case involving Product Activation by taking a license under Intertrust's patents and paying Intertrust a license fee of $440 million dollars. *See* Ex. B.

As set forth below, prior license agreements entered into by a defendant in a patent case are relevant to the determination of a reasonable royalty because they reflect the value an infringer places upon the accused technology. During discovery, Uniloc requested Microsoft to produce all documents referring or relating to such value. Microsoft, however, has refused to produce a copy of the license agreement with Intertrust.

On October 19, 2005, Microsoft produced to Uniloc copies of various license agreements that it had entered into with third parties. A copy of the Intertrust license agreement was not included with these (presumably self-serving) licenses. As a result, counsel for Uniloc wrote to Microsoft's counsel requesting that the Intertrust agreement be produced or, in the alternative, that Microsoft identify the agreement if it had previously been produced. Ex. C. Microsoft responded on October 24, 2005 stating that the Intertrust agreement is "irrelevant to the claims and defenses of the parties in this case" and that the agreement is "not responsive to Uniloc's

document requests". *See* Ex. D. Counsel for Uniloc responded on October 25, 2005 explaining: (1) the plain relevance of the Intertrust agreement, i.e., the issue of the determination of a reasonably royalty in this case, and (2) that the agreement had been requested long a go in Uniloc's document request number 54. *See* Ex. E. In the same letter, counsel for Uniloc also requested a meet-and-confer on this issue the following day and requested counsel for Microsoft to propose a convenient time for the meet-and-confer. *Id.* Counsel for Microsoft failed to respond to the request for a meet-and-confer. On October 28, 2005 Counsel for Uniloc wrote again to Counsel for Microsoft, noting the absence of any response to Uniloc's prior letter requesting a meet-and-confer, and warning that a motion to compel would be filed together with a request for attorney's fees, if the Intertrust agreement was not produced by the end of business on October 31, 2005. Ex. F. In a letter dated October 31, 2005, counsel for Microsoft again refused to produce the license agreement. Ex. G. Therefore, Uniloc must resort to filing this motion.

The Intertrust agreement should also be produced as it will enable Uniloc to rebut the expert report of Microsoft's damages expert. As set forth below, Microsoft's expert has attempted to minimize the value of Product Activation to Microsoft. Microsoft's expert relies upon two other license agreements submitted with his report. Uniloc wants to use the Intertrust agreement to rebut and/or impeach Microsoft's expert by showing that Microsoft paid Intertrust $440 million for this same technology. The rebuttal report of Uniloc's expert is due to be served on December 8, 2005.

## ARGUMENT

The patent statute provides that a patent owner is entitled to no less than a reasonably royalty measure of damages resulting from the infringement of a patent by the defendant. *See* 35

U.S.C. § 284. At trial, the determination of a reasonable royalty is reached by consideration of the so-called, and well-known, "*Georgia-Pacific*" factors. *See, e.g. Dow Chem. Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) (in determining reasonable royalty, "district court should consider the so-called *Georgia-Pacific* factors").[1] One of the *Georgia Pacific* factors to be considered is "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit". *Georgia-Pacific*, 318 F. Supp. at 1120.

On or around March 1, 2005, Uniloc served the following document request on Microsoft:

**<u>REQUEST NO. 54</u>**

> All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to, the economic and/or financial value that Microsoft has placed and/or places on the accused Microsoft Product Activation technology and/or as a result of Microsoft's deployment, employment, incorporation, license and/or use of such technology in Microsoft's accused products.

*See* Ex. H.[2]

Clearly, the $440 million that Microsoft paid to Intertrust for a license to allow Microsoft to use its Product Activation feature is responsive to this request as it relates to the value that Microsoft has placed on this technology. This document should have been produced to Uniloc months ago.[3]

Microsoft's other excuse for withholding the Intertrust license agreement is that it is not relevant to any issue in the case. This excuse is also wholly without merit. As stated above, Uniloc

---

[1] These factors were originally considered together in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1126 (S.D.N.Y. 1970).
[2] Thus, Microsoft's assertion that the license agreement was not requested is incorrect (as evidenced by the fact that Microsoft has produced numerous other license agreements in this case, including two in support of its damages expert's report).
[3] Microsoft's latest excuse for withholding this agreement is that Uniloc's request for it is untimely. *See* Ex. G. However, Uniloc timely requested such documents in March, 2005.

claims a reasonable royalty measure of damages in this case. A reasonable royalty is determined by applying the *Georgia-Pacific* factors. Two of these factors are "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit" and "[t]he opinion testimony of qualified experts". *See Georgia-Pacific*, 318 F. Supp. at 1120.

Thus, there is "nothing objectionable" about examining other licenses in connection with determining a reasonable royalty. *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1581 (Fed. Cir. 1997). In fact, prior license agreements "carry considerable weight in calculating a reasonable royalty rate". *Dow v. Mee Indus.*, 341 F. Supp. at 1382 n. 4 (quoting *Unisplay S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995)). As a result, the Intertrust agreement that relates to the Product Activation technology at issue in this case is relevant and should be produced.

Uniloc also requests an expedited disposition of this motion. Microsoft served its damages expert report on counsel for Uniloc on November 8, 2005. Uniloc's rebuttal damages report is due to be served on counsel for Microsoft on or before December 8, 2005. Microsoft's damages expert (Mr. Napper) relies upon two license agreements in support of his opinion. These two license agreements are between Microsoft and two third parties. Uniloc's damages expert (Mr. Gemini) should be allowed to rely upon other Microsoft agreements in rebutting Mr. Napper's report. Mr. Napper attempts to diminish the value of the product activation technology used in the accused Microsoft products. However, Mr. Napper's opinion is directly contradicted by the license agreement entered into by Microsoft with Intertrust relating to the same accused Product Activation technology. Contrary to Mr. Napper's opinion herein that this technology is of little value, Microsoft was willing to and did pay Intertrust $440 million dollars for a patent license permitting Microsoft to use Product Activation. Uniloc's expert should be permitted to use the Intertrust/Microsoft license agreement to rebut the opinion of Microsoft's expert. To do so,

Uniloc's expert will need to obtain a copy of the agreement in advance of the December 8, 2005 deadline for serving his rebuttal report. Accordingly, Uniloc requests an early disposition of this motion.

## CONCLUSION

For the reasons set forth above, this motion should be granted and Uniloc awarded its attorneys fees incurred in connection with this motion for Microsoft's failure to respond to Uniloc's request for a meet-and-confer regarding this dispute.

**UNILOC USA, INC.**
**UNILOC SINGAPORE PRIVATE LIMITED**

Dated: November 16, 2005

By: ______________________

Francis A. Connor, III (R.I. Bar No. 4640)
Sherri L. Pizzi (R.I. Bar No. 5720)
**TAYLOR DUANE BARTON & GILMAN, LLP**
10 Dorrance Street, Suite 700
Providence, Rhode Island 02903
(401) 273-7171 (Telephone)
(401) 273-2904 (Facsimile)

OF COUNSEL:

Paul J. Hayes, Esq.
Rosemary Allen, Esq. (R.I. Bar No. 5407)
Paul J. Cronin, Esq.
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
(617) 542-6000 (Telephone)
(617) 542-2241 (Facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served on local counsel for Microsoft Corporation, Joseph V. Cavanagh, Esq. of Blish and Cavanagh, Commerce Center, 30 Exchange Terrace, Providence, Rhode Island 02903, by hand delivery and on national counsel for Microsoft Corporation, Frank R. Scherkenbach, Esq. of Fish & Richardson P.C., 225 Franklin Street, Boston, Massachusetts 02110, by overnight courier on November 16, 2005.



LIT 1550262v1

# EXHIBIT A

# Windows XP Product Activation

Published: August 29, 2002

Microsoft is committed to the protection of intellectual property rights and the reduction of software piracy. Everyone in the economic chain—not just the software manufacturer—is hurt by piracy, including the reseller, the support provider, and you, the end user. Authentic Microsoft software assures you of high-quality, virus-free software. Pirated software does not.

Windows XP retail products contain software-based product activation technology, which means you need to activate your copy of Windows XP in order to use it. Some new PCs purchased with Windows XP pre-installed will also require activation. If your organization licenses Windows XP through one of Microsoft's volume licensing agreement programs such as Open License and Select License, you will not be required to activate those Windows XP licenses.

**Related Links**

- Details about Microsoft Product Activation
- Details on SP1 Changes to Activation
- Answers to Questions About Microsoft Product Activation
- About Microsoft Product Activation and Microsoft's Volume Licensing Customers
- Microsoft Office XP Product Activation
- ZDNet: Top Windows XP Questions Answered, Including Product Activation

**Learn More**

**Windows Product Activation Demo**
Learn more about how Windows Product Activation protects you from software piracy.

300k | 100k | 56k

## Service Pack 1 Changes to Product Activation

Software piracy continues to be a worldwide problem and Microsoft is committed to a long-term strategy of protecting intellectual property through innovative technologies. Microsoft will introduce additional technical measures in Service Pack 1 for Windows XP, to ensure legally licensed customers receive the full benefits of owning their valid license. These changes include denying access to the Windows XP SP1 update for computers with pirated installations, validating product keys during activation, and repairing cracks to activation. Additional features have been added to provide a better customer experience, including an additional three-day grace period to re-activate after significant hardware changes and the ability for volume license customers to encrypt their volume license product key in unattended installations.

↑ Top of page

## Product Activation Overview

Microsoft Product Activation is an anti-piracy technology designed to verify that software products have been legitimately licensed. This aims to reduce a form of piracy known as casual copying. Activation also helps protect against hard drive cloning. Activation is quick, simple, and unobtrusive, and it protects your

privacy.

Product Activation works by verifying that a software program's product key has not been used on more personal computers than intended by the software's license. You must use the product key in order to install the software and then it is transformed into an installation ID number. You use an activation wizard to provide the installation ID number to Microsoft either through a secure transfer over the Internet, or by telephone. A confirmation ID is sent back to your machine to activate your product.

The installation ID number includes an encrypted form of the product ID and a hardware hash, or checksum. No personally identifying data is included or required. The confirmation ID is simply an unlocking code for the Windows XP installation on that particular PC.

If you overhaul your computer by replacing a substantial number of hardware components, it may appear to be a different PC. You may have to reactivate Windows XP. If this should occur, you can call the telephone number displayed on the activation screen to reactivate the software.

↑ Top of page

## Activate Windows XP Right Away

If you have not activated Windows XP, you will be reminded each time you log in and at common intervals until the end of the activation grace period of 30 days. If you have not activated Windows XP within this timeframe, you will need to do so to continue using it.

If you choose to activate your product over the Internet, upon your submission the activation wizard will detect your Internet connection and connect to a secure server to transfer your installation ID to Microsoft. A confirmation ID is passed back to your computer, automatically activating Windows XP. This process normally takes just a few seconds to complete. No personally identifiable information is required to activate Windows XP.

To activate Windows XP over the telephone, you can simply call a toll-free* number displayed on your screen. A customer service representative will ask for the installation ID number displayed on the same screen, enter that number into a secure database, and return a confirmation ID to you. Once you have typed the confirmation ID, the activation process is complete.

↑ Top of page

## Product Registration

Product activation is not the same as product registration. As discussed above, product activation is required and is completely anonymous. Product registration, on the other hand, is completely optional. You may opt to provide personal information, such as your e-mail address, for product registration purposes. Registration entitles you to receive information about product updates and special offers directly from Microsoft. All registration information provided is stored securely and no information is ever loaned or sold to third parties.

↑ Top of page

## Product Activation Protects Your Privacy at Every Step

Activation data and any optional registration data provided to Microsoft is stored

in a secure facility. Microsoft's privacy statement is displayed during the activation process.

* Toll-free telephone numbers are available in all countries whose telephony infrastructures provide for them. The telephone numbers to call are displayed when telephone activation is chosen.

↑ Top of page

Printer-Friendly Version Send This Page Add to Favorites

Manage Your Profile | Contact Us | Free Newsletter | RSS Feeds

© 2005 Microsoft Corporation. All rights reserved. Terms of Use | Trademarks | Privacy Statement

Microsoft

# EXHIBIT B

:: inventing



ip overview
patents
Microsoft settlement

Copyright © 2003-2005
Intertrust Technologies Corp.
All rights reserved.

## Microsoft Settlement

**On April 3, 2004 ,** Intertrust and Microsoft settled their patent litigation with Microsoft taking a comprehensive license to Intertrust's patent portfolio for a one-time payment of $440 million.

Under the terms of the agreement, developers, including system integrators, may need a license from Intertrust for other uses of Microsoft technology. This includes cases in which Microsoft technology is combined with third-party technology.

## History of the Microsoft Litigation

**In April 2001,** Intertrust initiated a lawsuit against Microsoft. The lawsuit ultimately accused Microsoft of infringing 11 of Intertrust's patents and almost 130 of the company's patent claims.

The lawsuit centered on accused products based on the following technologies:

- DRM and product activation technologies
- .NET and related security technologies
- Trusted and reliable operating system technologies

In bringing the patent infringement lawsuit, Intertrust believed that Microsoft's forward-going technology infrastructure significantly relied on Intertrust's inventions for DRM and trusted computing.

In July 2003, the U.S. District Court for the Northern District of California issued a ruling in Intertrust's favor, accepting Intertrust's claim constructions and denying a motion Microsoft had filed for summary judgment. This ruling paved the way for the eventual settlement of the lawsuit, with Microsoft taking a comprehensive license to Intertrust's patent portfolio for a one-time payment of $440 million on April 3, 2004.

# EXHIBIT C

MINTZ LEVIN

Dean G. Bostock | 617 348 4421 | dgbostock@mintz.com

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

October 20, 2005

**BY FAX**

Kurt L. Glitzenstein, Esq.
Denis Ticak, Esq.
Fish & Richardson, P.C.
225 Franklin Street
Boston, MA 02110

Re: Uniloc USA, Inc., et al. v. Microsoft Corporation
U.S.D.C. for the District of Rhode Island Civil Action No. 03-CV-440 (WES)

Dear Counsel:

We are in receipt of documents MS-U 970207-492 that Microsoft produced yesterday. Uniloc reserves its objections regarding these documents.

We note that among yesterday's production are various documents relating to settlement and licensing. However, we have not been able to locate in Microsoft's document production to date a copy of the settlement documents relating to the *Intertrust* or *Nash* litigations. Please produce a copy of these documents immediately or identify the document production numbers if you believe copies have previously been produced.

If you have any questions, please call.

Very truly yours,

Dean G. Bostock

DGB:djm

LIT 1546634v.1

# EXHIBIT D

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

VIA FACSIMILE

October 24, 2005

Dean G. Bostock, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

Re: Uniloc USA, Inc. and Uniloc Singapore Private Ltd. v. Microsoft Corp.
USDC, District of Rhode Island - Civil Action No. 03-CV-440 (WES)

Dear Dean:

I write in response to your letter of October 20, 2005 requesting "settlement documents" from the *Nash* and *Intertrust* litigations. With regard to the *Nash* litigation, no such documents exist as that case was decided on summary judgment and is currently on appeal. With regard to the *Intertrust* litigation, any such documents are irrelevant to the claims and defenses of the parties in this case, and are not responsive to Uniloc's document requests.

Very truly yours,

Denis Ticak

21192765.doc

# EXHIBIT E

MINTZ LEVIN

Dean G. Bostock | 617 348 4421 | dgbostock@mintz.com

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

October 25, 2005

**BY FAX**

Denis Ticak, Esq.
Fish & Richardson, P.C.
225 Franklin Street
Boston, MA 02110

Re: Uniloc USA, Inc., et al. v. Microsoft Corporation
U.S.D.C. for the District of Rhode Island Civil Action No. 03-CV-440 (WES)

Dear Denis:

This responds to your letter dated yesterday.

Obviously, the *Intertrust* license for which Microsoft paid $440 million dollars is relevant to at least the issue of a reasonable royalty in this case. Microsoft is not acting in good faith by refusing to produce same, particularly when Microsoft has previously: (1) produced the *Intertrust* transcripts; (2) demanded that Uniloc produce license agreements, and (3) recently selectively produced various license agreements. These documents should have been produced long ago in response, *inter alia*, to Uniloc's document request number 54. We would like a meet-and-confer on the *Intertrust* issue. Please let me know if you or one of your colleagues is available tomorrow and, if so, when.

If you have any questions, please call.

Very truly yours,

Dean G. Bostock

DGB:djm

LIT 1547234v.1

# EXHIBIT F

MINTZ LEVIN

Dean G. Bostock | 617 348 4421 | dgbostock@mintz.com

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

October 28, 2005

**BY FAX**

Kurt L. Glitzenstein, Esq.
Denis Ticak, Esq.
Fish & Richardson, P.C.
225 Franklin Street
Boston, MA 02110

Re: Uniloc USA, Inc., et al. v. Microsoft Corporation
U.S.D.C. for the District of Rhode Island Civil Action No. 03-CV-440 (WES)

Dear Counsel:

This corrects the typo in my letter of today.

I do not appear to have received a response to my letter to Denis dated October 25, 2005. Accordingly, please be advised that, unless copies of the *Intertrust* license/settlement documents are provided to us by the end of business on Monday, October 31, 2005, we will file a motion to compel together with a request for an award of attorneys' fees.

Very truly yours,

Dean G. Bostock

DGB:djm

LIT 1548082v.1

# EXHIBIT G

# FISH & RICHARDSON P.C.

225 Franklin Street
Boston, Massachusetts
02110-2804

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

VIA FACSIMILE

October 31, 2005

Dean G. Bostock, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

Re: Uniloc USA, Inc. and Uniloc Singapore Private Ltd. v. Microsoft Corp.
USDC, District of Rhode Island - Civil Action No. 03-CV-440 (WES)

Dear Dean:

I write in response to your letters of October 25 and 28 regarding the *Intertrust* settlement agreement.

We remain of the view that this agreement is not in any way relevant to claims and defenses in this case. This agreement was in settlement of litigation, and is of a scale and scope wholly different from what is germane to the issues surrounding the appropriate reasonable royalty in this case. We are further of the view that your demand now for this document is untimely, coming as it does long after the close of fact discovery and the submission of Plaintiff's expert report on damages. Moreover, Plaintiff's report was not in any way based on *Intertrust*, despite Plaintiff's clear knowledge of that litigation and the publicly available information regarding the settlement of that litigation.

Very truly yours,

Kurt L. Glitzenstein

21197262.doc

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED<br>Plaintiffs,<br>vs.<br>MICROSOFT CORPORATION,<br>Defendant. | Civ. A. No. 03-CV-440 (WES) |

**PLAINTIFFS' SECOND SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS AND/OR THINGS (NOS. 50-62)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Uniloc USA, Inc. and Uniloc Singapore Private Limited (together "Uniloc" and/or "Plaintiffs") hereby request defendant Microsoft Corporation ("Defendant" and/or "Microsoft") to produce documents and/or things within its possession, custody and/or control for inspection and copying within thirty (30) days of service of this request at the offices of Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111. For the purposes of these requests, the following definitions and instructions apply:

**INSTRUCTIONS**

1. These instructions are intended to cover the following requests and the documents and/or things responsive thereto, all documents and/or things in Defendant's global charge and/or possession as well as those subject to its custody and/or control, whether in its possession,

accused Microsoft Product Activation technology, as well as for Microsoft's deployment, employment, incorporation, license and/or use thereof in Microsoft's accused products, including in the answer the identification of all persons and/or entities involved therein.

**REQUEST NO. 51**

All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to each and every benefit, including but not limited to economic, financial and/or remunerative benefit(s), that Microsoft has received and/or enjoyed, and/or expects to receive and/or enjoy, as a result of Microsoft's deployment, employment, incorporation, license and/or use of its accused Microsoft Product Activation technology in Microsoft's accused products.

**REQUEST NO. 52**

All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to, on a monthly, quarterly and yearly basis, the number of unauthorized copies of each Microsoft accused product, and/or the number of unauthorized software licenses for each Microsoft accused product, and/or the number of casual copying of each Microsoft accused product, that Microsoft's deployment, employment, incorporation, license and/or use of its accused Microsoft Product Activation therein has prevented.

**REQUEST NO. 53**

All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to, the increased number of copies of each Microsoft accused product, and/or increased number of software licenses for each Microsoft accused product, that Microsoft has sold and/or licensed as a result of Microsoft's deployment, employment, incorporation, license and/or use of its accused Microsoft Product Activation therein.

**REQUEST NO. 54**

All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to, the economic and/or financial value that Microsoft has placed and/or places on the accused Microsoft Product Activation technology and/or as a result of Microsoft's deployment, employment, incorporation, license and/or use of such technology in Microsoft's accused products.

**REQUEST NO. 55**

All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to the conception, design and/or development of the accused Microsoft Product Activation technology from its initial conception through its ultimate inclusion in Microsoft's accused products, and identify all persons and/or entities involved therein.

**REQUEST NO. 56**

All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to how the accused Microsoft Product Activation technology functions, operates and/or is used in Microsoft's accused products, including in the answer all software that is utilized and/or employed, all hardware that is utilized and/or employed, all components that are utilized and/or employed, all steps that are utilized and/or employed, all processes that are utilized and/or employed and/or all algorithms that are utilized and/or employed, and the function, operation and/or purpose thereof.

**REQUEST NO. 57**

All documents and/or things that describe, concern, constitute, identify, relate to and/or refer to Microsoft's business and/or financial relationship with Original Equipment Manufacturers ("OEM") with respect to the accused Microsoft Product Activation technology, as well as for Microsoft's and/or the OEM's deployment, employment, incorporation, license

UNILOC USA, INC.
UNILOC SINGAPORE PRIVATE LIMITED

Dated: 3/1/05

By: [signature]

Francis A. Connor III, Esq. (R.I. Bar No. 4640)
Sheri L. Pizzi, Esq. (R.I. Bar No. 5720)
**TAYLOR DUANE BARTON & GILMAN, LLP**
10 Dorrance Street, Suite 700
Providence, Rhode Island 02903
(401) 273-7171 (Telephone)
(401) 273-2904 (Facsimile)

OF COUNSEL:
Paul J. Hayes, Esq.
Rosemary Allen, Esq. (R.I. Bar No. 5407)
Paul J. Cronin, Esq.
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-4946 (Telephone)
(617) 542-6000 (Facsimile)

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and accurate copy of the foregoing document was served on counsel for Microsoft Corporation by first class mail to Joseph V. Cavanagh, Jr., Esq. of Blish & Cavanagh, located at Commerce Center, 30 Exchange Terrace, in Providence, Rhode Island, 02903, and by facsimile and hand delivery to Kurt L. Glitzenstein, Esq. of Fish & Richardson, P.C., located at 225 Franklin Street in Boston, Massachusetts 02110 on March 1, 2005.

[signature]