UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC U.S.A., INC. and UNILOC SINGAPORE PRIVATE LIMITED,<br>Plaintiffs,<br>v.<br>MICROSOFT CORPORATION<br>Defendants. | Civil Action No. 03 CV 440 (WES) |

**MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF LICENSE AGREEMENT**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Months after the deadline for filing discovery motions, Uniloc asks the Court to order production of a settlement agreement about which it must have known during discovery, and the existence and principal terms of which have been public for over a year.

Although its explanation of the relevance of the agreement has been something of a moving target, Uniloc now says that it needs to "rebut the opinion of Microsoft's expert" by pointing to the $440 million settlement amount. (Uniloc Br., at 5.) However, the agreement is three years too late to be relevant to Uniloc's damages case. The *Intertrust* agreement is also far broader in scope—both in terms of types of technologies as well as quantities of patents—than issues germane to this case. Indeed, Uniloc's own damages expert, Joseph Gemini, tacitly concedes its irrelevance, completely ignoring both the fact of the settlement, and the settlement amount, for purposes of the damages calculation in his expert report.

Uniloc's repeated emphasis of "$440 million" throughout its brief reveals its true motivation in filing its untimely motion to compel: To inflame and confuse the jury with a

staggering dollar figure for a transaction that bears no resemblance to the issues in this case.[1] Uniloc should not be permitted to do so, and its motion should be denied.

## II. BACKGROUND

The settlement agreement at issue resulted from the *Intertrust v. Microsoft* patent litigation, in which Intertrust asserted that Microsoft infringed eleven of its patents. That case principally involved claims asserted against Microsoft's digital rights management technology ("DRM") and trusted computing technologies, which among other things protect distribution of content, such as music and video, over the internet. (Ticak Decl., Ex. A.) These technologies are not at issue in the present case. Intertrust also asserted infringement by several other Microsoft technologies, such as .NET, ActiveX, and product activation. (Ticak Decl., Ex. B.) The *Intertrust* litigation settled, resulting in a settlement agreement dated April 3, 2004. News of this settlement became public shortly thereafter. (See, e.g., Ticak Decl., Ex. A.)

Uniloc was aware of the *Intertrust* litigation during discovery in this case. Indeed, Microsoft provided Uniloc with discovery from that case concerning the product activation feature. Microsoft also plainly told Uniloc more than 4 months ago, and throughout the discovery period, that it would not produce the entire *Intertrust* discovery file. (Ticak Decl., ¶5.)

Fact discovery in this case closed on August 1, 2005. Mr. Gemini issued his expert report on damages on September 1, 2005. His report makes no reference to the *Intertrust* litigation or settlement agreement. At no point prior to Mr. Gemini's report did Uniloc move to compel on any aspect of the *Intertrust* production.

Mr. Gemini's report did however reference a Microsoft production document that summarized various license agreements to which Microsoft was a party. (Ticak Decl., ¶6.) As a

---

[1] And which Microsoft will move *in limine* to exclude.

direct consequence of Mr. Gemini's reference to these license agreements—and contrary to Uniloc's unwarranted characterization of this production as "self-serving" (Uniloc Br., at 2)—Microsoft produced the actual underlying agreements referred to in that summary on October 19, 2005. These agreements are in no way related to *Intertrust*, are not settlement agreements, and are not licenses of product activation technology. (Ticak Decl., ¶6.)

Uniloc requested production of the *Intertrust* settlement agreement by letter for the first time on October 20, 2005.[2] (Uniloc Br., Ex. C.) Other than suggesting without support that this agreement was somehow related to the other agreements that Microsoft had produced the day before—in response to Mr. Gemini's reliance on them in his damages report—Uniloc did not articulate any relevance basis for the *Intertrust* agreement in this letter. Microsoft's counsel responded by letter on October 24, 2005, stating that the agreement was not relevant and would not be produced. (Ticak Decl., ¶7.) Uniloc again requested the agreement in letters dated October 25 and 28, 2005, stating its view that it was "relevant to at least the issue of a reasonable royalty in this case," but with no explanation of how or why. (Uniloc Br., Exs. E, F.) Although Uniloc claimed in its original briefing on this motion that Microsoft did not respond to its letters of October 25 and 28, Microsoft did respond by the Uniloc-imposed deadline of October 31, 2005, reiterating its position that the *Intertrust* agreement was not relevant, and confirming that Microsoft would not produce the agreement. (Uniloc Br., Ex. G.)

Microsoft's damages expert, Brian Napper, provided his responsive expert report on November 7, 2005. Mr. Napper did not reference the *Intertrust* litigation or settlement agreement in his expert report, either. Nonetheless, Uniloc's present motion seizes on Mr. Napper's report as its new purported relevance justification for the *Intertrust* agreement.

---

[2] Uniloc also requested a copy of the settlement agreement for a different litigation, the *Nash* case. That case is presently on appeal, and there is no settlement agreement for it.

## III. ARGUMENT

Uniloc's sole basis for its damages claim in this case is a "reasonable royalty" theory under 35 U.S.C. § 284. In determining the amount of a reasonable royalty, the jury must determine the amount that a willing patentee and a willing potential licensee would have agreed upon ***as of the date on which the infringement allegedly began***. *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) ("[a] reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred, and not be an after-the-fact assessment.").

Uniloc's damages expert, Mr. Gemini, places the date of this hypothetical negotiation in 2001. Microsoft agrees. The *Intertrust* settlement occurred in April of 2004. (Uniloc Br., Ex. B.) In short, the agreement is three years too late.

The *Intertrust* litigation and settlement agreement were also of a scale and scope far beyond anything relevant to this case. The agreement gives Microsoft a license to Intertrust's entire patent portfolio, which presently contains 37 issued U.S. patents and over 100 pending applications. (Ticak Decl., ¶8, Ex. A.) The present case only involves a single patent. The *Intertrust* litigation was not, as Uniloc suggests in its brief, entirely about product activation, the accused technology in this case. (Uniloc Br., at 2, 4.) Instead, the *Intertrust* litigation principally involved DRM and trusted computing technologies, which are aspects of the basic infrastructure necessary to protect distribution of digital content over the internet. (Ticak Decl., Ex. A, see also http://www.intertrust.com/main/ip/index.html.) By contrast, this case is solely about anti-piracy technology. Neither Mr. Gemini, or Mr. Napper rely on any of the publicly available information regarding the *Intertrust* settlement agreement.

The *Intertrust* agreement was also made in settlement of litigation, a consideration that some Courts have held warrants heightened protection from disclosure under the "settlement

privilege" doctrine. *Goodyear Tire v. Chiles*, 332 F.3d 976, 983 (6th Cir. 2003) (communications with opposing party in prior litigation made in furtherance of settlement negotiations are privileged and protected from third-party discovery); *see also Bottaro v. Hatton Associates*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (requiring requesting party to make a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement."). The settlement privilege doctrine is rooted in Federal Rule of Evidence 408, and the policy that that rule embodies, namely, protecting settlement negotiations from disclosure to "'encourage freedom of discussion with regard to compromise....'" *Goodyear Tire*, 332 F.3d at 979. While the Court in *Bennett v. La Pere*, 112 F.R.D. 136 (D.R.I. 1986), declined on the facts of that case to apply a settlement privilege theory to protect a settlement agreement between a plaintiff and a former codefendant requested by the remaining non-settling codefendant, that case is distinguishable from this case. Specifically, the Court in *Bennett* held that the settlement was relevant to both (1) the potential damages the plaintiff could collect against the remaining codefendant under Rhode Island joint tortfeasor law, and (2) bias or prejudice of witnesses. *Id.* at 138-39. Neither of these factors is applicable in this case, so *Bennett* is distinguishable and the Court should also deny production according to the settlement privilege.

Finally, Uniloc has not diligently pursued this issue. Uniloc plainly knew about the *Intertrust* litigation during discovery, and so too must have known about its settlement. Yet it failed to demand the agreement until October 20, 2005, well after the fact discovery deadline of August 1, 2005, and the filing of opening expert reports.

The Court's Amended Pretrial Order requires that "except as provided above with respect to motions in limine, after ten (10) days from the close of discovery, no motions shall be filed except by leave of Court." (Court's December 13, 2004 Amended Pretrial Order at 5.)

While the Order does not state whether "discovery" means fact discovery (which as noted closed August 1, 2005) or expert discovery (which closes January 6, 2006), Microsoft submits that because this motion concerns a fact discovery issue, the deadline for filing it passed on August 15, 2005, i.e., ten business days after the close of fact discovery. This reading comports with the expert discovery deadlines, which required Uniloc to serve its expert report on damages by September 1, 2005. If Uniloc thought it needed the *Intertrust* settlement agreement to present its case on damages, it should have sought disclosure of the agreement prior to its opening expert report on damages.

Uniloc bears the burden on damages, and was obligated to disclose the evidence on which its expert would base his damages theories in his report on September 1. Mr. Gemini did not rely on the *Intertrust* settlement agreement, or anything remotely like it, in his opening report. Mr. Napper likewise did not rely on the *Intertrust* settlement agreement, or anything remotely like it, in his responsive report. Uniloc is now essentially attempting to end-run the expert report deadlines, all but admitting that it will expand the scope of its damages theories in Mr. Gemini's final damages report under the guise of "rebuttal" or "impeachment" of Mr. Napper. Of course, what Uniloc really wants to do is prejudice the jury with a $440 million settlement agreement that is completely irrelevant to the issues in this case. Mr. Napper's report is nothing but a convenient excuse to accomplish this end. That is plainly illustrated by the fact that Uniloc first demanded the *Intertrust* settlement agreement *before even seeing Mr. Napper's*

*report*. Uniloc's purported justification for its belated motion—that this motion was somehow precipitated by its review of Mr. Napper's report—is wholly disingenuous.[3]

## IV. CONCLUSION

For the reasons stated above, Microsoft respectfully requests that the Court deny Uniloc's motion to compel production of the *Intertrust* settlement agreement.

[3] If discovery of the *Intertrust* settlement agreement were permitted, Uniloc would use that as a justification to expand its damages expert theories, which would in turn force Microsoft to move to strike such a disclosure as untimely in light of the Court's Amended Pretrial Order, or in the alternative to seek leave to allow Mr. Napper to respond, to which Mr. Gemini will no doubt want to further respond. Given how long Uniloc has known about *Intertrust*, there is no justification for deviating so substantially from the Court's discovery schedule.

Dated: December 1, 2005

By: ______________________
Joseph V. Cavanagh, Jr. #1139
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)

______________________
Frank E. Scherkenbach
Kurt L. Glitzenstein
Laura R. Braden
Fish & Richardson, P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Of Counsel:

Isabella Fu, Esq.
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052-6399
Telephone: (415) 882-8080
Facsimile: (415) 936-7329

Attorneys for Defendant
MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

I certify that on December 1, 2005 I caused a true and correct copy of the foregoing MICROSOFT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF LICENSE AGREEMENT to be served as follows:

Francis A. Connor, III
Shari Pizzi
Taylor Duane Barton & Gilman, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903

Attorneys for Plaintiffs
UNILOC USA, INC. and UNILOC
SINGAPORE PRIVATE LIMITED

(via overnight mail)

Paul J. Hayes, Esq.
Dean G. Bostock, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111

Counsel for Plaintiffs
UNILOC USA, INC. and UNILOC
SINGAPORE PRIVATE LIMITED

(via hand delivery)

Mary C. Dunn
______________________________