# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED<br>Plaintiffs,<br>vs.<br>MICROSOFT CORPORATION,<br>Defendant. | Civ. A. No. 03-CV-440 (WES) |

**<u>PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .............................................................................. iv

BACKGROUND ........................................................................................... 1

APPLICABLE LAW ..................................................................................... 2

CLAIM TERMS TO BE CONSTRUED .......................................................... 5

CLAIM TERMS DESIGNATED BY UNILOC ........................................... 6

ALIGORITHM ....................................................................................... 6

LICENSE UNIQUE ID ............................................................................ 6

REGISTRATION SYSTEM ..................................................................... 8

LOCAL LICENSEE UNIQUE ID GENERATING MEANS ............. 8

REMOTE LICENSEE UNIQUE GENERATING MEANS ............. 10

MODE SWITCHING MEANS .............................................................. 11

USE MODE ........................................................................................... 12

INFORMATION UNIQUELY DESCRIPTIVE
OF THE LICENSEE ............................................................................. 13

CHECKING BY THE REGISTRATION AUTHORITY
THAT INFORMATION UNIQUE TO THE USER IS
CORRECTLY ENTERED ..................................................................... 14

REGISTRATION KEY GENERATING MEANS ............................ 15

PAGE


CLAIM TERMS DESIGNATED BY MICROSOFT .................................. 17

PLATFORM UNIQUE ID GENERATING MEANS ........................ 17

[AN ENABLING KEY] PROVIDED TO SAID MODE-SWITCHING MEANS BY SAID INTENDING USER ...... 18

[ENABLING KEY IS] COMMUNICATED TO SAID INTENDING USER .................................................................. 19

FULLY ENABLED MODE/FULL VERSION RUN........................ 19

PARTLY ENABLED MODE OR DEMONSTRATION MODE..... 20

SERIAL NUMBER ....................................................................... 21

INCLUDES THE ALGORITHM UTILIZED BY SAID LOCAL LICENSEE UNIQUE ID GENERATING MEANS TO PRODUCE SAID LICENSEE UNIQUE ID ........................................................ 22

WHEREIN SAID REGISTRATION SYSTEM IS REPLICATED AT THE REGISTRATION AUTHORITY ...................................... 22

[SAID ENABLING KEY] GENERATED BY A THIRD PARTY MEANS OF OPERATION OF A DUPLICATE COPY OF SAID REGISTRATION KEY GENERATING MEANS............................ 23

HAS MATCHED .......................................................................... 25

MODE SWITCHING MEANS WILL PERMIT SAID DATA TO RUN IN SAID USE MODE IN SUBSEQUENT EXECUTION ONLY IF SAID PLATFORM UNIQUE ID HAS NOT CHANGED ................................................................... 26

CONCLUSION ................................................................................... 27

# TABLE OF AUTHORITIES

PAGE

*Atmel Corp. v. Info. Storage Devices, Inc.*,
198 F.3d 1374, 1379 (Fed. Cir. 1999) .......... 10, 17

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359, 1366 (Fed. Cir. 2002) .......... 4

*Comark Communications, Inc. v. Harris Corp.*,
156 F.3d 1182, 1186 (Fed. Cir. 1998).......... 3, 7, 10, 13, 14, 15, 19, 21, 22, 24

*Cordis Corp. v. Medtronic AVE, Inc.*,
339 F.3d 1352, 1359 (Fed. Cir. 2003) .......... 5

*D.M.I., Inc. v. Deere & Co.*,
755 F.2d 1570, 1574 (Fed. Cir. 1985).......... 5

*Engel Indus., Inc. v. Lockformer Co.*,
946 F.2d 1528, 1532 (Fed. Cir. 1991).......... 16, 18

*Glaxo Group Ltd. v. Apotex, Inc.*,
376 F.3d 1339, 1346 (Fed. Cir. 2004) .......... 18

*In re Gay*,
309 F.2d 769, 774 (CCPA 1962) .......... 16

*Intertrust Techs. Corp. v. Microsoft Corp.*,
275 F. Supp.2d 1031, 1069 (N.D. Cal. 2003) .......... 3, 6

*Laitram Corp v. NEC Corp.*,
163 F.3d 1342, 1348 (Fed. Cir. 1998) .......... 3

*Laitram Corp. v. Rexnord, Inc.*,
939 F.2d 1533, 1538 (Fed. Cir. 1991) .......... 4

PAGE

*Mars, Inc. v. H.J. Heinz Co., L.P.*,
377 F.3d 1369, 1377 (Fed. Cir. 2004) .................................................................. 5

*Merck & Co. v. Teva Pharms. USA, Inc.*,
347 F3d 1367, 1371 (Fed. Cir. 2003) ............................................... 9, 12, 21, 24

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
370 F.3d 1354, 1360 (Fed. Cir. 2004) .................................................................. 3

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
194 F.3d 1250, 1257-58 (Fed. Cir. 1999) ............................................................ 9

*NCube Corp. v. Seachange Int'l, Inc.*,
Nos. 03-1341, -1366, slip op. at 6-7 (Fed. Cir. Jan. 9, 2006) .................................. 4

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*,
402 F.3d 1364, 1371 (Fed. Cir. 2005) 3, 7, 8, 12, 13, 14, 15, 19, 20, 21, 22, 23, 24, 25

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 2, 3, 4, 5, 10, 26

*Quantum Corp. v. Rodime, PLC*,
65 F.3d 1577, 1584 (Fed. Cir. 1995) ................................................................. 27

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243, 1248 (Fed. Cir. 1998)................................................................ 4

*Resonate, Inc. v. Alteon Websystems, Inc.*,
338 F.3d 1360, 1364 (Fed. Cir. 2003) ....................................................... 19, 20

*Sorenson v. U.S. Int'l Trade Comm'n*,
427 F.3d 1375, 1378-79 (Fed. Cir. 2005) ......................................................... 25

*Sulzer Textil AG v. Picanol NV*,
358 F.3d 1356, 1366 (Fed. Cir. 2004) ............................................... 3, 7, 12, 25, 26

PAGE

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576, 1582 (Fed. Cir. 1996)........................................................ 2, 3, 25, 26

*WMS Gaming, Inc. v. Int'l. Game Tech.*,
184 F.3d 1339, 1347 (Fed. Cir. 1999) ................................................................... 9

**STATUTES**

35 U.S.C. § 112, ¶ 6 ............................................................ 8, 9, 10, 11, 15, 17, 24

Plaintiffs, Uniloc USA, Inc. and Uniloc Singapore Private Limited (together "Uniloc"), respectfully submit this claim construction brief to assist the Court in construing certain terms contained in the asserted claims of U.S. Patent No. 5,490,216 ("the '216 patent"). Ex. A.

## BACKGROUND

The '216 patent is directed towards reducing the unauthorized use of software. *See* Ex. A, Abstract section.[1] More particularly, the '216 patent covers, *inter alia*, methods that lock the software to a particular computer device or user. One way the '216 patent describes achieving this goal is by having the user's legitimate copy of the software generate a "licensee unique ID." Ex. A, Summary of the Invention. This ID is generated using an algorithm and is unique for each copy of the software distributed by the software manufacturer (such as defendant Microsoft Corporation). The unique ID is generated from one or more of the following: (1) information derived from the user's respective computer setup, such as the manufacturer's hard drive serial number; (2) the unique number on each copy of the software product being protected; and/or (3) the user's personal information, such as his or her telephone number. *See, e.g.*, Ex. A, col. 5, ll. 61-67; col. 7, ll. 8-20; col. 9, ll. 35-52; col. 10, ll. 48-53, col. 11, ll. 43-57, col. 12, ll. 62-65.

Once generated, the "licensee unique ID" is communicated via telephone or the internet to the software manufacturer (*e.g.*, Microsoft).[2] The software manufacturer uses this information (after decryption in the case of internet communication) to determine the unique software copy number and the unique user information (such as unique hard drive serial number). The software

---

[1] Patents are divided into numerous section, such as the "Abstract" on the front page, the drawings, the "Summary of the Invention," *etc.* Specific cites to the text of the '216 patent herein are in the format "Ex. A, col. #, lines ##-##." This refers to the numbered columns and rows of the patent.

[2] If by internet, this information is encrypted before being sent.

manufacturer stores these two values and compares them with its own internal table of valid numbers. If the number received from the user is valid, an authorization is sent back to the user which allows the user to commence or continue (depending on the manufacturer's preference), use of the software product.

After the initial use following authorization, the user will eventually log off. Upon a subsequent reboot of the computer, the software runs an initial check of the computer on which the software is running. For example, the software will verify that the hard drive serial number is the same as it was when the software was previously run. If the hard drive serial number is the same, the software recognizes that it is on the same computer as before and will run in full-function mode without further authorization from the manufacturer. Thus, as stated in the Abstract section of the '216 patent, this patented technology "allows digital data or software to run in a use mode on a [computer] platform if and only if an appropriate licensing procedure has been followed."[3] Ex. A, first page. Unlicensed use of software is substantially reduced by the inventions disclosed and described in the '216 patent.

**APPLICABLE LAW**

Set forth below is a statement of the law of claim construction as mandated by the Federal Circuit. See also *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) for a recent primer on claim construction by the Court of Appeals for the Federal Circuit.[4] Claim construction is a question of law. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

---

[3] The '216 patent defines such "use mode" as use in accordance with the manufacturer's software license provisions. Ex. A, col. 2, lines 40-48.

[4] The Federal Circuit has exclusive jurisdiction over appeals in patent cases. *See* 28 U.S.C. § 1295(a)(1).

Jury Should be Able to Understand the Court's Claim Construction

As this is a jury case, the Court's claim construction should be such that it can be "understood and given effect by the jury." *Sulzer Textil AG v. Picanol NV*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). The Court must "must give the jury guidance that 'can be understood and given effect by the jury once it resolves the issues of fact which are in dispute.'" *Id.*, (quoting *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 723 (Fed. Cir 1984)).

Patent Specification the Best Source when Construing Claims

Words of a patent claim are generally given their ordinary and customary meaning. *Vitronics*, 90 F.3d at 1592. The specification is in most cases the best source for discerning the proper meaning of claim terms. *Phillips*, 415 F.3d at 1315 (citing *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004)). Thus, claims must be read in view of the specification of which they are part. *Phillips*, 415 F.3d at1315 (citing *Vitronics*, 90 F.3d at 1582).

Limitations from the Specification not to be Read into Claims

Federal Circuit has "repeated[ly] state[d] that limitations from the specification are not to be read into the claims." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). Thus, courts "cannot construe [a] claim to add a limitation not present in the claim itself." *Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1371 (Fed. Cir. 2005). "[T]he mere repetition in the written description of a preferred aspect of a claimed invention does not limit the scope of an invention that is described in the claims in different and broader terms." *Laitram Corp v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998). *See also Intertrust Techs. Corp. v. Microsoft Corp.*, 275 F. Supp.2d 1031, 1069 (N.D. Cal. 2003)

(rejecting Microsoft's proposed claim construction because "it is inappropriate for the Court to read limitations in the preferred embodiment into the claim terms").

Claim Scope not Limited to the Examples Set Forth in the Patent

However, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. "A basic claim construction canon is that one may not read a limitation into a claim from the written description." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

The Federal Circuit has also "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as limited to that embodiment" *Phillips*, 415 F.3d at 1323. Thus, "courts must take *extreme care* when ascertaining the proper scope of the claims, lest they simultaneously import into the claims limitations that were unintended *by the patentee*." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (italics added).

Limitations from One Claim not to be Read into Other Claims

"Differences among claims can be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314 (citing *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)). This is known as the doctrine of claim differentiation and prohibits reading limitations from one claim into other claims. *NCube Corp. v. Seachange Int'l, Inc.*, Nos. 03-1341, -1366, slip op. at 6-7 (Fed. Cir. Jan. 9, 2006) (rejecting defendant's attempt to "impermissibly read the 'virtual connection' limitation of claim 2 into claim 1").

This rule against reading limitations from one claim into another "enjoys an immutable and universally applicable status comparatively rare among rules of law. Without it, the entire

statutory and regulatory structure governing the . . . enforceability of claims would crumble." *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed. Cir. 1985).

<u>Prosecution History may be Considered</u>

Courts should also consider the prosecution history if it is in evidence. *Phillips*, 415 F.3d at 1317. However, the prosecution history is less useful where it may be ambiguous. *Id.* A statement in a file history that is susceptible to multiple reasonable interpretations cannot constitute a clear and unmistakable surrender of subject matter. *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003). "It is inappropriate to limit a broad definition of a claim term based on a prosecution history that is itself ambiguous." *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1377 (Fed. Cir. 2004).

## CLAIM TERMS TO BE CONSTRUED

Uniloc has identified ten claim terms to be construed. Microsoft has identified fourteen terms. Microsoft uses all twenty-four opportunities to overly narrow the claimed invention. While it is certainly unremarkable for parties in a patent case to proffer favorable constructions, Microsoft distinguishes itself in this case by adding multiple limitations to simple claim terms. The effect of Microsoft's redraftsmanship is to provide itself multiple flips of the infringement coin while only needing to land heads once. By way of example, Microsoft's proferred construction of "licensee unique ID" contains at least seven additional limitations, with each unsupported limitation providing Microsoft a non-infringement argument. Some of the limitations come from improperly reading a portion of the specification into the claims, others come from misreading the file history as somehow disclaiming subject matter, and still others simply come from the word of Microsoft's expert.

This is not a new approach for Microsoft. Attached as Exhibit B is the claim construction order from the *Intertrust* case. *Intertrust Techs. Corp. v. Microsoft Corp.*, 275 F.Supp.2d 1031 (N.D.Cal. 2003). In that case, as here, Microsoft offered impenetrable constructions often having no support from the intrinsic evidence. The district court rejected Microsoft's strategy in the *Intertrust* case, and it should be rejected here upon a careful review of the intrinsic record. Attached as Exhibit C is a chart providing where the terms appear in the claims. Ex. C. These terms, and the construction thereof as asserted by Uniloc and Microsoft respectively, are set forth below.

**Claim Terms Designated by Uniloc**

| ***Algorithm*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Any set of instructions that can be followed to carry out a particular task | A sequence of steps that can be followed to achieve a desired result |

The term "algorithm" is a standard and well-accepted term and thus not especially defined in the '216 patent. *See Klausner Decl.*, ¶ 6. Thus, the term "algorithm" is given its definition in ordinary technical usage which is "any set of instructions that can be followed to carry out a particular task." *See Klausner Decl.*, ¶ 6. This definition is taken directly from Microsoft's own *Computer Dictionary*. *See* Ex. D. In contrast, Microsoft's proposed definition set forth above is more limited and is inconsistent with its own dictionary definition.

| ***Licensee Unique ID*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| A Unique Identifier associated with a licensee | A one-of-a-kind (i.e., unique) identifier that is entirely the product of data about the user, not the platform, generated locally, and that is not the product of either (1) data added before |

| | |
|---|---|
| | delivery of the software to the local location for use (such as a sequence of characters provided by the software vendor, for example, on a printed label accompanying the software), or (2) data added subsequently from a remote location (such as from the software vendor), and where the uniqueness of the identifier is provided entirely by the end user of the software in the course of supplying his or her own identifying user details |

Uniloc's proposed construction is consistent with the law and the patent. The term "licensee unique ID" simply describes that a licensee is associated with a unique identifier. *See Klausner Decl.*, ¶ 7. This construction is fully consistent with the patent specification, and does not import limitations from the specification into the claim language. *See, e.g.*, Ex. A, col. 5, ll. 61-63; col. 10, ll. 58-62. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims").

Microsoft's proposed construction of this term is a perfect example of erroneous claim construction. The claim term is simply "licensee unique ID." Microsoft requests the Court to turn that simple three-word term into a definition having one hundred and three words. This is precisely the erroneous claim construction practice by Microsoft that was rejected by Judge Armstrong in the *Intertrust* case. Once again, Microsoft is improperly attempting to add limitations into the claim from the specification. *Nellcor,* 402 F.3d at 1371 (Court "cannot construe [a] claim to add a limitation not present in the claim itself."). Microsoft's construction is further improper because it would render the claim practically impenetrable to a jury. *Sulzer Textil*, 358 F.3d at 1366 ("Court's claim construction should be such that it can be "understood and given effect by the jury.").

| *Registration System* | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| A system that allows digital data or software to run in a use mode on a platform when an appropriate licensing procedure is followed | A system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed where users register themselves with the software vendor by providing data that enables the vendor to contact the user |

Uniloc's proposed construction is consistent with the patent specification. *See* Ex. A, col. 2, lines 52-60. The '216 patent discloses at least seven "embodiments" or examples of how the inventions described in the patent can be implemented. All of these embodiments allow the software to run when an appropriate licensing procedure is followed. *See Klausner Decl.*, ¶ 8. Thus, Uniloc's proposed construction is consistent with the claim language and the patent specification.

In contrast, once again, Microsoft seeks to have limitations added to the claim language from the specification. Microsoft's proposed construction is improper for two reasons. First, Microsoft seeks to add the words "if and only if" to its definition, however, these words do not appear in the asserted claims of the '216 patent. Likewise, Microsoft's proposed additional verbiage "where users register themselves with the software vendor by providing data that enables the vendor to contact the user" appears nowhere in the asserted claims. Once again, Microsoft runs afoul of the maxim that the Court "cannot construe [a] claim to add a limitation not present in the claim itself." *Nellcor,* 402 F.3d at 1371.

| *Local Licensee Unique ID Generating Means* | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Function to create a local licensee unique ID; Structure: software (e.g. algorithm) or | This term is construed and applied in accordance with 35 U.S.C. § 112, ¶ 6. |

| | |
|---|---|
| hardware (e.g. summer) | The functional aspect of this term requires the generation of a licensee unique ID/registration key.<br><br>The sole corresponding structure disclosed in the specification for performing the function of this term is a summer |

This is the first "means-plus-function" term for construction pursuant to 35 U.S.C. § 112, ¶ 6. Thus, the Court must determine: (1) the function this term describes, and (2) the structure in the patent that performs such function. *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257-58 (Fed. Cir. 1999). This determination is relevant to later phases of the litigation because a means-plus-function limitation is literally infringed when the accused device performs the identical function by means of a structure identical or equivalent to those described in the patent specification. *See WMS Gaming, Inc. v. Int'l. Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999).

The function described by this term could not be more apparent; it is to create a local licensee unique ID.[5] *See Klausner Decl.*, ¶¶ 9-10. The '216 patent discloses both hardware and software for creating a licensee unique ID. *See, e.g.*, Ex. A, col. 5, ll. 61-67; col. 10, ll. 48-53, col. 11, ll. 43-57, col. 12, ll. 62-65. Thus, the structure disclosed in the patent for performing this function can be software (e.g. an algorithm) or hardware (e.g. a summer). *See Klausner Decl.*, ¶¶ 9-10. This construction is properly consistent with the patent specification. *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F3d 1367, 1371 (Fed. Cir. 2003) ("claims must be construed so as to be consistent with the specification, of which they are a part").

---

[5] The word "local" in this context is to be compared with the word "remote" in the next term to be construed. "Local" refers to the software user's side of the transaction (e.g. a home user of a Windows product). "Remote" refers to the Microsoft, or other software vendor, side of the transaction.

In contrast, Microsoft's proposed construction attempts to introduce a new and unnecessary term "registration key." Again, this additional language is not found in this claim term and is improperly being imported from the specification into the claim. *Comark*, 156 F.3d at 1186. Microsoft also artfully attempts to limit the structure for performing this function to a hardware summer. However, the patent discloses hardware and software for generating licensee unique ID's. The Court must determine the structure corresponding to this function in view of the understanding of one of ordinary skill in the art. *Phillips*, 415 F.3d at 1313; *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). One of ordinary skill in the art reading the patent specification would recognize that the local licensee unique ID generating means can be either hardware or software. *Klausner Decl.*, ¶ 10. Thus, Microsoft's attempt to exclude software from this definition is inappropriate and should be rejected.

| ***Remote Licensee Unique ID Generating Means*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Function to create a remote licensee unique ID; Structure: software (e.g. algorithm) or hardware (e.g. summer) | This term is construed and applied in accordance with 35 U.S.C. § 112, ¶ 6.<br><br>The sole corresponding structure disclosed in the specification for performing the function of this term is a summer. |

The remote licensee unique ID generating means creates a remote licensee unique ID. *See supra* p. 9 at note 5. As with the local licensee unique ID generating means, this means-plus-function term must also be construed consistently with the specification such that the corresponding structure for performing this function can be software (e.g., an algorithm) or hardware (e.g. a summer). *Klausner Decl.*, ¶ 10; *Merck*, 347 F3d at 1371 ("claims must be construed so as to be consistent with the specification, of which they are a part").

| *Mode Switching Means* | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Function: to permit the data to run in a use mode;<br>Structure: software (e.g. program code) or hardware (e.g. comparator) | This term is construed and applied in accordance with 35 U.S.C. § 112, ¶ 6.<br><br>With regard to the functional aspects of this term, the digital data can only be used in the use mode if the locally generated licensee unique ID is generated before the remotely generated licensee unique ID, and the two match. (claim 1)<br><br>With regard to the functional aspects of this term, the software can only be used in the fully enabled mode if the locally generated registration key matches identically with the remotely generated enabling key provided by the mode-switching means by the intending user (claim 17)<br><br>With regard to the functional aspects of this term, the digital data can only be used in the use mode if the locally generated licensee unique ID matches the remotely generated licensee unique ID. (claims 19 and 20)<br><br>The sole corresponding structure disclosed in the specification for performing the function of this term is a comparator. |

This presents another means plus-function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6. As the words suggest, this term relates to allowing the software to run in one mode versus another. *See Klausner Decl.*, ¶ 11. More particularly, this term refers to permitting the software or data to run in a "use mode" (addressed below). *See Klausner Decl.*, ¶ 11. This is described, for example, in column 3, lines 22-45 of the '216 patent. The patent also describes the mode switching means as follows:

> In a further broad form of the invention, there is provided a method of control of distribution of software, the method comprising providing mode-switching means

> associated with the software adapted to switch the software between a fully enabled mode and a partly enabled or demonstration mode;

Ex. A, col. 4, lines 30-35.

Thus, Uniloc's proposed construction is consistent with the patent specification which discloses both hardware and software for performing this function. *Klausner Decl.*, ¶ 11; *Merck v. Teva*, 347 F3d at 1371 ("claims must be construed so as to be consistent with the specification, of which they are a part").

Microsoft's proposed construction seeks to import a host of additional limitations into this claim term in order improperly to submit numerous versions of this term to the jury. Microsoft's proposed constructions are incorrect because they violate the maxim that courts "cannot construe [a] claim to add a limitation not present in the claim itself." *Nellcor*, 402 F.3d at 1371. Microsoft's proposed multiple constructions are also objectionable because they would only serve to confuse the jury. *Sulzer Textil*, 358 F.3d at 1366 ("Court's claim construction should be such that it can be "understood and given effect by the jury.").

| ***Use Mode*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Use of the digital data or software in accordance with the license | Use of the digital data or software by its execution on a platform so as to fulfill the seller's/licensor's obligations in relation to the sale or license of the right to execute the digital data or software in the use mode. The use mode is to be distinguished from what might generally be termed unlicensed modes of operation (which is not to say unauthorized modes of operation) as typified by demonstration modes |

The function associated with this term is straight-forward and is described in column 2, lines 40-48 of the '216 patent:

> In this specification, "use mode" refers to use of the digital data or software by its execution on a platform so as to fulfill the seller's/licensor's obligations in relation to the sale or license of the right to execute the digital data or software in the use mode. The use mode is to be distinguished from what might generally be termed unlicensed modes of operation (which is not to say unauthorized modes of operation) as typified by the demonstration modes later described in this specification.
>
> Ex. A, col. 2, lines 40-48.

It is clear that the term "use mode" is tied to the issue of fulfilling licensing obligations. *See Klausner Decl.*, ¶ 12. Thus, as the above excerpt demonstrates, the term "use mode" means use of the software or digital data in accordance with the license.

Microsoft's proposed construction is, again, overly verbose and intended only to confuse the jury. Microsoft transforms the two words "use mode" into a seventy-two word recital from the specification. This is textbook legal error in a patent case. Microsoft is improperly seeking to import these limitations from the specification into the term "use mode." As previously stated, this approach to claim construction is legally impermissible. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims"); *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself"). The words Microsoft wants to add are not present in the claim itself and Microsoft's proposed construction is improper.

| ***Information Uniquely Descriptive of the Licensee*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Information, by itself or in combination, that is uniquely associated with the intended licensee | One-of-a-kind information that describes a person who is not presently a licensee, but who intends in the future to license the digital data |

This term is straightforward. It is intended to describe a unique association between certain "information" and the "licensee." *See Klausner Decl.*, ¶ 13. Although the specification

gives numerous examples of the types of "information" that can be used in this regard, no particular type of information is included in the claim language. *See, e.g.*, Ex. A, col. 3, ll. 50-53; col. 4, ll. 6-11; col. 7, ll. 8-20; col. 11, ll. 43-65. Thus, many types of information that create a unique association with the licensee can be used. Uniloc's proposed construction set forth above accommodates this principle.

In contrast, Microsoft's proposed construction changes the claim language "intended user" to one "who intends in the future to license" the digital data. If the inventor had intended this phrase to be "intended licensee," instead of "intended user," he would have done so. Microsoft's attempt to change the meaning of the claim language should, therefore, be rejected.

Microsoft compounds its error by also requesting that the term "information" be construed as "one-of-a-kind information." These additional limitations which are not in the claim cannot be read into the claim language from the specification. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims"); *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself"). Thus, Microsoft's proposed construction should be rejected.

| ***Checking By The Registration Authority That Information Unique To The User Is Correctly Entered*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Verifying that the information entered by the user is the information unique to the user | At the point in time when the security key is generated on the local side, the remote side checks to ensure that information unique to the user was entered by the user without errors or mis-entry, with respect to how the user intended to enter it |

This is another straightforward claim term. As explained above, the registration authority is typically a software vendor such as Microsoft. This claim term reflects the concept that the

registration authority needs to verify that the information unique to the user has been correctly entered, *i.e.*, that it is information "unique to the user." *See Klausner Decl.*, ¶ 14.

Microsoft proposes another compound and verbose construction unsupported by the claim language itself. Microsoft proposes that the information must also include the language "with respect to how the user *intended* to enter it." (italics added) There is nothing in this claim, however, directed to the intent of the user. These additional limitations Microsoft seeks to add to the claim language are plainly improper. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims."). *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself."). Moreover, Microsoft's proposed construction conveniently constructs an impossible burden of proof that would require Uniloc to submit evidence of what the user intended to enter.

| ***Registration Key Generating Means*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Function to create a local licensee unique ID; Structure: software (e.g. algorithm) or hardware (e.g. summer) | This term is construed and applied in accordance with 35 U.S.C. § 112, ¶ 6.<br><br>The sole corresponding structure disclosed in the specification for performing the function of this term is a summer |

This is a means-plus-function clause to be construed pursuant to 35 U.S.C. § 112, ¶ 6. The term plainly relates to creating a registration key. *See Klausner Decl.*, ¶¶ 9-10. The registration key is referred to in the patent as the local licensee unique ID. *See, e.g.*, Ex. A, col. 5, ll. 61-64 ("The code portion 38 includes an algorithm adapted to generate a registration number 66 or local licensee unique ID or registration key which characterizes the licensee."). Thus, for the sake of consistency, this function associated with the term is creating a local licensee unique ID. As with the means-plus-function clauses addressed above, the patent

discloses both software and hardware as structure for creating local and remote licensee unique IDs. *See, e.g.*, Ex. A, col. 5, ll. 61-67; col. 10, ll. 48-53, col. 11, ll. 43-57, col. 12, ll. 62-65. One of ordinary skill in the art would recognize from the patent disclosure that the structure for the registration key generating means can be software (e.g., an algorithm) or hardware (e.g., a summer). *See Klausner Decl.*, ¶ 10.

Microsoft's proposed construction ignores the functional aspect of the claim. Therefore, Microsoft cannot object to Uniloc's proposed function construction. Microsoft, however, requests the Court to limit the structure associated with the function to a physical component, *i.e.*, a summer. Microsoft's proposed construction is directly at odds with the teaching of the patent. The '216 patent discloses numerous hardware <u>and software</u> features that are used in combination or separately in various embodiments. *See, e.g.*, Ex. A, col. 5, ll. 61-67; col. 10, ll. 48-53, col. 11, ll. 43-57, col. 12, ll. 62-65. There is no requirement that an inventor set forth every possible manner of making and using the patented inventions. Otherwise, a patent would be nothing more than a manufacturing specification. *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532 (Fed. Cir. 1991) (quoting *In re Gay*, 309 F.2d 769, 774 (CCPA 1962)). Thus, "technical details apparent to a person of ordinary skill need not be included in the specification." *Engel*, 946 F.2d at 1532. One of ordinary skill would not limit certain embodiments to only a hardware implementation and other embodiments to solely software implementations. *See Klausner Decl.*, ¶ 10. Moreover, the '216 patent specifically states that:

> The aforementioned may be applied either in dedicated electronic hardware or by means of more generalized digital computation devices such as microprocessors and the like whereby digital code or software (which may incorporate at least part of the code which, when executed, acts as a licensee unique ID generator) is fully enabled only after following a specified licensing procedure.
>
> Ex. A, col. 13, lines 42-48.

Thus, contrary to Microsoft's position, the '216 patent provides that the inventions described therein may be constructed using hardware and/or software.

**Claim Terms Designated by Microsoft**

Microsoft has designated the following additional 14 terms to be construed by the Court:

| ***Platform Unique ID Generating Means*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Function: to generate a platform unique ID; structure: software (e.g. program code) or hardware (computer logic) | This term is construed and applied in accordance with 35 U.S.C. § 112, ¶ 6.<br><br>The functional aspect of this term requires the generation of a one-of-a-kind identifier of a platform.<br><br>There is no corresponding structure disclosed in the specification for performing the function of this term. As such, all claims that include this term or depend from such claims are invalid as indefinite |

This is another means-plus-function clause that requires the Court to define both the function and the corresponding structure pursuant to 35 U.S.C. § 112, ¶ 6. The function is straightforward, namely to generate a Platform Unique ID. *See Klausner Decl.*, ¶ 15. As previously stated, the '216 patent discloses in numerous places using software (e.g., an algorithm) or hardware (e.g., a summer) for creating unique ID's. *See, e.g.*, Ex. A, col. 5, ll. 61-67; col. 10, ll. 48-53, col. 11, ll. 43-57, col. 12, ll. 62-65. Accordingly, one of ordinary skill in the art reading the '216 patent would, without any difficulty, be informed that such software and hardware could be used to generate the platform unique ID. *Klausner Decl.*, ¶ 15; *See Atmel*, 198 F.3d at 1379 (Court must determine the structure corresponding to claimed function in view of the understanding of one of ordinary skill in the art).

Microsoft takes the position that the '216 patent does not disclose structure specifically for generating a platform unique ID. Microsoft ignores the requirement that patents are not manufacturing specifications that must contain every last detail of an invention. *See Engel*, 946 F.2d at 1532 (quoting *In re Gay*, 309 F.2d 769, 774 (CCPA 1962)). Thus, "technical details apparent to a person of ordinary skill need not be included in the specification." *Engel*, 946 F.2d at 1532. Microsoft also ignores the legal requirement that a patent be construed as it would be understood by one of ordinary skill in the art. *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1346 (Fed. Cir. 2004). When these legal requirements are followed, it is apparent that one of ordinary skill would appreciate from the '216 patent that the function of generating a platform unique ID could be accomplished via software or hardware (as the patent teaches for generating other elements of the claims).

| ***[An Enabling Key] Provided To Said Mode-Switching Means By Said Intending User*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Made available to the mode-switching means by the intending user | A person who is not presently a licensee, but who intends in the future to license the digital data provides the enabling key to the mode-switching means |

Uniloc's proposed construction is consistent with the term itself and does not import any additional limitations from the specification or elsewhere. *See Klausner Decl.*, ¶ 16. Microsoft's proposed construction changes the claim language "intended user" to one "who intends in the future to license" the digital data. If the inventor had intended this phrase to be "intended licensee," instead of "intended user," he would have done so. Microsoft's attempt to change the meaning of the claim language should, therefore, be rejected. In similar vein, Microsoft's proposed definition includes the phrase "a person who is not presently a licensee." There is no language in this claim term requiring that the user presently be a licensee. Thus, Microsoft's

proposed construction would improperly import this additional limitation into the claim and is improper. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims."). *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself.").

| ***[Enabling Key Is] Communicated To Said Intending User*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Plain meaning | The enabling key is communicated to the person who is not presently a licensee, but who intends in the future to license the digital data |

Uniloc believes that the meaning of this claim term is self apparent. The plain meaning of this term is communicating the enabling key to the intended user. *See Klausner Decl.*, ¶ 17.

Microsoft's proposed construction once again would impermissibly import limitations into this term from the body of the patent. Instead of the term "intended user," Microsoft wants the Court to change the meaning to a "person who is not presently a licensee, but who intends in the future to license the digital data." Microsoft's proposed construction changes the meaning of this claim term from an intending user to someone who is not presently a licensee but will become a licensee. Microsoft's argument should be rejected because, as Microsoft knows, courts cannot change the words of the claim. *See Resonate, Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364 (Fed. Cir. 2003) (written description of the patent cannot be used as a substitute for, or to rewrite, the claim language).

| ***Fully Enabled Mode/Full Version Run*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| A mode allowing unrestricted use in accordance with the license | A mode/version in which full functionality of the software is available |

According to the '216 patent, the software or digital data may run in restricted or unrestricted mode. *See Klausner Decl.*, ¶ 18. This claim term and the next (partly enabled mode/demonstration mode) serve to distinguish between these two modes of use. Thus, "fully enabled mode" and "full version run" mean allowing unrestricted use in accordance with the license.

Microsoft's proposed construction is unacceptable because it does not explain what "full functionality" is or what "available" means.

| ***Partly Enabled Mode or Demonstration Mode*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| A mode that is more restricted than a fully enable mode | A mode in which some functions are disabled for purposes of demonstrating aspects of the software to a person who is not presently a licensee, but who may in the future choose to license it |

The terms "partly enabled mode" and "demonstration mode" refer simply to a mode that is more restricted than the unrestricted fully enabled mode. *See Klausner Decl.*, ¶ 19. This distinction is accurately represented by Uniloc's proposed construction.

Microsoft's proposed construction, once again, seeks to import limitations into the claim language in order to overly narrow its meaning. In particular, Microsoft asks the Court to add a construction that the user is "a person who is not presently a licensee, but who may in the future choose to license it." It is as improper to rewrite a claim, *Resonate,* 338 F.3d at 1364, as it is to import such a limitation into the claim language. *Nellcor,* 402 F.3d at 1371. Thus, Microsoft's proposed construction is legally improper

| ***Serial Number*** | |
|---|---|
| UNILOC'S CONSTRUCTION | MICROSOFT'S CONSTRUCTION |
| A number generated from information from the computer environment | A one-of-a-kind number that is one of a series |

The '216 patent makes several references to the term "serial number." All of these references indicate that this term refers to a value that is generated from information from the computer environment on which the software is running. *See Klausner Decl.*, ¶ 20. For example, at column 12, line 58, the patent refers to a "serial number derived from platform 83." At column 10, lines 1-2, the patent refers to a "serial number 50 generated by the self-serialization process." At column 7, lines 2-5, the patent refers to a "serial number generated from the current time on the system, the last modified date of the software, and "other information from the computer environment." Thus, Uniloc's proposed construction of the term "serial number" is correct because it is consistent with the use of that term in the patent specification. *Merck*, 347 F.3d at 1371 ("claims must be construed so as to be consistent with the specification, of which they are a part").

Microsoft's proposed construction conveniently attempts to introduce two concepts by adding language not in the claim. Microsoft wants this term construed as "one-of-a-kind" that is also "one of a series." The claim language does not contain these terms and the teaching of the patent specification does not require that the serial number be one-of-a-kind as well as one of a series. Thus, Microsoft's attempt to import these limitations into the claim language should be rejected. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims"); *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself").

| ***includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID*** | |
|---|---|
| UNILOC'S CONSTRUCTION | MICROSOFT'S CONSTRUCTION |
| The remote licensee unique ID generating means includes the algorithm used by the local licensee unique ID generating means and generates a licensee unique ID | The identical algorithm must be used locally and remotely to generate the licensee unique ID/security key/registration key/enabling key, and the algorithm cannot involve the use of encryption or decryption technology |

This claim term is relatively self-explanatory. *See Klausner Decl.*, ¶ 21. Uniloc's proposed construction thereof is set forth above.

In contrast, Microsoft again seeks to introduce improper and extraneous limitations into this term. For instance, Microsoft wants to change the word "algorithm" to "identical algorithm." Such an additional limitation is not found in the claim language and should not be imported therein from elsewhere. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims"); *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself").

Microsoft further asserts that the algorithm must be used locally and remotely. These two limitations do not appear in this claim term and should not be imported therein. Microsoft also wants the Court to add a limitation that this function "cannot involve the use of encryption or decryption technology." All of these additional limitations are improper and constitute nothing more than an attempt by Microsoft to have the Court construe this term in an overly narrow manner.

| ***Wherein Said Registration System Is Replicated At The Registration Authority*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Wherein the registration authority also has a system that generates a security key | The registration system and all of its features and capabilities, including the features of |

| | |
|---|---|
| | generating a security key and checking that information unique to the user is correctly entered at the time that the security key is generated, must be present on both the local and the remote sides. Generating a security key cannot involve the use of encryption or decryption technology |

This claim term plainly contemplates that there is a registration system at the registration authority (e.g., Microsoft), as well as at the user location. *See Klausner Decl.*, ¶ 22. As indicated in the proposed constructions above, both Uniloc and Microsoft agree that the registration system creates or generates a security key. Uniloc's proposed construction is consistent with these two elements of this claim chart. Thus, Uniloc's construction should be adopted.

On the other hand, Microsoft again seeks to import numerous additional limitations into the claim in order to obtain an incorrect and overly-narrow construction. Microsoft's proposed construction would also require Uniloc to prove that the system on each side checks the information unique to the user is correctly entered. In addition, Microsoft asks the court to import a limitation into the claim language. This claim term says nothing about checking the information is correctly input and says nothing about excluding encryption or decryption technology. Therefore, Microsoft's proposed construction is legally impermissible and should be rejected. *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself").

| ***[Said Enabling Key] Generated By A Third Party Means Of Operation Of A Duplicate Copy Of Said Registration Key Generating Means*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Function: generating an enabling key; Structure: software (e.g. program code) or hardware (computer logic). Generating an | A duplicate copy of the registration key generating means is present on the remote side, and generates the enabling key. The registration key generating means cannot |

| | |
|---|---|
| enabling key by a third party. | involve the use of encryption or decryption technology. |

This is another means-plus-function term to be construed pursuant to 35 U.S.C. § 112, ¶ 6. The function described by this claim term is for a third party (such as Microsoft or other software vendor) to generate an enabling key. *See Klausner Decl.*, ¶¶ 9-10. The structure disclosed in the patent for generating the enabling key is software (e.g., program code) or hardware (e.g., computer logic). *See, e.g.*, Ex. A, col. 5, ll. 61-67; col. 10, ll. 48-53, col. 11, ll. 43-57, col. 12, ll. 62-65. Thus, Uniloc's proposed construction should be adopted because it is fully consistent with the patent specification. *See Klausner Decl.*, ¶ 10; *Merck*, 347 F3d at 1371 ("claims must be construed so as to be consistent with the specification, of which they are a part").

Microsoft seeks to add a limitation to this claim term that the registration key generating means cannot involve the use of encryption or decryption technology. This restriction is not found in this claim term and it would be improper to import it into this term. *Comark*, 156 F.3d at 1186 ("limitations from the specification are not to be read into the claims"); *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself").

Microsoft apparently contends that Uniloc foreswore using encryption or decryption in this manner during prosecution of the application for the '216 patent. Microsoft misconstrues Uniloc's statement to the Patent & Trademark Office ("PTO"). Uniloc stated to the PTO that this invention "does not *require* that an encryption key" be used and "does not *require* any decryption key" to be used (italics added). *See* Ex. E, p. 9. Stating that the invention does not "require" encryption/decryption is a far cry from stating that encryption/decryption can never be used in connection with this invention. Uniloc did not unambiguously, or otherwise, disavow

any and all use of encryption and decryption. Accordingly, Microsoft's attempt to limit this term to exclude any and all encryption/decryption via the doctrine of prosecution history estoppel should be rejected. *Sorenson v. U.S. Int'l Trade Comm'n*, 427 F.3d 1375, 1378-79 (Fed. Cir. 2005) ("[d]isclaimers based on disavowing actions or statements during prosecution, however, must be both clear and unambiguous").

| ***Has Matched*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| Corresponds with or is a counterpart to | A direct comparison between the locally generated licensee unique ID/registration key and the remotely generated licensee unique ID/enabling key shows that the two are the same |

Uniloc's straightforward construction is consistent with the plain meaning of the concept of matching. *See Klausner Decl.*, ¶ 23. Moreover, Uniloc's construction is one that a jury can readily understand. *Vitronics*, 90 F.3d at 1592 ("[w]ords of a patent claim are generally given their ordinary and customary meaning"); *Sulzer Textil*, 358 F.3d at 1366 ("Court's claim construction should be such that it can be "understood and given effect by the jury").

Microsoft's proposed construction seeks to change and add extraneous limitations to this claim language. For example, Microsoft proposes using the words "direct comparison" (undoubtedly because Microsoft will then argue the accused products only perform an indirect comparison). Microsoft is attempting to change the meaning of this claim language. *Nellcor,* 402 F.3d at 1371 (courts "cannot construe [a] claim to add a limitation not present in the claim itself"). Matching simply does not mean directly comparing. Likewise, Microsoft proposes additional language that the two thing being compared "are the same." The concept of matching

does not require that two things "are the same." For instance, pieces of clothing can match but not be the same. Depending upon margins of error, values can match but not be "the same." Two identical things can match, but they are not "the same" thing. Thus, Microsoft's proposed over-elaborate construction should be rejected as inconsistent with the maxim that "[w]ords of a patent claim are generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1592. Notably, no such limitations are found in the allowed claims of the '216 patent.

| ***Mode Switching Means Will Permit Said Data To Run In Said Use Mode in Subsequent Execution Only If Said Platform Unique ID Has Not Changed*** | |
|---|---|
| **UNILOC'S CONSTRUCTION** | **MICROSOFT'S CONSTRUCTION** |
| the mode switching means will allow the program to keep running as long as the platform unique ID has not changed | The mode switching means will permit the data to run in the use mode only if the platform unique ID is identical to what it was the previous time the digital data were run |

According to the Federal Circuit, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316. Uniloc proposes just such a construction. *See Klausner Decl.*, ¶ 24. Uniloc's definition stays true to the claim language that the program will keep running as long as the platform unique ID "has not changed", a phrase that a jury will readily understand. *See Sulzer Textil*, 358 F.3d at 1366 ("Court's claim construction should be such that it can be "understood and given effect by the jury").

Microsoft's proposed construction alters the claim language such that the program will run "only if the platform unique ID is identical to what it was the previous time the digital data were run." Microsoft's proposed language is not found in this claim term. Instead, the inventor chose to use the words "has not changed." It is well settled "courts do not redraft claims."

*Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995). Thus, Microsoft's proposed construction should be rejected.

## CONCLUSION

For the reasons set forth above, Uniloc requests the Court to adopt Uniloc's proposed claim constructions.

**UNILOC USA, INC.**
**UNILOC SINGAPORE PRIVATE LIMITED**

Dated: February 24, 2006 By: ______________________

Francis A. Connor, III (R.I. Bar No. 4640)
Sheri L. Pizzi (R.I. Bar No. 5720)
**TAYLOR DUANE BARTON & GILMAN, LLP**
10 Dorrance Street, Suite 700
Providence, Rhode Island 02903
(401) 273-7171 (Telephone)
(401) 273-2904 (Facsimile)

Paul J. Hayes, Esq.
Dean G. Bostock, Esq.
Paul J. Cronin, Esq.
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
(617) 542-6000 (Telephone)
(617) 542-2241 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served on counsel for Microsoft Corporation, Joseph V. Cavanagh, Esq. of Blish and Cavanagh, Commerce Center, 30 Exchange Terrace, Providence, Rhode Island 02903 by hand-delivery and Frank E. Scherkenbach, Esq. of Fish & Richardson P.C., 225 Franklin Street, Boston, Massachusetts 02110 by first class mail on February 24, 2006.

______________________
Sheri L. Pizzi