# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

UNILOC USA, INC., and

UNILOC SINGAPORE PRIVATE LIMITED,

Plaintiffs,

vs.

MICROSOFT CORPORATION,

Defendant.

Civ. A. No. 03-CV-440 (WES)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF INEQUITABLE CONDUCT

# TABLE OF CONTENTS


I. BACKGROUND ........ 1

II. SUMMARY OF ARGUMENT ........ 2

III. APPLICABLE LAW ........ 3

A. Summary Judgment Standard ........ 3

B. Inequitable Conduct ........ 4

IV. ARGUMENT ........ 4

A. The Grundy Letter ........ 5

B. The Coorey Letters ........ 6

C. Statements To The Pto Regarding Grundy Patent ........ 9

D. The German Reference ........ 10

E. Inventorship ........ 13

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Akzo N.V. v. U.S. Intern. Trade Com'n*,
808 F2d 1471 (Fed. Cir. 1986)....................9

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
725 F.2d 1350 (Fed. Cir.), *cert. denied*, 469 U.S. 821 (1984)....................10

*August v. Offices Unlimited, Inc.*,
981 F.2d 576 (1st Cir. 1992)....................3

*Becton Dickinson and Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990)....................3

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
977 F.2d 1555 (Fed. Cir. 1992)....................10

*Burlington Indus., Inc. v. Dayco Corp.*,
849 F.2d 1418 (Fed. Cir. 1988)....................4

*Chambers Steel Engraving Corp. v. Tambrands, Inc.*,
895 F.2d 858 (1st Cir. 1990)....................3

*Dayco Products, Inc. v. Total Containment, Inc.*,
329 F.3d 1358 (Fed. Cir. 2003)....................2, 4

*Digital Control Inc. v. Charles Machine Works*,
437 F.3d 1309 (Fed. Cir. 2006)....................2

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
110 F.3d 1573 (Fed. Cir. 1997)....................9

*Halliburton Co. v. Schlumberger Tech. Corp.*,
925 F.2d 1435 (Fed. Cir. 1991)....................6, 8, 12, 13, 14

*Hebert v. Lisle Corp.*,
99 F.3d 1109 (Fed. Cir. 1996)....................6, 8, 9, 11

*Kimberly-Clark Corp. v. Procter & Gamble Distributing Co., Inc.*,
973 F.2d 911 (Fed. Cir. 1992)....................12

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*,
863 F.2d 867 (Fed. Cir. 1988), *cert. denied*, 490 U.S. 1067 (1989)....................4

*Life Techs., Inc. v. Clontech Labs., Inc.*,
224 F.3d 1320 (Fed. Cir. 2000)........................................9

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*,
244 F.3d 1365 (Fed. Cir. 2001)........................................7

*Micro Chem, Inc. v. Great Plains Chem. Co.*,
103 F.3d 1538 (Fed. Cir.), cert. denied, 521 U.S. 1122 (1997)........................................2

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995)........................................4

*Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*,
225 F.3d 1315 (Fed. Cir. 2000)........................................4

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
927 F.2d 1565 (Fed. Cir. 1991)........................................3, 4

**FEDERAL STATUTES**

35 U.S.C. §§ 111(a)(2)(C), 115........................................14

35 U.S.C. § 282........................................10

Fed. R. Civ. P. 56(c)........................................3

Plaintiffs, Uniloc USA, Inc. and Uniloc Singapore Private Ltd. (together "Uniloc"), respectfully submit this memorandum of law in support of their motion for partial summary judgment that Uniloc did not engage in inequitable conduct before the Patent & Trademark Office ("PTO") during prosecution of Uniloc's U.S. Patent No. 5,490,216 ("the '216 patent"). For the reasons set forth below, Uniloc requests that this motion be granted.

## I. BACKGROUND

Uniloc filed the complaint herein against defendant, Microsoft Corporation ("Microsoft"), in September 2003. Microsoft filed an answer and counterclaim in November 2003. In November 2004, Microsoft filed a first amended answer and counterclaim ("FAAC"), Court Docket Entry # 29. As count III of its FAAC, Microsoft alleges that the '216 patent is unenforceable due to acts of inequitable conduct by the inventor of the '216 patent (Mr. Ric Richardson) and his patent attorney during prosecution of the '216 patent in the PTO. A copy of the pertinent pages of the FAAC are submitted herewith as exhibit A.

The alleged acts of inequitable conduct are "the failure to make the USPTO aware of highly material information known to, and highly material misrepresentations made to the USPTO by or on behalf of, the sole named inventor, Mr. Richardson, prior to issuance of the '216 patent." Ex. A, ¶ 34. More particularly, Microsoft accuses Mr. Richardson and his patent attorneys of:

(1) withholding, with intent to deceive the PTO, two items of correspondence sent by a third party to the Australian Patent Office in connection with the prosecution of Mr. Richardson's Australian patent application;

(2) withholding, with intent to deceive the PTO, a copy of a German patent application;

(3) intentionally lying to the PTO about the content of a prior art reference (the Grundy patent) that Mr. Richardson's attorney himself brought to the attention of the PTO, and

(4) intentionally lying to the PTO that Mr. Richardson is the sole inventor of the subject matter claimed in the '216 patent.

*See* Ex. A, ¶ 34.

As indicated below, these wild accusations by Microsoft are not supported by the record evidence, let alone by the requisite burden of clear and convincing evidence.

## II. SUMMARY OF ARGUMENT

"Inequitable conduct consists of an affirmative misrepresentation of material fact, a failure to disclose material information, or a submission of false material information, coupled with an intent to deceive [the PTO]." *Micro Chem, Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1549 (Fed. Cir.), cert. denied, 521 U.S. 1122 (1997). Each element must be proved by clear and convincing evidence. *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362 (Fed. Cir. 2003).

Microsoft has submitted no evidence, let alone clear and convincing evidence, that the inventor (Mr. Richardson) or his patent attorney at the time did, or had any intent to, deceive the PTO during prosecution of Uniloc's '216 patent. Microsoft did not take the deposition of Uniloc's patent attorney. Mr. Richardson testified in deposition that he did not recall the prosecution of the '216 patent in the PTO. Thus, clear and convincing evidence of intent to deceive by either of these individuals is lacking. Moreover, the correspondence Microsoft relies upon regarding the Grundy patent is less material than the Grundy patent itself which Uniloc submitted to the PTO. As a result, the correspondence Microsoft relies upon does not provide a basis for inequitable conduct. *See Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006) (no obligation to disclose information less material than examiner already has). Likewise, despite the many depositions taken by it during the course of this case, Microsoft cannot present any evidence, let alone clear and convincing evidence, that any of the

other alleged malfeasances by Uniloc's inventor and attorneys did, or were made with an intent to, deceive the PTO. Thus, Microsoft's inequitable conduct claims must fail. *See Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1574 (Fed. Cir. 1991).

## III. APPLICABLE LAW

### A. Summary Judgment Standard

The grant of summary judgment is as appropriate in patent cases as it is in other types of cases. *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795-96 (Fed. Cir. 1990). Pursuant to Fed. R. Civ. P. 56(c), summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In determining a motion for summary judgment, all reasonable inferences are to be drawn in favor of the non-moving party. *Chambers Steel Engraving Corp. v. Tambrands, Inc.*, 895 F.2d 858, 860 (1st Cir. 1990). However, a party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 860. Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material of fact. *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 50 (1st Cir. 1992). "[W]hen the only question is what legal conclusions are to be drawn from an established set of facts, the entry of summary judgment usually should be directed." *Chambers Steel Engraving*, 895 F.2d at 860.

### B. <u>Inequitable Conduct</u>

Inequitable conduct is an equitable issue committed to the discretion of the trial court. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (*in banc*), *cert. denied*, 490 U.S. 1067 (1989)). "The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for the jury to decide." *Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000). *Ipso facto*, granting this motion for summary judgment will not deprive Microsoft of any right to a jury trial.

To prevail on the issue of inequitable conduct, Microsoft must prove that: (1) Uniloc, its patent attorneys or the inventor failed to disclose material information, or submitted false or misleading material information, to the PTO, ***and*** (2) that Uniloc, its attorneys or the inventor acted with an intent to deceive the PTO. *Scripps Clinic v. Genentech*, 927 F.2d at 1574 (summary judgment of no inequitable conduct). These elements must be proved by clear and convincing evidence. *Dayco v. Total Containment*, 329 F.3d at 1362.

## IV. <u>ARGUMENT</u>

As it does in virtually every case in which it is sued for patent infringement, Microsoft accuses the plaintiffs herein and their patent lawyers of deliberately perpetrating fraud upon the PTO. This case is no exception. As the Federal Circuit has previously observed, however, such a habit of defendants charging inequitable conduct in patent cases has become "an absolute plague". *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995) (citing *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)). Moreover, as explained by the Federal Circuit, "unjustified accusations of inequitable conduct are offensive and unprofessional" and "should be condemned." *Molins*, 48 F.3d at 1182. Similarly, Microsoft's accusations of inequitable conduct against Uniloc are unjustified and should be rejected.

Uniloc addresses separately below the grounds upon which Microsoft bases its allegation of inequitable conduct.

**A. <u>The Grundy Letter</u>**

Uniloc originated in Australia and the inventor of the '216 patent (Ric Richardson) is an Australian, although he now lives in the United States. The first patent application for the subject matter of the '216 patent was filed on behalf of Mr. Richardson in Australia in September 1992. The corresponding U.S. application that became the '216 patent was filed in September 1993. *See* Ex. B, front page. In that same year, the pendency of Mr. Richardson's Australian patent application became known to another Australian patent applicant, Mr. Grundy. Apparently, Mr. Grundy became aware of a press release issued by Uniloc some time in or around 1993. Mr. Grundy wrote a letter to Mr. Richardson dated October 13, 1993. Ex. C. This letter post-dates the filing date of Mr. Richardson's patent application. Therefore, it does not constitute prior art to Mr. Richardson's patent.

In his letter, Mr. Grundy asserted that his (Mr. Grundy's) U.S. patent application covered exactly the system described in Uniloc's (unidentified) press release. Mr. Grundy did not claim that he invented before Mr. Richardson and did not provide Mr. Richardson with a copy of his (Mr. Grundy's) patent application, or even the date on which the application was filed. The letter is not an attack upon Mr. Richardson's patent application. It does not even mention it. Rather, Mr. Grundy admits to having made no progress in marketing his own system and invites Mr. Richardson to pool their resources. *See* Ex. C. Thus, the letter is discussing a potential business relationship.

Microsoft has provided no evidence: (1) that Mr. Richardson believed the Grundy letter to have any relevance to the validity of the Uniloc patent application; (2) that Mr. Richardson believed any obligation existed requiring him to provide the non-prior art letter to the PTO, or

(3) that Mr. Richardson had any intent to deceive the PTO by not providing the irrelevant, non-prior art letter. Accordingly, Microsoft has not shown by clear and convincing evidence that Mr. Richardson or Uniloc engaged in inequitable conduct. *Hebert v. Lisle Corp.*, 99 F.3d 1109 (Fed. Cir. 1996) ("[i]ntent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent").

In addition, the Grundy letter, absent any dates that would indicate Mr. Grundy's rights were in any way superior to those of Mr. Richardson, is legally a non-event. Therefore, the fact that it was not provided to the PTO by Mr. Richardson is immaterial. In any event, Mr. Richardson went one better than providing the Grundy letter to the PTO - he provided the Grundy patent referenced in the letter! Ex. M. While the Grundy patent date-wise is prior art to Uniloc's '216 patent, the Grundy letter dated October 13, 1993 is not. Thus, at the very best, assuming, although it is not true that the letter were prior art, it would be merely cumulative to, and less material than, the Grundy patent that was provided to the PTO by Uniloc. For this additional reason, Mr. Richardson did not engage in inequitable conduct regarding the Grundy letter. *See, e.g., Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440 (Fed. Cir. 1991) (patent applicant has "no obligation" to disclose to the PTO references that are "cumulative or less material than those already before the examiner").

**B. The Coorey Letters**

Microsoft's second attack upon Mr. Richardson fails for the same reasons. As an initial matter, Mr. Coorey was the Australian patent attorney for Mr. Grundy's company (called Tryware). Mr. Coorey was also a director of Tryware. Thus, at the time he wrote these two letters, Mr. Coorey was not a disinterested party. To the contrary, he was an attorney for, and director of, Mr. Grundy's company and, therefore, well motivated to protect the interests of Tryware and Mr. Grundy at the expense of Uniloc.

Microsoft alleges that Uniloc engaged in inequitable conduct by failing to disclose two letters from Mark J. Coorey to the Australian Patent Office.[1] Exs. D & E. These letters were dated November 20, 1994 and January 11, 1995, respectively. Microsoft's argument fails because: (1) as a matter of law, Uniloc had no obligation to disclose these letters to the PTO; and (2) the non-technical letters are also less material than the Grundy '598 patent that Uniloc disclosed to the PTO.

The November 20, 1994 letter references Mr. Grundy's '598 patent and the January 11, 1995 letter references the Grundy U.S. patent number 5,375,240 ("the '240 patent").[2] Neither letter provides any technical analysis of the Grundy patents or any technical comparison between the Grundy patents and the Uniloc patent. The November 20, 1994 letter asserts, without explanation, that the Uniloc patent is in "direct conflict," whatever that may mean, with the Grundy '598 patent. This letter also states that the Grundy '598 patent was filed six months before the Uniloc patent. The January 11, 2005 letter merely identifies the '240 patent.

Uniloc had no obligation whatsoever to submit these two letters to the U.S. PTO. According to the Federal Circuit, "opinions regarding a prior art device known to the examiner are not within the domain of material that must be submitted to the PTO." *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1378 (Fed. Cir. 2001). Thus, as a matter of law, Mr. Coorey's unsupported opinion in the November 24, 2004 letter that the Grundy '598 patent and the Uniloc patent were in "direct conflict" did not obligate Uniloc to submit the November 20, 1994 letter or the January 11, 1995 letter to the PTO. As a result, the Coorey letters cannot provide the basis for inequitable conduct.

---

[1] For the purposes of this motion only, Uniloc does not dispute that it had possession of the Coorey letters at the time.

[2] The '240 patent is a "continuation" of the '598 patent. Thus, the '240 patent and the '598 patent have the same drawings and specifications.

A similar accusation as Microsoft makes here was made by the defendant in *Hebert v. Lisle Corp.*, 99 F.3d 1109 (Fed. Cir. 1996). In that case, Mr. Hebert submitted his invention to Lisle with an offer of a license under his pending patent application. *Id.* at 1112-13. Lisle declined the offer and told Mr. Hebert that: (1) he was not the first inventor, (2) Lisle had received "prior art" from twelve other inventors, and (3) Lisle had made and distributed prototypes of the tool at issue. *Id.* In the ensuing patent litigation, Lisle accused Mr. Hebert of inequitable conduct for not submitting the letters he received from Lisle to the PTO. At trial, Lisle's expert testified that Mr. Hebert had a duty to provide the letters to the PTO regardless of whether or not the letters were prior art information and whether or not the letters were not provided to the PTO with the intent to deceive the Examiner. *Id.* at 1115. As the Federal Circuit stated on appeal therein, "[t]hese were not correct statements of law." *Id.* The Lisle letters post-dated Mr. Hebert's patent filing and, therefore, did not constitute prior art to be disclosed to the PTO. Likewise, in the present case, the letters from Mr. Grundy and his patent attorney post-date the September 1992 filing date of Uniloc's patent application.

The Coorey letters were also less material than the '598 patent that Uniloc submitted to the PTO. A patent applicant, such as Uniloc, has no obligation to disclose information to the PTO that is less material than is already before the PTO examiner. *See Halliburton v. Schlumberger*, 925 F.2d at 1440. As Uniloc submitted the '598 patent to the PTO, the examiner was aware that the Grundy '598 patent was filed six months prior to the Uniloc patent as stated in the November 24, 2004 letter. Moreover, it is self-apparent that the Grundy '598 patent that Uniloc submitted to the PTO is more material than the two self-serving Coorey letters that contained no technical detail at all. Furthermore, "[i]ntent to deceive [the PTO] can not be inferred solely from the fact that information was not disclosed; there must be a factual finding

of deceptive intent." *Hebert v. Lisle Corp.*, 99 F.3d at 1116. There is no evidence showing that Uniloc intended to deceive the PTO by not submitting the Coorey letters, particularly as Uniloc timely submitted the Grundy '598 patent. *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1580 (Fed. Cir. 1997) (evidence of Uniloc's good faith must be considered).

### C. <u>Statements To The PTO Regarding Grundy Patent</u>

Although it concedes, as it must, that Uniloc submitted the Grundy '598 patent to the PTO, Microsoft argues that Uniloc's patent attorney made false statements to the PTO regarding the content of that patent. According to Microsoft, Uniloc's patent attorney made five false statements to the PTO regarding the content of the Grundy patent. *See* Ex. A, ¶¶ 34z, ee, jj, oo, tt. However, a review of these statements reveals that they are nothing more than Uniloc's patent attorney arguing his view of the Grundy patent to the patent examiner. *Id.* The Federal Circuit has previously noted, on several occasions, that patent applicants are permitted to argue their view of the prior art to the PTO:

> First, in making the argument, the inventors merely advocated a particular interpretation of the teachings of the Johnson article and the level of skill in the art, which the Examiner was free to accept or reject.
>
> *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) (citing *Akzo N.V. v. U.S. Intern. Trade Com'n*, 808 F2d 1471, 1482 (Fed. Cir. 1986)).
>
> The mere fact that Du Pont attempted to distinguish the Blades process from the prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion regarding the Blades process based on the art in front of him.
>
> *Akzo N.V. v. U.S. Intern. Trade Com'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986), *cert. denied*, 482 U.S. 909 (1987).

That is all that Uniloc did in distinguishing the Grundy patent. As in the *Life Techs.* and *Akzo* cases, the patent examiner was free to accept or reject Uniloc's interpretation of the teachings of the Grundy patent.

Patent examiners are not neophytes. To the contrary, they are assumed "to be familiar from their work with the level of skill in the art" and their duty "is to only issue valid patents". *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir.), *cert. denied*, 469 U.S. 821 (1984).[3] Moreover, the statutory presumption of patent validity (35 U.S.C. § 282) is based in part "on the expertise of patent examiners presumed to have done their job." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992). Thus, it must be presumed that the examiner properly understood the '598 patent. Microsoft has presented no evidence, let alone clear and convincing evidence, that Uniloc or its attorneys intended to deceive the PTO into granting the '216 patent.

### D. The German Reference

In addition to its U.S. and Australian filings, Uniloc filed a patent application in Europe through the European Patent Office ("EPO"). As part of the application process in Europe, the EPO conducted a search for prior art. This search revealed German patent application number 40 19 652 A. Ex. F. On January 5, 1996, Uniloc's German patent attorney (Mr. Fiener) reported the EPO search report to Uniloc's patent attorney in Australia, Mr. Peter Maxwell. Ex. G. At the time, Mr. Maxwell was coordinating Uniloc's worldwide patent portfolio.

On January 17, 1996, Mr. Maxwell forwarded a copy of Mr. Fiener's letter to Mr. Steven Cox at Uniloc in Australia. Ex. H. In his January 17, 1996 letter, Mr. Maxwell stated to Mr. Cox that:

> Our associate has reviewed the additional citation raised by the European Patent Office (German specification 40 19 652 A1) and concluded that it *should not cause any real problems*.

Ex H (emphasis added).

---

[3] In fact, the Patent Examiner responsible for Uniloc's application was a "Primary Examiner", indicating that the examiner had significant experience in this particular technical field. [CITE]

Thus, the record evidence demonstrates that Mr. Maxwell, Uniloc's Australian patent attorney, believed that the German reference was not a real problem for Uniloc.

Microsoft's theory is that, notwithstanding the fact that the PTO had given notice that it was allowing Mr. Richardson's patent claims (*see* Ex. I) by the time the letter reached Mr. Maxwell (*see* Ex. G), Messrs. Maxwell and Cox failed to cite the German reference to the PTO in an attempt to deceive the PTO into granting the '216 patent.

Although Microsoft now accuses Uniloc and its patent attorney, Mr. Maxwell, of withholding this German reference from the PTO in an attempt to deceive the PTO, Microsoft did not take the deposition of Mr. Maxwell when Microsoft was taking numerous other depositions in Australia in this case. Thus, Microsoft has submitted no evidence, let alone clear and convincing evidence, that Mr. Maxwell did or did not do anything in an attempt to deceive the PTO.

Microsoft's attorneys did take the deposition of Mr. Cox while in Australia. However, in its numerous answers to Uniloc's interrogatory requesting the basis for Microsoft's inequitable conduct claim, Microsoft does not identify a single page of the Cox transcript in answer to Uniloc's inequitable conduct interrogatory. Microsoft's answers refer generally to the reports of two of its experts, Wallach and Nixon. Dr. Wallach does not discuss inequitable conduct in any of his reports and does not cite anywhere to the transcript of Mr. Cox. Mr. Nixon's report makes two references to the Cox transcript - one where Mr. Cox states that his job responsibilities at Uniloc included "anything that was going that [he] could help out with" and a reference wherein Mr. Cox merely recalled the name of an attorney in Mr. Maxwell's law firm. Thus, Microsoft's inequitable conduct claim is not supported by clear and convincing evidence, relies almost entirely upon attorney argument, and should be rejected as such. *Hebert v. Lisle Corp.*, 99 F.3d at

1116 ("[i]ntent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent").

Also contradicting Microsoft's inequitable conduct allegations is the timing relating to the German reference. As of January 17, 1996, when Mr. Maxwell forwarded the reference to Uniloc in Australia, the issuance fee for Uniloc's U.S. patent had already been paid to the PTO by Uniloc's U.S. patent attorney (Mr. Sewall) who sent payment of the issuance fee to the PTO on November 6, 1995. Ex. J. As of January 17, 1996, issuance of the Uniloc patent was imminent as the patent's issue date is February 6, 1996. *See* Ex. B, front page. There is no indication in this correspondence of any intent to avoid providing the German reference to the PTO prior to issuance.

A similar timing situation arose in *Kimberly-Clark Corp. v. Procter & Gamble Distributing Co., Inc.*, 973 F.2d 911 (Fed. Cir. 1992). In that case, the defendant asserted inequitable conduct because the plaintiff failed to make the PTO aware of a patent to Lawson that issued on September 22, 1987. *Id.* at 918. As of that date, however, the plaintiff had already paid the issue fee for its own application and its patent was issued six weeks later on November 3, 1987. *Id.* The district court and the appeals court determined that the plaintiff's conduct demonstrated "no evidence" of an intent to deceive the PTO. Similarly, in the present case, Uniloc's U.S. patent counsel did not receive notice of the German reference from its German attorneys until after the issue fee had been paid. As in *Kimberly-Clark*, there is not basis herein for a finding of inequitable conduct.

It is well established that "a patentee has no obligation to disclose an otherwise material reference if the reference is merely cumulative than those already before the examiner." *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440 (Fed. Cir. 1991). The

German reference was, at best, merely cumulative of the prior art that was before the patent examiner. This is reflected by Mr. Maxwell's letter stating that there was no real problem with the German reference. *See* Ex. H. Thus, Uniloc had no obligation to cite this cumulative reference to the PTO in the first place. *Id.*

**E. Inventorship**

Leaving no stone unturned, Microsoft also accuses Mr. Richardson and his patent attorneys of attempting to deceive the PTO by intentionally failing to inform the PTO that one or two other individuals (Messrs. Higgs and/or Bell) allegedly should have been named as inventors on the '216 patent. This unfounded accusation, on which Microsoft has the burden of proof by clear and convincing evidence, should be rejected for (at least) two reasons: (1) there is a lack of evidence that either Mr. Higgs or Mr. Bell invented anything in the Uniloc '216 patent, and (2) there is a lack of evidence that Mr. Richardson or his attorneys attempted to deceive anybody. Microsoft has taken the depositions of Messrs. Higgs and Bell in this case. Notably: (1) Microsoft never asked Mr. Higgs or Mr. Bell if they invented anything in the '216 patent, and (2) in the fourteen years that have passed since Mr. Richardson filed his patent application, neither Mr. Higgs nor Mr. Bell has ever made any claim in any forum that they invented anything in the '216 patent. Thus, Microsoft has failed to show, let alone by clear and convincing evidence, that either Mr. Higgs or Mr. Bell should have been identified as inventors on the '216 patent.

Messrs. Higgs and Bell are also Australians. Unlike Mr. Richardson, Messrs. Higgs and Bell still reside in Australia, where their depositions were taken in this case pursuant to a Warrant issued by this Court. In its responses to Uniloc's interrogatories, Microsoft has identified the portions of the transcripts of Messrs. Richardson, Higgs, and Bell upon which it relies in support of its inventorship argument. However, even a cursory review of these excerpts

reveals that Messrs. Higgs and Bell did not invent, and do not claim to have invented, any part of the '216 patent. More specifically, Microsoft cites to pages 50-53 of the transcript of the Higgs deposition. A copy of this excerpt is attached hereto as exhibit K. At best, this excerpt merely indicates that Mr. Higgs knew Mr. Bell. Interestingly, when asked if Mr. Bell worked with Mr. Richardson, Mr. Higgs said he did not discuss the issue with Mr. Bell. *Id.* at 50-51. This testimony does not at all demonstrate that either Mr. Higgs or Mr. Bell invented anything in the '216 patent.

Under U.S. patent law a sole inventor named on a patent application declares under federal penalties of perjury that he/she is the sole inventor of the invention(s) disclosed in the application. *See* 35 U.S.C. §§ 111(a)(2)(C), 115. In contrast to the lack of evidence that anyone other than Mr. Richardson invented the subject matter of the '216 patent, Uniloc submits the Declaration of Mr. Richardson that was filed in the PTO on or around February 16, 1994 in which he declares being the sole inventor. Ex. L. Neither Mr. Higgs nor Mr. Bell has ever submitted any claim, made under penalties of perjury or not, alleging that they invented any part of the subject matter claimed in the '216 patent. Thus, Microsoft has fallen grossly short of proving by clear and convincing evidence that Messrs. Higgs and/or Bell or anybody else should have been named with Mr. Richardson as an inventor on the '216 patent.

Microsoft must also prove intent to deceive the PTO by clear and convincing evidence. The intent to deceive the PTO must be by Mr. Richardson and/or his attorneys or agents. Microsoft did not depose Mr. Richardson's U.S. patent attorney, Australian patent attorney, German patent attorney, or any other patent attorney in this case. Microsoft has submitted no evidence whatsoever that Mr. Richardson's patent attorneys believed, suspected, or were otherwise in any way aware, that anyone other than Mr. Richardson should have been named as

an inventor on the '216 patent. Microsoft does not have any evidence that Mr. Richardson and/or his patent attorneys believed that Mr. Higgs, Mr. Bell, and/or anyone else should have been named on the patent application for the '216 patent but intentionally withheld such name(s) from the PTO with the intent to deceive the PTO into granting the patent. Accordingly, Microsoft cannot demonstrate by clear and convincing evidence that Uniloc committed inequitable conduct by intentionally failing to name anybody other than Mr. Richardson as an inventor on the '216 patent.

## V. CONCLUSION

For the reasons set forth above, Uniloc's motion for partial summary judgment on the issue of inequitable conduct should be granted.

**UNILOC USA, INC.**
**UNILOC SINGAPORE PRIVATE LIMITED**

Dated: September 21, 2006

By: /s/ Sheri Pizzi
Francis A. Connor, III (R.I. Bar No. 4640)
Sheri L. Pizzi (R.I. Bar No. 5720)
**TAYLOR DUANE BARTON & GILMAN, LLP**
10 Dorrance Street, Suite 700
Providence, Rhode Island 02903
(401) 273-7171 (Telephone)
(401) 273-2904 (Facsimile)

OF COUNSEL:

By: /s/ Dean Bostock
Paul J. Hayes, Esq.
Dean G. Bostock, Esq.
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
(617) 542-6000 (Telephone)
(617) 542-2241 (Facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on September 21, 2006.

/s/ Dean G. Bostock