UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Civil Action No. 03 440 (WES) |

**STATEMENT OF MATERIAL UNDISPUTED FACTS**
**IN SUPPORT OF MICROSOFT'S MOTION FOR SUMMARY JUDGMENT**

1. The product key used in Microsoft's product activation is provided by Microsoft. (Declaration of Laura R. Braden ("Braden Decl."), Ex. W, Transcript of January 11, 2006 Deposition of Mr. Klausner ("Klausner Tr."), 50:1-13.)

2. All of the accused Microsoft products that use product activation, except for Plus! Digital Media Edition, have a grace period during which full use of the software is allowed after the software has been installed and before activation is required. Once the license has been agreed to and the installation process is complete, the licensed software is available for use. Even though it is not yet activated, the full functionality of the software is available for use. (Declaration of Aidan Hughes ("Hughes Decl."), ¶ 8; Declaration of Caglar Gunyakti ("Gunyakti Decl."), ¶ 7.)

3. In the case of Office, the user may run the software a total of 50 times in the grace period before activation is required to maintain the full functionality of the software. (Hughes Decl., ¶ 8.)

4. In the case of Windows, the user may use the software for a set duration, e.g., 30 days, in the grace period before activation is required to maintain the full functionality of the software. (Gunyakti Decl., ¶ 7.)

5. Once the accused Microsoft software is activated, the user will have to repeat the activation process if he changes enough of the hardware on the computer on which the software is installed. (Hughes Decl., ¶ 12; Gunyakti Decl., ¶ 10.)

6. The HWID used in Microsoft's product activation is derived from information about the computer on which software is installed. (Hughes Decl., ¶ 14; Gunyakti Decl., ¶ 12.)

7. The HWID used in Microsoft's product activation cannot be backwards calculated to determine the original values that were used to generate the hash. (Gunyakti Decl., ¶ 12; Hughes Decl., ¶ 14; Braden Decl., Ex. M.)

8. In neither internet nor telephone activation does the Clearinghouse generate the PID, HWID and/or IID that were generated by the user's computer. (Declaration of Sunil Swami ("Swami Decl."), ¶ 7.)

9. The algorithm PIDStringtoPIDStruct has not been used on the Clearinghouse since a new Clearinghouse code base was implemented on or about March of 2003. (Swami Decl., ¶ 8.)

10. The outputs of PIDStringtoPIDStruct on the Clearinghouse and on the user's computer were never compared with each other for matching purposes. (Hughes Decl., ¶ 21; Gunyakti Decl., ¶ 19; Swami Decl., ¶ 8.)

11. The values abConfID and i64ConfID identified by Uniloc as alleged licensee unique IDs have also not been used on the Clearinghouse as part of generating a CID since a new Clearinghouse code base was implemented on or about March of 2003. (Swami Decl., ¶ 9.)

12. The algorithm Uniloc identifies as generating alleged licensee unique ID abConfID/i64ConfID, FEncryptDecryptUsingPIDHWID, encrypted data on the Clearinghouse while it decrypts data on the user's computer. (Swami Decl., ¶ 11; Hughes Decl., ¶ 23; Gunyakti Decl., ¶ 21.)

13. Decryption of data by FEncryptDecryptUsingPIDHWID on the user's computer occurs only after the Clearinghouse has encrypted data as part of generating the CID. (Hughes Decl., ¶ 23; Gunyakti Decl., ¶ 21.)

14. The outputs of FEncryptDecryptUsingPIDHWID on the Clearinghouse and on the user's computer were never compared with each other for matching purposes. (Hughes Decl., ¶ 24; Gunyakti Decl., ¶ 22; Swami Decl., ¶ 12.)

15. In the Office context for internet activation, when a license is created, the license data is hashed [redacted]. (Swami Decl., ¶ 13.)

16. In the Office context for internet activation, the software at the user's computer also runs the data through [redacted]. (Hughes Decl., ¶ 25.)

17. A similar hashing process, [redacted], is used to sign the CID in Office telephone activation. (Hughes Decl., ¶ 26; Swami Decl., ¶ 14.)

18. In the Windows context for internet activation, when a license is created, the license data is hashed [redacted]. (Swami Decl., ¶ 15.)

19. In the Windows context for internet activation, the software at the user's computer also runs the license data through [redacted]. (Gunyakti Decl., ¶ 23.)

20. A similar hashing process, using [redacted], is used to sign the CID in Windows telephone activation. (Gunyakti Decl., ¶ 24; Swami Decl., ¶ 16.)

21. When Microsoft Windows products are reactivated over the internet, the license or CID that was sent to the user's computer from the Clearinghouse is deleted before the reactivation request is made, so it is not sent back to the Clearinghouse along with the PID and HWID as part of the license request. (Gunyakti Decl., ¶ 25.)

22. The Product Key hash is not used in product activation for any Microsoft Office products. (Hughes Decl., ¶ 27.)

23. In internet activation for Microsoft Windows Service Pack 1 and later versions of Windows, the Product Key input by the user during installation is sent to the Clearinghouse. The Clearinghouse processes the Product Key with a [redacted] hashing algorithm to generate a Product Key hash. This Product Key hash is compared against a table of valid Product Key hashes that has been provided to the Clearinghouse by Microsoft. If the Product Key hash generated by the Clearinghouse does not match one of the Product Key hashes on the table, activation will not proceed. If activation proceeds, the Product Key hash from the table is sent back to the user's computer. (Swami Decl., ¶ 19.)

24. Upon receiving the license and during subsequent boots of the activated software, the software on the user's computer will run the Product Key originally entered by the user during activation through the [redacted] hashing algorithm to generate a Product Key hash. This Product Key hash is then compared against the Product Key hash returned from the Clearinghouse. (Gunyakti Decl., ¶ 27.)

25. In telephone activation, the software on the user's computer uses the [redacted] hashing algorithm to generate a 12-bit version of a Product Key hash, which is then sent to the Clearinghouse as part of the Installation ID. The Clearinghouse compares this Product Key hash against the table of valid Product Key hashes, and if activation proceeds, sends the Product Key hash found in the table back to the user as part of the Confirmation ID. (Gunyakti Decl., ¶ 28; Swami Decl., ¶ 20.)

26. On the user's computer, the Product Key originally entered by the user during installation is hashed using a [redacted] hashing algorithm, and the result is compared with the Product Key hash returned as part of the Confirmation ID. (Gunyakti Decl., ¶ 28.)

27. It is never the case that the result of the [redacted] hash used to generate the Product Key Hash on the user's computer is compared for matching purposes with the result of the same [redacted] hash used to generate the Product Key Hash on the Clearinghouse. (Swami Decl., ¶ 21.)

28. No accused products other than Office 2003 use a product key authenticator in product activation. (Braden Decl., Ex. W, Klausner Tr., 135:15-21.)

29. In Office 2003 internet activation, the Product Key authenticator is never extracted from the product key on the user's computer. (Hughes Decl., ¶ 28.)

30. In Office 2003 telephone activation, the Product Key authenticator is never extracted from the Product Key by the Clearinghouse. (Hughes Decl., ¶ 29; Braden Decl., Ex. W, Klausner Tr., 138:1-4; 139:3-6.)

31. Since internet activation and telephone activation are mutually exclusive, for a given activation of Office 2003 software, the algorithm used to generate the Product Key authenticator will not be executed on both sides. (Hughes Decl., ¶ 30.)

32. Hashing algorithms, such as [redacted] hashing algorithms, are not equivalent to summation algorithms. (Braden Decl., Ex. Z, Transcript of October 5, 2005 Dep. of Timothy Cooper ("Cooper Tr."), 107-109.)

33. Hashing algorithms, [redacted], were disclosed and known prior to the issuance of the '216 patent. (Declaration of Dan Wallach ("Wallach Decl.", ¶ 4 and Ex. B.)

34. Purchasing a retail copy of Microsoft's software does not give Microsoft any information about which person has purchased software with which particular Product Key printed on the back of the CD case. (Braden Decl., Ex. M.)

35. Microsoft's accused products are licensed for use on a certain number of computers, not by a certain number of users. (Braden Decl. Ex. CC, Windows XP Home Edition EULA, ¶ 1 (MS-U 533509); Ex. DD, Office 2003 EULA, ¶ 1.1 (MS-U 533484.)

36. Licensing of Microsoft's products occurs when a user -selects a box on his screen stating that he agrees to the terms of the product's EULA. (Braden Decl. Ex. A, September 1, 2005 Expert Report of David Klausner ("Klausner 9-1-05 Report"), at 5.)

37. Agreeing to the product's EULA occurs before any option to activate is presented to the user. (Braden Decl., Ex. A, Klausner 9-1-05 Report, at 5-6 and 9.)

38. Once licensed, the user is allowed to use the software in its fully functional mode during a specified grace period without activating. (Gunyakti Decl., ¶ 7; Hughes Decl., ¶ 8.)

39. After the expiration of the grace period, the user is not entitled to continue to use the software in its fully functional mode unless he or she activates the software. (Braden Decl., Ex. A, Ex. D to Klausner 9-1-05 Report; p. 51; Braden Decl., Ex. B, December 8, 2005 Rebuttal Report of Mr. Klausner, p. 41.)

40. On the user's computer, Microsoft's product activation includes logic that (1) allows the software to continue to operate in its fully functional mode after the expiration of the grace period if the software has been activated and the HWID remains within tolerance of the HWID used during activation and (2) restricts the use of the software if these requirements are not met (and the grace period has expired). (Braden Decl., Ex. A, Ex. D to Klausner 9-1-05 Report, p. 45.)

41. The logic described in the preceding paragraph is not reproduced at the registration authority. (Swami Decl., ¶ 23.)

42. Microsoft's product activation provides a user interface on the user's computer that offers options for activating over the internet or over the telephone. (Braden Decl., Ex. A, Klausner 9-1-05 Report, at 6 and 9-10.)

43. This user interface is not reproduced at the registration authority. (Swami Decl., ¶ 24.)

44. If a licensee sells his computer to another party, and thereby transfers his license under Microsoft's software to another party, although the licensee has changed, Microsoft has no way of knowing or determining that this has occurred, and there is no need to reactivate the software. (Swami Decl., ¶ 25.)

45. If a licensee upgrades his computer hardware to the point where the HWID goes "out of tolerance," then he will have to reactivate the software, even though the licensee remains unchanged. (Swami Decl., ¶ 26.)

46. In attempting to distinguish U.S. Patent No. 4,796,220 (Wolfe), Uniloc's expert Mr. Klausner concluded that Wolfe did not have a licensee unique ID because Wolfe's permission code was created/generated using hardware information from the user's computer. (Braden Decl., Ex. C, November 7, 2005 Expert Report of Mr. Klausner at 34-35.)

47. Mr. Klausner stated:

> Also, Wolfe does not generate a local and remote licensee unique ID because the user's information (such as a telephone number, Wolfe 8:34-35, 9:15-23) is never input into an identical algorithm local and remote for generating a licensee unique ID. (Wolfe, 8:32-35) I also note that Wolfe was properly characterized by the '216 patent specification that stated that Wolfe discloses "recognition of a platform on which licensed software is to be executed" ('216 Patent, 1:59-60) and that Wolfe "does not contemplate or disclose utilization of information which is unique to the user," (*Id.*, 1:60-62) because Wolfe merely calculates a value based on hardware information. Therefore, like the "hardware identification code" of Grundy, Wolfe's "permission code" is roughly akin to a "platform unique ID,"

> and is not a licensee unique ID or a security key as required by the claims of the ‘216 patent. Wolfe does not generate a local or remote licensee unique ID because the user’s information (such as a telephone number, Wolfe 8:34-35, 9:15-23) is never input to an identical algorithm local and remote for generating a licensee unique ID.

(Braden Decl., Ex. C, November 7, 2005 Expert Report of Mr. Klausner at 34-35.)

48. U.S. Patent No. 5,490,216 (‘216 Patent), entitled “System for Software Registration” claims as its earliest possible priority date September 21, 1992 and issued on February 6, 1996. (U.S. Patent No. 5,490,216.)

49. U.S. Patent No. 5,291,598 (Grundy), entitled “Method and System for Decentralized Manufacture of Copy-Controlled Software” was filed on April 7, 1992 and issued on March 1, 1994. (Braden Decl., Ex. E, U.S. Patent No. 5,291,598 (hereinafter “Grundy”).)

50. Grundy discloses a registration system for licensing execution of digital data in a full use mode. (Wallach Decl., Ex. C at Claim 1[a]; Grundy, 4:27-41; 4:50-61; 9:3-17.)

51. Grundy discloses a system that allows digital data or software to run in a mode that allows full use of the digital data or software in accordance with a license, on a platform (e.g., computer system), if and only if an appropriate licensing procedure has been followed. (Wallach Decl., Ex. C at Claim 1[a]; Grundy, 4:27-41; 4:50-61; 9:3-17.)

52. Grundy discloses that the digital data is executable on a platform (e.g., a computer system). (Wallach Decl., Ex. C at Claim 1[b]; Grundy, 4:20-26.)

53. Grundy discloses the function of generating a checksum on a local computer, which is called a user data cross-reference code. (Wallach Decl., Ex. C at Claim 1[c]; Grundy, 17:64-18:33.)

54. Grundy also discloses the function of generating a checksum on a remote computer, which is called a user data checksum. (Wallach Decl., Ex. C at Claim 1[c]; Grundy, 15:13-27.)

55. The checksum algorithm used on the local computer is the same as the checksum algorithm used on the remote computer. (Wallach Decl., Ex. C at Claim 1[c]; Grundy, 18:25-34.)

56. Grundy's user data cross-reference code and user data checksum are generated using licensee information. (Wallach Decl., Ex. C at Claim 1[c]; Grundy, 12:26-38.)

57. Grundy discloses that the checksum algorithm can be a hash algorithm. (Grundy, 18:25-34.)

58. Grundy discloses that the function of permitting use of digital data in a full use mode on the platform only if the user data cross-reference code first generated by the checksum algorithm on the local computer has matched the user data checksum subsequently generated by the checksum algorithm on the remote computer. (Wallach Decl., Ex. C at Claim 1[d]; Grundy, 4:27-34; 5:10-12; 12:67-13:2; 15:17-27; 15:46-51; 16:1-4; Fig. 3.)

59. Grundy discloses the function of generating an authorization code that is entered into a user's computer to enable operation of the digital data in a full use mode. (Wallach Decl., Ex. C at Claim 1[d]; Grundy, 4:27-34; 5:10-12; 12:67-13:2; 15:17-27; 15:46-51; 16:1-4; Fig. 3.)

60. Grundy discloses a program code that performs a comparison of two numbers (i.e., user data cross-reference code and user data checksum). (Wallach Decl., Ex. C at Claim 1[d]; Grundy, 15:17-27.)

61. Grundy discloses that the checksum generated on the local computer (i.e., user data cross-reference code) is generated before the checksum generated on the remote computer (i.e., user data checksum). (Wallach Decl., Ex. C at Claim 1[d]; Grundy, 15:10-16.)

62. Grundy discloses that the checksum algorithm on the remote computer comprises software executed on a platform which includes the identical algorithm utilized by the checksum algorithm on the local computer. (Wallach Decl., Ex. C at Claim 1[e]; Grundy, 15:10-26; 18:25-34.)

63. Grundy discloses that the checksum algorithm on the local computer generates the user data cross-reference code by execution of a registration algorithm which combines information in accordance with the algorithm (e.g., data about a user is combined by the checksum algorithm used to calculate the user data cross-reference code). (Wallach Decl., Ex. C at Claim 2[a]; Grundy, 15:52-54; 17:68-18:3; 18:25-31; Figs. 2, 5 and 6.)

64. Grundy discloses the use of information descriptive of an intending licensee similar to the descriptive information disclosed in the '216 patent (e.g., name, address). (Wallach Decl., Ex. C at Claim 2[b]; Grundy, 12:36-44; 15:10-14; Fig. 3.)

65. Grundy discloses the function of generating a hardware identification code. (Wallach Decl., Ex. C at Claim 7; Grundy, 17:9-12; 18:34-44; Figs. 4 and 5.)

66. Grundy discloses the structure for generating a hardware identification code as a checksum algorithm. (Wallach Decl., Ex. C at Claim 7; Grundy, 17:5-23.)

67. Grundy discloses the function of permitting the digital data to run in a full use mode only if the hardware identification code is identical to what it was the previous time the digital data were run. (Wallach Decl., Ex. C at Claim 7; Grundy, 17:24-39.)

68. Grundy's hardware identification code is generated by the Get User Data Module and the Generate Registration Code Module, which are part of the digital data when executed on the platform. (Wallach Decl., Ex. C at Claim 8; Grundy, 5:50-6:7; Figs. 4 and 5.)

69. Grundy discloses that the use of platform information to determine the hardware identification code. (Wallach Decl., Ex. C at Claim 9; Grundy, 17:12-23.)

70. The platform disclosed in Grundy comprises a computer operating system environment. (Wallach Decl., Ex. C at Claim 10; Grundy, 6:25-27; 25:52-53; Fig. 1.)

71. Grundy discloses that the digital data comprises a software program adapted to run under an operating system environment. (Wallach Decl., Ex. C at Claim 11; Grundy, 4:21-26; 25:52-53; Fig. 2.)

72. Grundy discloses a registration system attachable to software to be protected. (Wallach Decl., Ex. C at Claim 12[a]; Grundy, 4:50-61; 9:3-17.)

73. Grundy discloses a registration system that allows digital data or software to run in a full use mode on a platform if and only if an appropriate licensing procedure has been followed. (Wallach Decl., Ex. C at Claim 12[a]; Grundy, 4:50-61; 9:3-17.)

74. The registration system disclosed in Grundy is attachable to software to be protected. Wallach Decl., Ex. C at Claim 12[a]; Grundy, 7:56-68; 8:7-27.)

75. Grundy discloses that the local and remote checksums must match identically and that the algorithms for generating the local and remote checksums must be identical. (Wallach Decl., Ex. C at Claim 12[c]; Grundy, 15:10-27; 18:17-31; 19:53-20:16.)

76. Grundy discloses that the local checksum (i.e., user data cross-reference code) is generated by a registration number algorithm. (Wallach Decl., Ex. C at Claim 13; Grundy, 15:52-54; 18:25-31; Figs. 3, 5 and 6.)

77. Grundy discloses a method of control of the distribution of software. (Wallach Decl., Ex. C at Claim 17[c]; Grundy, 1:7-13; 4:21-26.)

78. Grundy discloses the function of switching the software between a full-function mode and a demonstration mode. (Wallach Decl., Ex. C at Claim 17[b]; Grundy, 4:27-34; 4:50-57; 5:10-12; 12:67-13:2; 19:19-20:28; Fig. 6.)

79. Grundy discloses the function of permitting the digital data or software to run in a full-function mode after switching the digital data from a demonstration mode if an owner data cross-

reference code has matched a local checksum of the owner data. (Wallach Decl., Ex. C at Claim 17[b]; Grundy, 4:27-34; 4:50-57; 5:10-12; 12:67-13:2; 19:19-20:28; Fig. 6.)

80. Grundy discloses program code on a user's computer that performs a comparison of two numbers (i.e., owner data cross-reference code and local checksum of the owner data). This operation is the same as the operation that matches the user data cross-reference code with the user data checksum on the remote server. (Wallach Decl., Ex. C at Claim 17[b]; Grundy, Col. 20:3-5; 15:17-27.)

81. Grundy discloses the function of generating a local checksum of the user (owner) data (i.e., the function of generating a registration key). (Wallach Decl., Ex. C at Claim 17[c]; Grundy, 17:64-18:33; 15:10-13; 20:3-5.)

82. Grundy discloses the function of switching the software into fully enabled mode only if the owner data cross-reference code provided to the software by the intending user at the time of registration of the software has matched identically with the checksum of the owner data. (Wallach Decl., Ex. C at Claim 17[d].)

83. The owner data cross-reference code is provided to the software by the user as a part of the authorization code. (Wallach Decl., Ex. C at Claim 17[d]; Grundy, 19:19-30; 19:53-20:16; Fig. 6.)

84. Grundy discloses that the owner data cross-reference code is communicated to the intending user at the time of registration of the software as a part of the authorization code. (Wallach Decl., Ex. C at Claim 17[e]; Grundy, 10:1-5; 16:1-10.)

85. Grundy discloses that the owner data cross-reference code is generated by a third party's (i.e., the Manufacture Control Agency or remote computer) use of a duplicate copy of the registration key generating means. (Wallach Decl., Ex. C at Claim 17[f]; Grundy, 15:13-16; 15:49-68.)

86. Grundy discloses that the checksum algorithm used to calculate the owner data cross-reference code on the remote server is the same as the checksum algorithm used to calculate the checksum of the owner data on the local computer. (Wallach Decl., Ex. C at Claim 17[f].)

87. Grundy discloses a remote registration station (i.e., computer processor 15). (Wallach Decl., Ex. C at Claim 19[a].)

88. Grundy discloses that the registration station (i.e., computer processor 15) forms part of a registration system for licensing execution of digital data in a use mode. (Wallach Decl., Ex. C at Claim 19[b].)

89. Grundy discloses a method of registration of digital data so as to enable execution of the digital data in a use mode. (Wallach Decl., Ex. C at Claim 20[a].)

90. Grundy discloses that the method comprises an intending licensee operating a registration system for licensing execution of digital data in a use mode. (Wallach Decl., Ex. C at Claim 20[a].)

91. U.S. Patent No. 4,796,220 (Wolfe), entitled "Method of Controlling the Copying of Software," was filed on December 15, 1986 and issued on January 3, 1989. (Braden Decl. Ex. D, U.S. Patent No. 4,796,220 (hereinafter "Wolfe").)

92. Wolfe discloses a registration system attachable to software to be protected. (Wallach Decl., Ex. D at Claim 12[a]; Wolfe, 1:7-12; 4:40-68; 8:60-68.)

93. Wolfe discloses a registration system, attachable to software, that allows digital data or software to run in a full use mode on a platform if and only if an appropriate licensing procedure has been followed. (Wallach Decl., Ex. D at Claim 12[a]; Wolfe, 1:7-12; 4:40-68; 8:60-68.)

94. Wolfe discloses a permission code that is based on hardware information. (Wallach Decl., Ex. D at Claim 12[b]; Wolfe, 5:1-10; 5:33-42; 8:30-49.)

95. Wolfe discloses the function of generating a permission code on a local computer (i.e., recalculated permission code). (Wallach Decl., Ex. D at Claim 12[b]; Wolfe, 5:38-54; 7:42-56; 8:50-68.)

96. Wolfe discloses that the permission code generated by a remote computer and the recalculated permission code generated by a local computer must match and that the algorithms for generating the permission code and recalculated permission code must be identical. (Wallach Decl., Ex. D at Claim 12[c]; Wolfe, 7:42-48; 5:38-47; 8:52-58.)

97. Wolfe discloses that the permission code is generated by a registration number algorithm. (Wallach Decl., Ex. D at Claim 13; Wolfe, 7:31-41.)

98. Wolfe discloses a remote registration station (e.g., central computer system 12). (Wallach Decl., Ex. D at Claim 19[a].)

99. Wolfe discloses the function of generating a permission code on a remote registration station. (Wallach Decl., Ex. D at Claim 19[a]; Wolfe, 7:29-35.)

100. Wolfe discloses the structure for generating the permission code as an algorithm (i.e., the sum of the RAM plus the hard disk size times the percent of free space). (Wallach Decl., Ex. D at Claim 19[a]; Wolfe, 7:31-41.)

101. Wolfe discloses that the remote registration station (i.e., central computer system 12) forms part of a registration system for licensing execution of digital data in a use mode. (Wallach Decl., Ex. D at Claim 19[b].)

102. Wolfe discloses that the digital data is executable on a platform (e.g., a computer system). (Wallach Decl., Ex. D at Claim 19[c]; Wolfe, 3:55-4:2.)

103. Wolfe discloses the same structure for generating the recalculated permission code on the local computer and for generating the permission code on the remote computer. (Wallach Decl., Ex. D at Claim 19[d].)

104. Wolfe discloses the function of permitting use of digital data in a full use mode on the computer system only if a recalculated permission code generated on a local computer has matched a permission code generated on a remote computer. (Wallach Decl., Ex. D at Claim 19[e]; Wolfe, 5:38-54; 7:42-56.)

105. Wolfe discloses program code that performs a comparison of two numbers (i.e., permission code and recalculated permission code). (Wallach Decl., Ex. D at Claim 19[e]; Wolfe, 5:46-54; 7:48-56; 8:50-65; Fig. 3.)

106. Wolfe discloses that the algorithm used on the remote computer comprises software executed on a platform which includes the identical algorithm utilized by the algorithm on the local computer. (Wallach Decl., Ex. D at Claim 19[f]; Wolfe, 7:42-48; 5:38-47; 8:52-58.)

107. Wolfe discloses a method of registration of digital data so as to enable execution of digital data in a use mode. (Wallach Decl., Ex. D at Claim 20[a].)

108. Wolfe discloses that the method comprises an intending licensee operating a registration system for licensing execution of the digital data in a use mode. (Wallach Decl., Ex. D at Claim 20[b].)

Dated: September 23, 2006

By: /s/ Joseph V. Cavanagh
Joseph V. Cavanagh, Jr. #1139
**BLISH & CAVANAGH**
Commerce Center
30 Exchange Terrace
Providence, Rhode Island 02903
(401) 831-8900 (Telephone)
(401) 751-7542 (Facsimile)

Frank E. Scherkenbach
Kurt L. Glitzenstein
Laura R. Braden
**FISH & RICHARDSON P.C.**
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Isabella Fu, Esq.
**MICROSOFT CORPORATION**
One Microsoft Way
Redmond, WA 98052-6399
Telephone: (415) 882-8080
Facsimile: (415) 936-7329

Attorneys for Defendant
MICROSOFT CORPORATION