UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC U.S.A., INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Civil Action No. 03-CV-440 (WES)<br><br>**REDACTED** |

**DECLARATION OF DAN S. WALLACH, Ph.D**

I, Dan S. Wallach, hereby declare as follows:

1. I am an Associate Professor in the Department of Computer Science at Rice University in Houston, Texas. I have been engaged by counsel for Defendant Microsoft to consider issues related to validity and infringement of U.S. Patent No. 5,490,216 ('216 patent). My resume is attached as Exhibit A.

2. This declaration is in support of Microsoft's motion for summary judgment of noninfringment and invalidity of the '216 patent.

3. Hash functions are well-known and widely used computer algorithms. Generally, a hash function transforms a string of characters into a (usually shorter) value of a fixed length, commonly referred to as the hash value. Hash functions may be employed in symmetric and asymmetric encryption systems. When hashing a message, the message is converted into the hash value, and it is difficult to recreate the original message from the hash value.

4. Hash functions, hash functions, were known prior to the issuance of the '216 patent issued in 1996. See Exhibit B

**REDACTED**

5. I have reviewed the Court's claim construction order dated August 22, 2006.

6. While I disagree with Uniloc's infringement contentions in this case, based on those contentions, and applying the Court's claim construction, U.S. Patent No. 5,291,598 (Grundy) invalidates claims 1, 2, 7-13, 17, 19 and 20 of the '216 patent, as set forth in detail in the claim charts attached as Exhibit C.

7. While I disagree with Uniloc's infringement contentions in this case, based on those contentions, and applying the Court's claim construction, U.S. Patent No. 4,796,220 (Wolfe) invalidates claims 12, 13, 19 and 20 of the '216 patent, as set forth in detail in the claim charts attached as Exhibit D.

I declare under the penalty of perjury under the laws of the United States and the State of Texas that the forgoing is true and correct.

Dated: September 20, 2006

By: ______________________
Dan S. Wallach

# Dan Seth Wallach

Home: 713-862-7860
Work: 713-348-6155
Fax: 713-348-5930

dwallach@cs.rice.edu

http://www.cs.rice.edu/~dwallach/

Department of Computer Science
Rice University
Duncan Hall 3121
6100 Main Street
Houston, TX 77005


## Education

**Princeton University** (Princeton, NJ), Department of Computer Science,

Ph.D. Computer Science, January 1999.

M.A. Computer Science, May 1995.

**U.C. Berkeley** (Berkeley, CA), College of Engineering,

B.S. Electrical Engineering/Computer Science, May 1993.

## Publications

### Journal Papers


Cristian Coarfa, Peter Druschel, Dan S. Wallach, Performance Analysis of TLS Web Servers, *ACM Transactions on Computer Systems*, to appear.

Eyal de Lara, Yogesh Chopra, Nilesh Vaghela, Rajnish Kumar, Dan S. Wallach, Willy Zwaenepoel, Iterative Adaptation for Mobile Clients Using Existing APIs, *IEEE Transactions on Parallel and Distributed Systems*, vol. 16, no. 10, October 2005.

Adam B. Stubblefield, Aviel D. Rubin, and Dan S. Wallach, Managing the Performance Impact of Web Security, *Electronic Commerce Research Journal*, February, 2005.

Andrew M. Ladd, Kostas E. Bekris, Algis Rudys, Lydia E. Kavraki, and Dan S. Wallach, Robotics-Based Location Sensing Using Wireless Ethernet, *Wireless Networks*, volume 11, number 1-2, January 2005, pp. 189-204.

Andrew M. Ladd, Kostas E. Bekris, Algis P. Rudys, Dan S. Wallach, and Lydia E. Kavraki. On the Feasibility of Using Wireless Ethernet for Indoor Localization, *IEEE Transactions on Robotics and Automation*, volume 20, number 3, June 2004.

Y. Charlie Hu, Weimin Yu, Alan Cox, Dan S. Wallach, and Willy Zwaenepoel, Runtime Support for Distributed Sharing in Safe Languages. ACM Transactions on Computer Systems, volume 21, number 1, pp. 1-35, February 2003.

Algis Rudys and Dan S. Wallach, Termination in Language-based Systems, *ACM Transactions on Information and System Security*, volume 5, number 2, May 2002.

Dan S. Wallach, Edward W. Felten, and Andrew W. Appel, The Security Architecture Formerly Known as Stack Inspection: A Security Mechanism for Language-based Systems, *ACM Transactions on Software Engineering and Methodology*, volume 9, number 4, October 2000.

**Refereed Conference Papers**

Animesh Nandi, Tsuen-Wan "Johnny" Ngan, Atul Singh, Peter Druschel, and Dan S. Wallach, Scrivener: Providing Incentives in Cooperative Content Distribution Systems, *ACM/IFIP/USENIX 6th International Middleware Conference (Middleware 2005)* (Grenoble, France), November 2005.

Andreas Haeberlen, Eliot Flannery, Andrew M. Ladd, Algis Rudys, Dan S. Wallach, and Lydia E. Kavraki, Practical Robust Localization over Large-Scale 802.11 Networks, *Tenth ACM International Conference on Mobile Computing and Networking (MOBICOM 2004)* (Philadelphia, Pennsylvania), September 2004.

Tadayoshi Kohno, Adam Stubblefield, Aviel D. Rubin, Dan S. Wallach, Analysis of an Electronic Voting System, *2004 IEEE Symposium on Security and Privacy* (Oakland, California), May 2004.

Scott Crosby and Dan S. Wallach, Denial of Service via Algorithmic Complexity Attacks, *12th Usenix Security Symposium* (Washington, D.C.), August 2003.

David W. Price, Algis Rudys, and Dan S. Wallach, Garbage Collector Memory Accounting in Language-Based Systems, *2003 IEEE Symposium on Security and Privacy* (Oakland, California), May 2003.

Eyal de Lara, Rajnish Kumar, Dan S. Wallach, and Willy Zwaenepoel, Collaboration and Multimedia Authoring on Mobile Devices, *First International Conference on Mobile Systems, Applications, and Services (MobiSys '03)* (San Francisco, California), May 2003.

Miguel Castro, Peter Druschel, Ayalvadi Ganesh, Antony Rowstron and Dan S. Wallach, Security for Peer-to-Peer Routing Overlays. *Fifth Symposium on Operating Systems Design and Implementation (OSDI '02)* (Boston, Massachusetts), December 2002.

Andrew M. Ladd, Kostas E. Bekris, Guillaume Marceau, Algis Rudys, Dan S. Wallach, and Lydia E. Kavraki, Using Wireless Ethernet for Localization. *2002 IEEE/RSJ International Conference on Intelligent Robots and Systems (IROS 2002)* (Lausanne, Switzerland), October 2002.

Andrew M. Ladd, Kostas E. Bekris, Guillaume Marceau, Algis Rudys, Lydia E. Kavraki and Dan S. Wallach, Robotics-Based Location Sensing using Wireless Ethernet. *Eighth ACM International Conference on Mobile Computing and Networking (MOBICOM 2002)* (Atlanta, Georgia), September 2002.

Algis Rudys and Dan S. Wallach, Transactional Rollback for Language-Based Systems, *The 2002 International Conference on Dependable Systems and Networks (DSN-2002)* (Washington, D.C.), June 2002.

Cristian Coarfa, Peter Druschel, and Dan S. Wallach, Performance Analysis of TLS Web Servers, *Network and Distributed Systems Security Symposium* (San Diego, California), February 2002.

Eyal de Lara, Dan S. Wallach, and Willy Zwaenepoel, HATS: Hierarchical Adaptive Transmission Scheduling, *Multimedia Computing and Networking 2002 (MMCN02)* (San Jose, California), January 2002.

Jason Flinn, Eyal de Lara, M. Satyanarayanan, Dan S. Wallach, and Willy Zwaenepoel, Reducing the Energy Usage of Office Applications, *IFIP/ACM International Conference on Distributed Systems Platforms - Middleware 2001* (Heidelberg, Germany), November 2001.

Scott A. Craver, Min Wu, Bede Liu, Adam Stubblefield, Ben Swartzlander, Dan S. Wallach, Drew Dean, and Edward W. Felten, Reading Between the Lines: Lessons from the SDMI Challenge, *10th Usenix Security Symposium* (Washington, D.C.), August 2001.

Eyal de Lara, Dan S. Wallach and Willy Zwaenepoel, Puppeteer: Component-based Adaptation for Mobile Computing, *3rd Usenix Symposium on Internet Technologies and Systems (USITS '01)* (San Francisco, California), March 2001.

Algis Rudys, John Clements, and Dan S. Wallach, Termination in Language-based Systems, *Network and Distributed Systems Security Symposium* (San Diego, California), February 2001.

Eyal de Lara, Dan S. Wallach and Willy Zwaenepoel, Opportunities for Bandwidth Adaptation in Microsoft Office Documents, *4th Usenix Windows Systems Symposium* (Seattle, Washington), August 2000.

Dan S. Wallach and Edward W. Felten, Understanding Java Stack Inspection, *1998 IEEE Symposium on Security and Privacy* (Oakland, California), May 1998, pp. 52-63.

Dan S. Wallach, Dirk Balfanz, Drew Dean, and Edward W. Felten, Extensible Security Architectures for Java, *16th Symposium on Operating Systems Principles* (Saint-Malo, France), October 1997, pp. 116-128.
***—outstanding paper award***

Edward W. Felten, Dirk Balfanz, Drew Dean, and Dan S. Wallach, Web Spoofing: An Internet Con Game, *20th National Information Systems Security Conference* (Baltimore, Maryland), October 1996.

Drew Dean, Edward W. Felten, and Dan S. Wallach, Java Security: From HotJava to Netscape and Beyond, *1996 IEEE Symposium on Security and Privacy* (Oakland, California), May 1996, pp. 190-200.

Dan S. Wallach, Sharma Kunapalli and Michael F. Cohen, Accelerated MPEG Compression of Dynamic Polygonal Scenes, *Computer Graphics*, SIGGRAPH 1994 (Orlando, Florida), August 1994, pp. 193-196.

**Articles, Book Chapters, Etc.**

Dan S. Wallach, Texas must confront voting systems' flaws, *Austin American-Statesman*, September 2004.

Jonathan Bannet, David W. Price, Algis Rudys, Justin Singer, Dan S. Wallach, Hack-a-Vote: Demonstrating Security Issues with Electronic Voting Systems, *IEEE Security & Privacy Magazine*, volume 2, number 1, January/February 2004, pp. 32-37. Also reprinted by *ComputerUser*, March 2004.

Dan S. Wallach, Copy Protection Technology is Doomed, *IEEE Computer*, volume 34, number 10, October 2001, pp. 48-49.

Drew Dean, Edward W. Felten, Dan S. Wallach, and Dirk Balfanz, Java Security: Web Browsers and Beyond, *Internet Beseiged: Countering Cyberspace Scofflaws*, D. E. Denning and P. J. Denning, Eds. ACM Press, New York, Oct. 1997, pp. 241-269.

**PhD Dissertation**

Dan S. Wallach, A New Approach to Mobile Code Security, PhD Dissertation, Princeton University, January 1999.
*Advised by Edward W. Felten*

**Workshop Papers**

Seth James Nielson, Scott A. Crosby, and Dan S. Wallach, A Taxonomy of Rational Attacks, *Fourth International Workshop on Peer-to-Peer Systems (IPTPS '05)* (Ithaca, New York), February 2005.

Alan Mislove, Gaurav Oberoi, Ansley Post, Charles Reis, Peter Druschel, and Dan S. Wallach, AP3: Cooperative, Decentralized Anonymous Communication, *11th ACM SIGOPS European Workshop* (Leuven, Belgium), September 2004.

Tsuen-Wan "Johnny" Ngan, Animesh Nandi, Atul Singh, Dan S. Wallach, and Peter Druschel, Designing Incentives-Compatible Peer-to-Peer Systems, *2nd Bertinoro Workshop on Future Directions in Distributed Computing (FuDiCo 2004)* (Bertinoro, Italy), June 2004.

Tsuen-Wan "Johnny" Ngan, Dan S. Wallach, and Peter Druschel, Incentives-Compatible Peer-to-Peer Multicast, *2nd Workshop on Economics of Peer-to-Peer Systems* (Cambridge, Massachusetts), June 2004.

Ping Tao, Algis Rudys, Andrew Ladd, and Dan S. Wallach, Wireless LAN Location Sensing for Security Applications, *ACM Workshop on Wireless Security (WiSe 2003)* (San Diego, California), September 2003.

Andrew Fuqua, Tsuen-Wan "Johnny" Ngan, and Dan S. Wallach, Economic Behavior of Peer-to-Peer Storage Networks, *Workshop on Economics of Peer-to-Peer Systems* (Berkeley, California), June 2003.

Alan Mislove, Charles Reis, Ansley Post, Paul Willmann, Peter Druschel, Dan S. Wallach, Xavier Bonnaire, Pierre Sens, Jean-Michel Busca, Luciana Arantes-Bezerra, POST: A Secure, Resilient, Cooperative Messaging System, *9th Workshop on Hot Topics in Operating Systems (HotOS IX)* (Lihue, Hawaii), May 2003.

Nathanael Paul, David Evans, Aviel D. Rubin, and Dan S. Wallach, Authentication for Remote Voting, *Workshop on Human-Computer Interaction and Security Systems* (Fort Lauderdale, Florida), April 2003.

Tsuen-Wan "Johnny" Ngan, Dan S. Wallach, and Peter Druschel, Enforcing Fair Sharing of Peer-to-Peer Resources, *2nd International Workshop on Peer-to-Peer Systems (IPTPS '03)* (Berkeley, California), February 2003.

Algis Rudys and Dan S. Wallach, Enforcing Java Run-Time Properties Using Bytecode Rewriting, *International Symposium on Software Security* (Tokyo, Japan), November 2002.

Dan S. Wallach, A Survey of Peer-to-Peer Security Issues, *International Symposium on Software Security* (Tokyo, Japan), November 2002.

Yuri Dotsenko, Eyal de Lara, Dan S. Wallach, and Willy Zwaenepoel, Extensible Adaptation via Constraint Solving, *4th IEEE Workshop on Mobile Computing Systems & Applications* (Callicoon, New York), June 2002.

Eyal de Lara, Rajnish Kumar, Dan S. Wallach, and Willy Zwaenepoel, Collaboration and Document Editing on Bandwidth-Limited Devices, *Proceedings of the Workshop on Application Models and Programming Tools for Ubiquitous Computing (UbiTools '01)* (Atlanta, Georgia), September 2001.

Eyal de Lara, Dan S. Wallach, and Willy Zwaenepoel, Position Summary: Architectures for Adaptation Systems, *Eighth IEEE Workshop on Hot Topics in Operating Systems (HotOS-VIII)* (Schloss Elmau, Germany), May 2001.

Y. Charie Hu, Weimin Yu, Alan L. Cox, Dan S. Wallach, and Willy Zwaenepoel, Runtime Support for Distributed Sharing in Typed Languages, *Proceedings of LCR2000: the Fifth Workshop on Languages, Compilers, and Run-time Systems for Scalable Computers* (Rochester, New York), May 2000.

Dan S. Wallach, Jim A. Roskind, and Edward W. Felten, Flexible, Extensible Java Security Using Digital Signatures, *Network Threats* (New Brunswick, New Jersey), December 1996, R. N. Wright and P. G. Neumann, Eds., vol. 38 of *DIMACS Series in Discrete Mathematics and Theoretical Computer Science*, American Mathematical Society, pp. 59-74.

**Tech Reports / Miscellaneous**

Seth Nielson, Seth J. Fogarty, and Dan S. Wallach, Attacks on Local Searching Tools, Technical Report TR-04-445, Department of Computer Science, Rice University, December 2004.

Dan S. Wallach, Testimony for the NIST/EAC Technical Guidelines Development Committee (Gaithersburg, Maryland), September 2004.

Dan S. Wallach, Testimony for the Texas Senate Committee on State Affairs (Austin, Texas), May 2004.

Dan S. Wallach, Testimony for the Texas House Elections Committee (Austin, Texas), March 2004.

Dan S. Wallach, Testimony for the Ohio Joint Committee on Ballot Security (Columbus, Ohio), March 2004.

Jonathan Bannet, David W. Price, Algis Rudys, Justin Singer, Dan S. Wallach, Hack-a-Vote: Demonstrating Security Issues with Electronic Voting Systems. Technical Report TR-03-427, Department of Computer Science, Rice University, November 2003.

Tadayoshi Kohno, Adam Stubblefield, Aviel D. Rubin, Dan S. Wallach, Analysis of an Electronic Voting System, Johns Hopkins Information Security Institute Technical Report TR-2003-19, July 2003.

David L. Dill, Rebecca Mercuri, Peter G. Neumann, and Dan S. Wallach, Frequently Asked Questions about DRE Voting Systems (web page, also submitted to Santa Clara County board of supervisors), February 2003.

David W. Price, Algis Rudys, and Dan S. Wallach, Garbage Collector Memory Accounting in Language-Based Systems, Technical Report TR-02-407, Department of Computer Science, Rice University, December 2002.

Adam B. Stubblefield and Dan S. Wallach, Dagster: Censorship-Resistant Publishing Without Replication, Technical Report TR01-380, Department of Computer Science, Rice University, July 2001.

Alex Grosul and Dan S. Wallach, A Related-Key Cryptanalysis of RC4, Technical Report TR-00-358, Department of Computer Science, Rice University, June 2000.

Adam B. Stublefield and Dan S. Wallach, A Security Analysis of My.MP3.com and the Beam-it Protocol, Technical Report TR-00-353, Department of Computer Science, Rice University, February 2000.

Eyal de Lara, Dan S. Wallach, and Willy Zwaenepoel, A Characterization of Compound Documents on the Web, Technical Report TR-99-351, Department of Computer Science, Rice University, November 1999.

**Invited Panels**

Steve Ansolabehere, *et al.*, Workshop on Developing a Research Agenda for Electronic Voting Technologies, American Association for the Advancement of Science (AAAS), September 2004.

Darleen Fisher, *et al.*, NSF Workshop on Security and Privacy (Berkeley, California), February 2002. *Publication pending.*

Gary McGraw, *et al.*, Attacking Malicious Code: A Report from the Infosec Research Council (San Antonio, Texas), April, 2000. Report published in *IEEE Software* 17(5), pp. 33-40.

**Teaching**

Courses at Rice:

Comp527: Computer Systems Security (Spring 1999, Fall and Spring 2000, Fall 2001-2005)

Comp314: Applied Algorithms and Data Structures (Fall 1999, Spring 2001, 2002, 2004, 2005)

Comp620: Seminar in Secure Systems (Fall 1998)

Short courses and tutorials:

Dan S. Wallach, *Language-Based Security* (a one-week intensive short course), presented at *The Summer School on Foundations of Internet Security* (Duszniki Zdrój, Poland), June 2002.

Dan S. Wallach and Drew Dean, *Java and Security* (a one-week intensive short course), Katholieke Universiteit Leuven (Leuven, Belgium), March 1997.

Teaching assistant positions at Princeton:

Introduction to Computer Systems (Spring 1996)

Computer Graphics (Fall 1993, Fall 1994, and Fall 1995)

Advanced Programming Techniques (Spring 1994)

**Professional Service**

*Research management:*

Associate Director, ACCURATE (NSF-funded research center), 2005-2010

*Program committees:*

ACM Conference on Computer and Communications Security (CCS) 2004 and 2005

ACM Role-Based Access Control Workshop 1999 and 2000

Applied Cryptography and Network Security (ACNS) 2005

HotOS Workshop 2003

IEEE Security and Privacy 1999, 2004, and 2005

IEEE Workshop on Mobile Computing Systems and Applications (WMCSA) 2002 and 2004

International Peer-to-Peer Symposium (IPTPS) 2004 and 2006

Network and Distributed Systems Security Symposium (NDSS) 2002-2004 and 2006

NSF Trusted Computing Panel 2002

NSF Cybertrust Panel 2004

South Central Information Security Symposium 2003-2005

Usenix Annual Conference 2001

Usenix Security Symposium 1999-2003 and 2005

Usenix Symposium on Internet Technologies and Systems (USITS) 2003

Workshop on Economics in Peer-to-Peer Systems 2004

WWW Conference 1999, 2000, 2003, 2004

*Program committee chair:*

Usenix Security Symposium 2001

*Invited talks coordinator:*

Usenix Security Symposium 2002

*Panel moderator/organizer (electronic voting security):*

Usenix Security Symposium 2003
IEEE Symposium on Security and Privacy 2004

*Workshop organizer:*

South Central Information Security Symposium 2003-2005

*Editorial and advisory board memberships:*

Abusable Technologies Awareness Center
Election Science Institute (VoteWatch)
IEEE Internet Computing
International Journal of Information Security
International Journal of Information and Computer Security
International Journal for Infonomics
National Committee for Voting Integrity
Verified Voting Foundation / VerifiedVoting.org

*University committees:*

Advisor for MCS Students (2000-2001)
CS Graduate Admissions (1998-2005)
CS Curriculum Committee (2005-present)
CS Facilities (occasional involvement)
KTRU (Rice Radio) Friendly Committee (2005-present)

University IT Security Committee (2002-present)

*Other university service:*

Divisional advisor and faculty associate, Martel College (2001-present)
Rice Social Dance Society: faculty sponsor, instructor, workshop organizer, etc. (2001-present)

**Grants**

Aviel D. Rubin, Dan S. Wallach, Michael Byrne, Douglas W. Jones, David Dill, Dan Boneh, David A. Wagner, Dierdre Mulligan, Drew Dean, and Peter G. Neumann, CT-CS: A Center for Correct, Usable, Reliable, Auditable, and Transparent Elections (ACCURATE), NSF CNS-0524211 (October 2005).

Dan S. Wallach and Peter Druschel, CSR/PDOS: Security and Incentives for Overlay Network Infrastructure, NSF CNS-0509297 (August 2005).

Dan S. Wallach and Mike Dahlin, Resource Management for Safe Deployment of Edge Services, Texas Advanced Technology Program #003604-0053-2001 (October 2001).

Dan S. Wallach, Security and Resource Management in Type-Safe Language Environments, NSF CAREER CCR-9985332 (March 2000).

Behnaam Aazhang, Richard G. Baraniuk, Joseph R. Cavallaro, Edward W. Knightly, and Dan S. Wallach, Seamless Multitier Wireless Networks for Multimedia Applications, NSF Special Projects ANI-9979465 (April 1999).

*Industrial gifts and support:*

Microsoft gift (November 2002)
Schlumberger gift (February 2002)
IBM University Partnership Program (June 2000)
Microsoft gift (July 2000)

*Related support:*

Usenix Student Scholarship for Adam Stubblefield (May 2001)

**Invited Talks and Panels**

Dan S. Wallach, *The Risks of Electronic Voting*, Virginia Joint Committee Studying Voting Equipment (Richmond, Virginia), August 2005.

Dan S. Wallach, *The Risks of Electronic Voting*, Tarrant County Democratic Party Meeting (Hurst, Texas), July 2005.

Dan S. Wallach, *Electronic Voting Machine / Registration Systems*, Testimony for the Carter-Baker Commission on Federal Election Reform (Houston, Texas), June 2005.

Dan S. Wallach, *The Risks of Electronic Voting*, NSF Workshop on Cyberinfrastructure and the Social Sciences (Arlington, Virginia), March 2005.

Dan S. Wallach, *The Risks of Electronic Voting*, CASSIS: Construction and Analysis of Safe, Secure, and Interoperable Smart Devices (Nice, France), March 2005.

Dan S. Wallach, *The Risks of Electronic Voting*, University of Massachusetts, Amherst, Five Colleges Information Assurance Lecture Series (Ahmerst, Massachusetts), December 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, University of Iowa, Department of Computer Science (Iowa City, Iowa), December 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, CSI's 31st Annual Computer Security Conference (Washington, D.C.), November 2004.

Hans Klein, Eugene Spafford, Donald Moynihan, Dan S. Wallach, and Jim Reis, *Panel: E-Voting Policies and Perils,* Association for Public Policy Analysis and Management (APPAM) (Atlanta, Georgia), October 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Seventh Workshop on Languages, Compilers, and Run-time Support for Scalable Systems (Houston, Texas), October 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Symposium on the 2004 Presidential Election, John J. Marshall Law School (Chicago, Illinois), October 2004.

Chris Bell, Dan S. Wallach, and Tony J. Servello III, *Panel: Electronic Voting*, Science Café (Houston, Texas), October 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, The Integrity of the Electrion Process, U. of Toledo Law School (Toledo, Ohio), October 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Princeton University, Department of Computer Science (Princeton, New Jersey), October 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, DIMACS Workshop on Cryptography: Theory Meets Practice (Piscataway, New Jersey), October 2004.

Dan S. Wallach, Michael I. Shamos, Eugene Spafford, and Michael E. Lavelle, *Panel: Who Can Plug Into E-Voting Machines?*, E-lection 2004: Is E-Voting Ready for Prime Time?, John Marshall Law School (Chicago, Illinois), October 2004.

Dan S. Wallach, <u>Testimony for the NIST/EAC Technical Guidelines Development Committee</u> (Gaithersburg, Maryland), September 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, DiverseWorks: The Voting Machine (Houston, Texas), September 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Baker Institute Forum on Electronic Voting (Houston, Texas), September 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, League of Women Voters General Meeting (Houston, Texas), September 2004.

Dan S. Wallach, *The Risks of Electronic Voting,* Simposio acerca de Urnas Electrónicas para la Emisión del Voto Ciudadano (Mexico City, Mexico), September 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Fermi National Accelerator Lab (Batavia, Illinois), August 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, TrueMajority "National Day of Action" (Austin, Texas), July 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, 10th Annual County and District Clerks' Association of Texas Conference (Lake Conroe, Texas), June 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Texas State Democratic Party Convention, Progressive Populist Caucus (Houston, Texas), June 2004.

Dan S. Wallach, *Hack-a-Vote: Demonstrating Security Issues with Electronic Voting Machines*, DIMACS Workshop on Electronic Voting - Theory and Practice (Piscataway, New Jersey), May 2004.

Dan S. Wallach, Testimony for the Texas Senate Committee on State Affairs (Austin, Texas), May 2004.

Josh Benaloh, Dana DeBeauvoir, and Dan S. Wallach. *Panel: Electronic Voting Security*, IEEE Symposium on Security and Privacy (Oakland, California), May 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Harris County Democrats (Houston, Texas), April 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, North Brazoria County Democrats (Pearland, Texas), April 2004.

Dana DeBeauvoir, Ann McGeehan, Dan S. Wallach, *Panel on the Security of Electronic Voting*, League of Women Voters (Austin, Texas), April 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Guest lecture in "Texas Political Parties and Elections" (Government 335N, University of Texas, Austin), March 2004.

Dan S. Wallach, Testimony for the Texas House Elections Committee (Austin, Texas), March 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Bell County Republican Convention (Belton, Texas), March 2004.

Dan S. Wallach, Testimony for the Ohio Joint Committee on Ballot Security (Columbus, Ohio), March 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Houston Peace Forum (First Unitarian Universalist Church, Houston, Texas), March 2004.

Ben Cohen and Dan S. Wallach, *TrueMajority Press Event* (Washington, D.C.) February, 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, European Commision eDemocracy Seminar (Brussels, Belgium), February, 2004.

Dana DeBeauvoir, Dan S. Wallach, Ann McGeehan, Bill Stotesbery, Adina Levin, *Electronic Voting: Benefits & Risks*, First Unitarian Universalist Church of Austin (panel co-sponsored by Travis County Green Party and Austin Democracy Coalition) (Austin, Texas), January 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, Texas IMPACT / United Methodist Women (Austin, Texas), January 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, River Oaks Democratic Women (Houston, Texas), January 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, University of Michigan, Department of Computer Science (Ann Arbor, Michigan), January 2004.

Dan S. Wallach, *The Risks of Electronic Voting*, EFF-Austin Policy Roundtable (Austin, Texas), December 2003.

Dan S. Wallach, *O.S. Security Semantics for Language-based Systems*, Katholieke Universiteit Leuven (Leuven, Belgium), December 2003.

Dan S. Wallach, *O.S. Security Semantics for Language-based Systems*, Belgium Java User's Group: JavaPolis (Antwerp, Belgium), December 2003.

Dan S. Wallach, *The Risks of Electronic Voting*, Austin Pastoral Center (Austin, Texas), November 2003.

Dan S. Wallach, *Peer-to-Peer Security*, Cornell University, Department of Computer Science (Ithaca, New York), November 2003.

Dan S. Wallach, *The Risks of Electronic Voting*, Duke University, Department of Computer Science (Durham, North Carolina), October 2003.

Dan S. Wallach, *The Risks of Electronic Voting*, University of Arizona, Department of Computer Science (Tucson, Arizona), September 2003.

Dan S. Wallach, *Peer-to-Peer Security*, UW/MSR/CMU Software Security Summer Institute (Stevenson, Washington), June 2003.

Dan S. Wallach, *Peer-to-Peer Security*, Stanford University, Department of Computer Science (Stanford, California), May 2003.

Dan S. Wallach, *Adventures in Copy Protection Research*, The Hockaday School (Dallas, Texas), April 2003.

Dan S. Wallach, *Adventures in Copy Protection Research*, Formal Techniques for Networked and Distributed Systems (Houston, Texas), November 2002.

Dan S. Wallach, *Peer-to-Peer Security*, Oregon Graduate Institute (Portland, Oregon), March 2002.

Dan S. Wallach, *Mobile Code Security Through Program Transformations*, Mathematical Foundations of Programming Semantics (New Orleans, Louisiana), March 2002.

Dan S. Wallach, *The Risks of E-Voting Machines*, Bay Area New Democrats (Houston, Texas), November 2001.

Dan S. Wallach, Testimony before the Houston City Council on the risks of electronic voting systems, July 2001.

Dan S. Wallach, *Adventures in Copy Protection Research*, Open Group Meeting (Austin, Texas), July 2001.

Dan S. Wallach, *Adventures in Copy Protection Research*, Houston Copyright Town Hall Meeting (Houston, Texas), April, 2001.

Dan S. Wallach, *Mobile Code Security Through Program Transformations*, U.C. Berkeley (Berkeley, California), March 2001.

Dan S. Wallach, *Mobile Code Security Through Program Transformations*, University of Texas (Austin, Texas), November 2000.

Dan S. Wallach, *Mobile Code Security Through Program Transformations*, International Workshop on Mobile Objects/Code and Security (Tokyo, Japan), October 2000.

Dan S. Wallach and John DeRose, *The Security of My.MP3.com and Other ``Beaming" Technologies*, MP3 Summit (San Diego, California), June 2000.

Dan S. Wallach, *An Overview of Computer Security*, Law Practice Management Section of the Houston Bar Association (Houston, Texas), May 2000.

- Wallach has also spoken to visiting groups of high school students via a Rice outreach program organized by Jen Overton.

**Advisees**

*Completed PhDs:*

Eyal de Lara (PhD completed January '03, now a professor at the University of Toronto)

*Recent graduate researcher collaborators* (* = Wallach is current, primary advisor):

Konstantinos Bekris
Cristian Coarfa
Scott Crosby*
Anwis Das*
Yuri Dotsenko
Tadayoshi Kohno (UC San Diego)
Rajnish Kumar
Andrew Ladd
Alan Mislove
Animesh Nandi
Seth Nielson*
Tsuen Wan "Johnny" Ngan*
Ainsley Post
Algis Rudys*
Atul Singh
Adam Stubblefield (Johns Hopkins)

Ping Tao

*Recent undergraduate researchers*:

Jonathan Bannet
Eliot Flannery
Andrew Fuqua
David Wray Price
Adam Stubblefield
Andy Thomas

**Consulting**

*Private Consulting:*

AT&T Research (fall 2001, collaborating with Avi Rubin on security research)
GalleryFurniture (August 2001, post-attack web site audit and reinstall)
Curl (December 2000, security architecture review)
Quaadros Technologies (October 2000, design review)
Cloakware (September 2000 and August 2001, design review)
Coral Technologies (December 1999, security audit)
MetaCreations (March 2000, security audit)
CenterPoint Ventures (ongoing, technical evaluations of startups)
Rho Ventures (ongoing, technical evaluations of startups)

*Legal Consulting:*

Autobytel v. Dealix (May 2005, expert for Dealix)
Soverain v. Amazon.com (April 2005, expert for Amazon.com)
Uniloc v. Microsoft (November 2004, expert witness for Microsoft)
Nash v. Microsoft (May 2004, expert witness for Microsoft)
Recruitsoft v. Hire.com (August 2003, expert witness for Hire.com)
DirecTV v. NDS (April 2003, expert witness for DirecTV)
RIAA v. MP3.com (February 2000, wrote declaration for MP3.com)

**Employment History**

**Rice University**, Associate professor, Department of Computer Science, beginning October 1998. (Promoted from assistant professor in May 2005.)

9/93 - 10/98 **Princeton University**, Graduate student, Department of Computer Science. Supported by grants from NSF, Sun Microsystems, Intel, Microsoft, and others.

6/97 - 8/97 **Netscape Communications Corporation**, Mountain View, California.

Integrated Java with SSL. Audited the CORBA and RMI implementations for security bugs. Wrote a CORBA demonstration (a chat server).

6/96 - 8/96 **Netscape Communications Corporation**, Mountain View, California.

Designed and implemented a privilege-based security mechanism and user interface to enable digitally-signed Java applets. Participated in design reviews of several Netscape and JavaSoft technologies.

6/95 - 8/95 **Microsoft Corporation**, Redmond, Washington.

Wrote a converter from Softimage to a RenderMorphics-based system (V-Chat). Designed and implemented a polygonal model compression system for virtual reality applications.

6/94 - 8/94 **David Sarnoff Research Center**, Princeton, New Jersey.

Wrote a microcode-level simulator for parallel video processing engine. Wrote design documents for the client side of a future video-on-demand system.

6/93 - 8/93 **Berkeley Systems**, Berkeley, California.

Ported a screen-reading system (allowing blind people to use graphical user interfaces) from Microsoft Windows to X.

9/92 - 6/93 **U.C. Berkeley**, Research Assistant for Dr. Larry Rowe.

Implemented parts of a MPEG-1 video encoder. Wrote the audio support for a real-time distributed media-on-demand system.

# UNILOC et al. v. MICROSOFT CORPORATION

# EXHIBIT B

**FILED UNDER SEAL**

**U.S. Patent No. 5,291,598 (Grundy): Claims 1, 2, 7-13, 17, 19 and 20 of the '216 Patent**

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| [a] A *registration system* for licensing execution of digital data in a *use mode*, | "*registration system*" - A system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed<br><br>"*use mode*" - A mode that allows full use of the digital data or software in accordance with the license. | Grundy discloses a registration system for licensing execution of digital data in a use mode.<br><br>In particular, Grundy discloses a system that allows digital data or software to run in a mode that allows full use of the digital data or software in accordance with the license, on a platform (e.g., computer system), if and only if an appropriate licensing procedure has been followed:<br><br>"According to the present invention, the software products are created by software developers capable of being operated in two modes. The first mode is a full-function mode, where all the functions and features of the software product are available to the user of the software product. The second mode is an evaluation mode, where only certain functions, decided by the software developer, can be accessed by the user. The evaluation mode allows potential users to try and evaluate features of the software product. Each software product is stored on a storage medium, in the representative embodiment, on disk. On each disk (or set of disks) the software product is capable of being operated in both modes. However, each software product operates in only one mode at a time." (4:27-41).<br><br>"When a new user obtains a disk containing a software product, the software product will operate in the evaluation mode. The new user can freely operate the software in the evaluation mode and make other copies, which will also be in the evaluation mode. **If the new user wishes to use the** |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | **software product in full-function mode, the new user contacts the Central Authority to obtain an authorization code. It is expected that the new user will pay a fee for obtaining the authorization code.**<br><br>"**To obtain the authorization code, the new user will conduct, on the user's computer, a registration process.**" (4:50-61) (emphasis added).<br><br>"The distribution copies of the host software product in evaluation mode 106 that are placed into the user community by the seeding process are made available for evaluation purposes only. Copies of the software in evaluation mode do not permit operation beyond that level which is necessary for the software consumer to make an evaluation of the host software product's features prior to making a decision to purchase. However, the host software product does contain all the executable code and ancillary files necessary for the software to operate without any restrictions. **That is, the consumer is in fact supplied with a complete copy of the software, but can not operate the software in full-function mode until after the registration process 108, as discussed below, is completed.**" (9:3-17) (emphasis added). |
| [b] said digital data executable on a platform, | | Grundy discloses that the digital data is executable on a platform (e.g., a computer system):<br><br>"The present invention provides a method and apparatus that monitors and controls the use of information stored on a storage medium. The information, in machine readable form, |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | can be, for example, a computer software program or a database. In the representative embodiment, the information is a software product." (4:20-26). |
| [c] said system including *local licensee unique ID generating means* and *remote licensee unique ID generating means*, | "*local licensee unique ID generating means*"/ "*remote licensee unique ID generating means*" - Function: to generate a local or remote licensee unique ID; Structure: a summation algorithm or a summer and equivalents thereof | Uniloc contends that (1) a hash function is a licensee unique ID generating means, and (2) that the result of a hash function is unique. I disagree. However, if Uniloc's application of this claim term were to be accepted, then this element would be present in Grundy.<br><br>Grundy discloses the function of generating a checksum on the local computer, which is called a user data cross-reference code:<br><br>"A registration code is used as a concise and reliable method of transferring a set of information from a new user to the Manufacture Control Agency in a manner which is not readily subject to fraudulent abuse (see 302). **The registration code also provides for a cross-check on the validity of other information provided by a new user to the Manufacture Control Agency at the time of registration (See FIG. 3).** As illustrated in FIG. 2, this module is called by the host software product at step 500. The information passed to the Generate Registration Code Module 500 by the host software product is the new user data and the ownership details record. (The Ownership Details record contains details of the previous authorized user at this stage.)<br><br>The generation of a registration code begins with a validity check of the user data 501 as entered 212 FIG. 2. The validity check comprises a simple test of the address field to ensure that the new user has input a suitable number of |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | characters. If the user did not enter at step 212 a suitable number of characters in the address field 502, then an error status message is returned 503 and the registration routine exits 504. This is only a simple first-line check which prevents the new user from attempting to register a software product with a frivolous amount of address information. A far more rigorous check occurs at the time of registration when the Manufacture Control Agency operator scrutinizes the information provided by the new user and the user data cross-check process is performed 310.<br><br>**If the user data validity check 502 passes, a checksum of the user data is created 505. This checksum will be used during the Authorization process as a cross-reference to validate the user data as communicated to the Manufacture Control Agency 310 FIG. 3. The cross-reference can be a hash value based on only the alphanumeric characters in the user data.** (All lower-case letters are converted to upper-case and white space is ignored before the hash value is calculated.)" (17:64-18:33) (emphasis added).<br><br>"The user data cross-reference code as extracted 309 is the checksum originally calculated (505 FIG. 5) from the owner data as entered by the user during the registration process (212 FIG. 2)." (15:10-13).<br><br>Grundy also discloses the function of generating a checksum on the remote computer, which is called a user data checksum:<br><br>"**A second checksum based on the user data as entered** |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | **via the input/output device 16 by the Manufacture Control Agency operator is also calculated 309.**<br><br>**The user data cross-reference code and the second checksum 309 are compared 310. If these do not match it is an indication that the User Data as entered by the Manufacture Control Agency operator 301 does not match the User Details as originally entered by the new user at step 212.** There is also a possibility that the mismatch could have resulted from a mis-entry of the Registration Code 302. In the event of a mismatch, an error message is displayed 311 and the operator given the opportunity to correct the data entry problems." (15:13-27) (emphasis added).<br><br>The checksum algorithm used on the local computer is the same as the checksum algorithm used on the remote computer:<br><br>"If the user data validity check 502 passes, a checksum of the user data is created 505. This checksum will be used during the Authorization process as a cross-reference to validate the user data as communicated to the Manufacture Control Agency 310 FIG. 3. The cross-reference can be a hash value based on only the alphanumeric characters in the user data. (All lower-case letters are converted to upper-case and white space is ignored before the hash value is calculated.)" (18:25-34).<br><br>Uniloc contends that certain hash algorithms used in Microsoft Product Activation are local and remote licensee unique ID generating means. I disagree. However, if Uniloc's application of these claim terms were to be |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | accepted, then Grundy would also disclose local and remote licensee unique ID generating means.<br><br>Grundy's user data cross-reference code and user data checksum are associated with a licensee. See Grundy Col. 12:26-38 ("The user is requested to input new user data, such as the user's name, address and telephone number 212."). |
| [d] said system further including *mode switching means* operable on said platform which permits use of said digital data in said use mode on said platform only if a *licensee unique ID* first generated by said local licensee unique ID generating means has matched a licensee unique ID subsequently generated by said remote licensee unique ID generating means; | "*mode switching means*" - Function: to permit the digital data or software to run in a use mode/fully enabled mode if the locally generated licensee unique ID/registration key matches with the remotely generated licensee unique ID/enabling key; Structure: program code which performs a comparison of two numbers or a comparator and equivalents thereof<br><br>"*licensee unique ID*" - A unique identifier associated with a licensee. | Grundy discloses that the system further includes mode switching means operable on the platform which permits use of the digital data in the use mode on the platform only if a user data cross-reference code first generated by the local checksum algorithm has matched a user data checksum subsequently generated by the remote checksum algorithm.<br><br>Grundy discloses the function of the mode switching means. The mode switching means generates an authorization code that is entered into a user's computer to enable operation in the full-function mode:<br><br>"According to the present invention, the software products are created by software developers capable of being operated in two modes. The first mode is a full-function mode, where all the functions and features of the software product are available to the user of the software product. The second mode is an evaluation mode, where only certain functions, decided by the software developer, can be accessed by the user." (4:27-34).<br><br>"The new user then enters the authorization code into the user's computer to become an authorized user and the software product will operate in full-function mode." (5:10- |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | 12).<br><br>"The Authorization Code enables the transformation of an evaluation mode copy of the host software product 108a into a full-function mode copy of the host software product 110." (10:5-8). See also 12:67-13:2.<br><br>"The user data cross-reference code and the second checksum 309 are compared 310. If these do not match it is an indication that the User Data as entered by the Manufacture Control Agency operator 301 does not match the User Details as originally entered by the new user at step 212. There is also a possibility that the mismatch could have resulted from a mis-entry of the Registration Code 302. In the event of a mismatch, an error message is displayed 311 and the operator given the opportunity to correct the data entry problems…Next, a new Owner Identification Number is allocated from the next available number in the Manufacture Control Agency's database 317.<br><br>After the Owner Identification Number is allocated to the new user 317, an Authorization code is generated 318…The Authorization code is then displayed 319 on the input/output device 16 and the Manufacture Control Agency operator communicates it to the new user 320 and 108b." (15:17-27; 15:46-51; 16:1-4).<br><br>*See also* Fig. 3, steps 309, 310 and A.<br><br>Grundy discloses the structure of the mode switching means as program code that performs a comparison of two numbers: |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | "**The user data cross-reference code and the second checksum 309 are compared 310. If these do not match it is an indication that the User Data as entered by the Manufacture Control Agency operator 301 does not match the User Details as originally entered by the new user at step 212.** There is also a possibility that the mismatch could have resulted from a mis-entry of the Registration Code 302. In the event of a mismatch, an error message is displayed 311 and the operator given the opportunity to correct the data entry problems." (15:17-27) (emphasis added).<br><br>Finally, Grundy meets claim 1's temporal requirement because it discloses that the user data cross-reference code is generated before the user data checksum:<br><br>"The user data cross-reference code as extracted 309 is the checksum originally calculated (505 FIG. 5) from the owner data as entered by the user during the registration process (212 FIG. 2). A second checksum based on the user data as entered via the input/output device 16 by the Manufacture Control Agency operator is also calculated 309." (15:10-16). |
| [e] and wherein said remote licensee unique ID generating means comprises software executed on a platform which *includes the* | "*includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.*" - Includes the identical algorithm used by local licensee unique ID | Grundy discloses that the remote checksum algorithm comprises software executed on a platform which includes the identical algorithm utilized by the local checksum algorithm:<br><br>"The user data cross-reference code as extracted 309 is the checksum originally calculated (505 FIG. 5) from the owner data as entered by the user during the registration process |

| Claim 1 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| *algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.* | generating means to produce the licensee unique ID | (212 FIG. 2). **A second checksum based on the user data as entered via the input/output device 16 by the Manufacture Control Agency operator is also calculated 309.**<br><br>**The user data cross-reference code and the second checksum 309 are compared 310. If these do not match it is an indication that the User Data as entered by the Manufacture Control Agency operator 301 does not match the User Details as originally entered by the new user at step 212.** There is also a possibility that the mismatch could have resulted from a mis-entry of the Registration Code 302. In the event of a mismatch, an error message is displayed 311 and the operator given the opportunity to correct the data entry problems." (15:10-26) (emphasis added).<br><br>"If the user data validity check 502 passes, a checksum of the user data is created 505. This checksum will be used during the Authorization process as a cross-reference to validate the user data as communicated to the Manufacture Control Agency 310 FIG. 3. The cross-reference can be a hash value based on only the alphanumeric characters in the user data. (All lower-case letters are converted to upper-case and white space is ignored before the hash value is calculated.)" (18:25-34). |

| Claim 2 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| [a] The system of claim 1, wherein said local licensee unique ID generating means generates said local licensee unique ID by execution of a registration algorithm which combines information in accordance with said algorithm, | | Grundy discloses that the local checksum algorithm generates the user data cross-reference code by execution of a registration algorithm which combines information in accordance with the algorithm (e.g., data about a user is combined by the checksum algorithm used to calculate the user data cross-reference code):<br><br>"Generate Registration Code 500" in Fig. 2.<br><br>"Add Data Entry Checksum 512" in Fig. 5.<br><br>"Calculate User Data Checksum 610" in Fig. 6.<br><br>"In the first step, an authorization record is assembled which contains, in the representative embodiment, the owner data checksum…" (15:52-54).<br><br>"The registration code also provides for a cross-check on the validity of other information provided by a new user to the Manufacture Control Agency at the time of registration (See FIG. 3)." (17:68-18:3).<br><br>"If the user data validity check 502 passes, a checksum of the user data is created 505. This checksum will be used during the Authorization process as a cross-reference to validate the user data as communicated to the Manufacture Control Agency 310 FIG. 3. The cross-reference can be a hash value based on only the alphanumeric characters in the user data." (18:25-31). |

| Claim 2 | Court's Construction | Grundy '598 Patent |
| --- | --- | --- |
| [b] said *information uniquely descriptive of an intending licensee* of said digital data to be executed in said use mode. | "*information uniquely descriptive of an intending licensee*" - Information that is uniquely associated with a person who intends to become a licensee so as to access full functionality of the digital data | Grundy discloses the use of descriptive information similar to that disclosed in the '216 patent (e.g., name, address). To the extent that the descriptive information in the '216 patent is uniquely associated with an intending licensee, the descriptive information in Grundy is also uniquely associated with an intending licensee:<br><br>"The user is requested to input new user data, such as the user's name, address and telephone number 212. The new user data and a previous ownership details record are passed by the host software product to the Get Registration Code Module 500 to create a registration code for use during the Authorization process (see FIG. 3)." (12:36-44); *see also* "The user data cross-reference code as extracted 309 is the checksum originally calculated (505 FIG. 5) from the owner data as entered by the user during the registration process (212 FIG. 2)." (15:10-14); *see also* Fig. 3. |

| Claim 7 | Court's Construction | Grundy '598 Patent |
| --- | --- | --- |
| The system of claim 1, said system further including *platform unique ID generating means*, wherein said *mode switching means will permit said digital data to run in said use mode in* | "*platform unique ID generating means*" - Function: to generate a platform unique ID; Structure: a summation algorithm or a summer and equivalents thereof<br><br>"*mode switching means will permit said data to run in* | Grundy discloses the function of generating a hardware identification code:<br><br>"A current hardware identification code is generated 406. The method of generating the hardware identification code is different for each type of computer hardware, and is known in the art." (17:9-12).<br><br>"Next, the hardware identification code is generated 506. The method of generating the hardware identification code is the same as described in step 406 FIG. 4. This code is passed |

| Claim 7 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| *subsequent execution of said digital data on said platform only if said platform unique ID has not changed.* | *said use mode in subsequent execution only if said platform unique ID has not changed.*" - The mode switching means will permit the data to run in the use mode only if the platform unique ID is identical to what it was the previous time the digital data were run | to the Manufacture Control Agency as part of the registration code 216 and returned as part of the Authorization Code for use at the time when the software product undergoes the transformation from evaluation mode to full-function mode 224?? and subsequently every time the product is activated 407. This ensures that the product is being used on the hardware for which it was authorized." (18:34-44).<br><br>See also Fig. 4 and Fig. 5.<br><br>Grundy discloses the structure for generating a hardware identification code:<br><br>"If the operational status indicates that the software product is authorized to operate in full-function mode 403, further checking is necessary in order to ensure that the software is still being used on the hardware for which it was authorized. A current hardware identification code is generated 406. The method of generating the hardware identification code is different for each type of computer hardware, and is known in the art. If the hardware provides direct support for a unique machine number then this is used as the basis for the hardware identification code. Alternately, where a unique machine number is not available, but the hardware is operating in a networked environment, then the hardware identification code can be based on the local area network (LAN) address of the computer. If neither a unique machine number nor LAN address is available, then a relatively distinctive hardware identification code is calculated as a checksum ranged over the ROM BIOS of the computer hardware." (17:5-23). |

| Claim 7 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | See discussion regarding Grundy's checksum algorithm in Claim 1[c].<br><br>Finally, Grundy further discloses a mode switching means that will permit the data to run in the use mode only if the hardware identification code is identical to what it was the previous time the digital data were run:<br><br>"After the hardware identification code is generated 406, it is compared 407 with the hardware identification code which was recorded in the ownership details record at steps 614 and 616 of FIG. 6. If the hardware identification codes match, the full-function ownership details record is returned to the host software product 404 and the module returns control to step 202 of FIG. 2 405. If the hardware identification codes do not match 407, this indicates that the specific software product is being used on computer hardware for which it is not authorized. The operational state of the host software product is changed to evaluation mode 408 and a copy of the resultant ownership details record is re-encrypted using the software product specific encryption/decryption key 409. " (17:24-39). |

| Claim 8 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| The system of claim 7, wherein said platform unique ID generating means comprises part of | | Grundy's hardware identification code is generated by the Get User Data Module (see, e.g., Fig. 4, step 406) and the Generate Registration Code Module (see, e.g., Fig. 5, step 506), which are part of the digital data when executed on the platform:. |

| Claim 8 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| said digital data when executed on said platform. | | "The four modules above, namely the Get User Data Module, the Generate Registration Code Module, the Save Ownership Details Module and the Prime Backup Module are what are referred to as Manufacture Modules.<br><br>When the software product is created, the software developer inserts four "dummy" developer modules into the code of the software product. This is called the priming process. The developer modules simulate the operation and interfaces of the Manufacture Modules for testing and development purposes. The developer modules are made freely available by the Central Authority.<br><br>As the next step in the creation of the software product, the software product containing the developer modules is transferred to the Central Authority. The Central Authority performs a Franking Process on the software product whereby the four developer modules are replaced with the four Manufacturers Modules. The software product is placed in evaluation mode, copied and distributed in the marketplace and to potential users. Details of the software product are stored in the Central Authority's database. In performing the Franking Process, the Central Authority is not given access to the software product's source code or object modules, preserving confidentiality." (5:50-6:7). |

| Claim 9 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| The system of claim 8, wherein said platform unique ID generating means utilizes hard disc or other platform information to determine said platform unique ID. | | Grundy discloses that the use of platform information to determine the hardware identification code:<br><br>"If the hardware provides direct support for a unique machine number then this is used as the basis for the hardware identification code. Alternately, where a unique machine number is not available, but the hardware is operating in a networked environment, then the hardware identification code can be based on the local area network (LAN) address of the computer. If neither a unique machine number nor LAN address is available, then a relatively distinctive hardware identification code is calculated as a checksum ranged over the ROM BIOS of the computer hardware." (17:12-23). |

| Claim 10 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| The system of claim 1, wherein said platform comprises a computer operating system environment. | | The platform disclosed in Grundy comprises a computer operating system environment.<br><br>In particular, Grundy discloses software running on a computer:<br><br>"FIG 1 is a block diagram of an exemplary computer system incorporating the information distribution system of the present invention." (6:25-27).<br><br>"Claim 17: The system of claim 1 wherein the informational product is a computer software program" (25:52-53). |

| Claim 10 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | See also, Fig. 1.<br><br>An operating system environment is necessary in order to run software on a computer hardware system, and thus the platform must inherently comprise a computer operating system environment. |

| Claim 11 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| The system of claim 10, wherein said digital data comprises a software program adapted to run under said operating system environment. | | Grundy discloses that the digital data comprises a software program adapted to run under the operating system environment.<br><br>In particular, Grundy discloses digital data, i.e., software programs:<br><br>"The present invention provides a method and apparatus that monitors and controls the use of information stored on a storage medium. The information, in machine readable form, can be, for example, a computer software program or a database. In the representative embodiment, the information is a software product." (4:21-26).<br><br>"Claim 17: The system of claim 1 wherein the informational product is a computer software program" (25:52-53).<br><br>See also, Fig. 2.<br><br>Software programs must be adapted in order to run under operating system environments and thus, this requirement is inherent in Grundy's disclosure of a computer software program. |

| Claim 12 | Court's Construction | Grundy '598 Patent |
| --- | --- | --- |
| [a] A *registration system* attachable to software to be protected, | "*registration system*" – A system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed. | Grundy discloses a registration system attachable to software to be protected.<br><br>In particular, Grundy discloses a registration system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed:<br><br>"When a new user obtains a disk containing a software product, the software product will operate in the evaluation mode. The new user can freely operate the software in the evaluation mode and make other copies, which will also be in the evaluation mode. If the new user wishes to use the software product in full-function mode, the new user contacts the Central Authority to obtain an authorization code. It is expected that the new user will pay a fee for obtaining the authorization code. **To obtain the authorization code, the new user will conduct, on the user's computer, a registration process.**" (4:50-61) (emphasis added).<br><br>"The distribution copies of the host software product in evaluation mode 106 that are placed into the user community by the seeding process are made available for evaluation purposes only. Copies of the software in evaluation mode do not permit operation beyond that level which is necessary for the software consumer to make an evaluation of the host software product's features prior to making a decision to purchase. However, the host software product does contain all the executable code and ancillary files necessary for the software to operate without any restrictions. **That is, the** |

| Claim 12 | Court's Construction | Grundy '598 Patent |
| --- | --- | --- |
| | | **consumer is in fact supplied with a complete copy of the software, but can not operate the software in full-function mode until after the registration process 108, as discussed below, is completed.**" (9:3-17) (emphasis added).<br><br>The registration system disclosed in Grundy is attachable to software to be protected:<br><br>"The Developer Modules 103 are incorporated into the code of the host software product by the developer…The unencrypted nature of the Developer Modules 102b does not compromise the security of the subsequent manufacture and distribution process as the modules are overwritten in a Franking process 104 with a set of encrypted Manufacture modules." (7:56-68).<br><br>"**Franking is a process whereby the Manufacture Control Agency modifies the primed host software product provided by the developer 104a by overwriting the Developer Modules therein with a set of four specially created Manufacture Modules to create an evaluation mode copy of the host software product.** The Manufacture Modules created during the Franking Process 104 comprise the software instructions necessary to control the steps of getting data about a new user of the host software product and determining the operational mode of the software each time it is used, generating the registration code needed by new users when arranging to convert their copy of the host software product to full-function mode, and allowing the user to make a primed backup copy of the host software product. The Franking Process 104 generates Manufacture Modules that are |

| Claim 12 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | customized to each host software product." (8:7-27) (emphasis added). |
| [b] said registration system generating a *security key* from information input to said software *which uniquely identifies an intended registered user* of said software on a computer on which said software is to be installed; | "*security key*" - A unique identifier associated with a licensee<br><br>(synonymous with "licensee unique ID").<br><br>"*information . . . which uniquely identifies an intended registered user*" - Information that is uniquely associated with a person who intends to become a licensee so as to access full functionality of the digital data<br><br>(synonymous with "information uniquely descriptive of an intending licensee") | See discussion regarding "licensee unique ID" in Claim 1[c] and discussion regarding Claim 2[b]. |
| [c] and *wherein said registration system is replicated at a registration authority* and used for the purposes of | "*wherein said registration system is replicated at a registration authority*" – Wherein the registration system attachable to software to be protected is reproduced | Uniloc apparently contends that the limitation "wherein said registration system is replicated at a registration authority" is met when the algorithm that generates the security key is the same on both the local and remote sides. I disagree, as did the Court. However, if Uniloc's application of this claim limitation were to be accepted, then this element would be present in Grundy: |

| Claim 12 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| *checking by the registration authority that the information unique to the user is correctly entered* at the time that the security key is generated by the registration system. | exactly at the registration authority<br><br>"*checking by the registration authority that the information unique to the user is correctly entered*" – Verification by the registration authority that information unique to the user and entered by the user is accurate. | "The user data cross-reference code as extracted 309 is the checksum originally calculated (505 FIG. 5) from the owner data as entered by the user during the registration process (212 FIG. 2). **A second checksum based on the user data as entered via the input/output device 16 by the Manufacture Control Agency operator is also calculated 309.**<br><br>**The user data cross-reference code and the second checksum 309 are compared 310. If these do not match it is an indication that the User Data as entered by the Manufacture Control Agency operator 301 does not match the User Details as originally entered by the new user at step 212.** There is also a possibility that the mismatch could have resulted from a mis-entry of the Registration Code 302. In the event of a mismatch, an error message is displayed 311 and the operator given the opportunity to correct the data entry problems." (15:10-27) (emphasis added).<br><br>"This is only a simple first-line check which prevents the new user from attempting to register a software product with a frivolous amount of address information. A far more rigorous check occurs at the time of registration when the Manufacture Control Agency operator scrutinizes the information provided by the new user and the user data cross-check process is performed 310. **If the user data validity check 502 passes, a checksum of the user data is created 505. This checksum will be used during the Authorization process as a cross-reference to validate the** |

| Claim 12 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | **user data as communicated to the Manufacture Control Agency 310 FIG. 3.** The cross-reference can be a hash value based on only the alphanumeric characters in the user data." (18:17-31) (emphasis added).<br><br>"After the Authorization code is decrypted 603, the packed bit array is unpacked into its component record fields: owner data cross-reference, the software product identification number, the product version number, the hardware identification code, the new Owner Identification Number, and a checksum of the authorization record itself.<br><br>The sub-fields of the Authorization code are then checked for validity. The validity checks ensure that the Authorization Code checksum matches a freshly calculated checksum 604 and 605, that the authorized hardware identification code matches the freshly generated hardware identification code 606 and 607, that the authorized product identification number matches the actual product identification number 608 as recorded in the specific software product during the Franking process 608, that the authorized product version number is greater than or equal to the software version number 609 as stored during the Franking process, **and that the authorized owner data cross-reference corresponds to the owner data entered by the user 610 and 611**. If any of these validity checks fail, the module returns to the host software product 613 and 218 with an authorization error indication 612. (See 218 and 219 of FIG. 2) If the Authorization code validates, a new ownership details record is constructed 614 comprising the new owner data (such as, for example, name, address and |

| Claim 12 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | telephone number), the newly calculated hardware identification code, the new Owner Identification Number (as obtained from a sub-field of the authorization record), and an operational state field having the value "full-function"." (19:53-20:16) (emphasis added). |

| Claim 13 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| The registration system of claim 12, wherein said security key is generated by a registration number algorithm. | | Grundy discloses that the user data cross-reference code is generated by a registration number algorithm:<br><br>"Calculate User Data Checksum 309" in Fig. 3.<br><br>"Calculate User Data Cross Reference 505" in Fig. 5.<br><br>"Calculate User Data Checksum 610" in Fig. 6.<br><br>"In the first step, an authorization record is assembled which contains, in the representative embodiment, the owner data checksum…" (15:52-54).<br><br>"If the user data validity check 502 passes, a checksum of the user data is created 505. This checksum will be used during the Authorization process as a cross-reference to validate the user data as communicated to the Manufacture Control Agency 310 FIG. 3. The cross-reference can be a hash value based on only the alphanumeric characters in the user data." (18:25-31). |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| [a] A method of control of distribution of software, | | Grundy discloses a method of control of the distribution of software:<br><br>"The present invention is directed to a computer based method and apparatus to control the distribution of information, and more particularly, a method and apparatus whereby a user of computer software becomes the primary agent of manufacture and distribution of the software" (1:7-13).<br><br>"The present invention provides a method and apparatus that monitors and controls the use of information stored on a storage medium. The information, in machine readable form, can be, for example, a computer software program or a database. In the representative embodiment, the information is a software product." (4:21-26). |
| [b] said method comprising providing *mode-switching means* associated with said software adapted to switch said software between a *fully enabled mode* and a *partly enabled or demonstration mode*, | "*mode-switching means*" - Function: to permit the digital data or software to run in a use mode/fully enabled mode if the locally generated licensee unique ID/registration key matches with the remotely generated licensee unique ID/enabling key; Structure: program code which performs a comparison of two numbers or a comparator and equivalents | Grundy discloses providing a mode-switching means associated with the software adapted to switch the software between a fully enabled mode and a partly enabled or demonstration mode.<br><br>Grundy discloses the function of a mode switching means, which permits the digital data or software to run in a use mode/fully enabled (i.e., full-function mode) mode after switching the digital data from a partly enabled or demonstration mode (i.e., evaluation mode). The mode switching means as to this claim limitation switches modes if a registration key has matched an enabling key:<br><br>"According to the present invention, the software products are created by software developers capable of being operated |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | thereof<br><br>"*fully enabled mode*" - A mode/version that allows full use of the digital data or software in accordance with the license<br><br>"*partly enabled or demonstration mode*" - A mode that allows partial use of the digital data or software | in two modes. The first mode is a full-function mode, where all the functions and features of the software product are available to the user of the software product. The second mode is an evaluation mode, where only certain functions, decided by the software developer, can be accessed by the user." (4:27-34).<br><br>"When a new user obtains a disk containing a software product, the software product will operate in the evaluation mode. The new user can freely operate the software in the evaluation mode and make other copies, which will also be in the evaluation mode. If the new user wishes to use the software product in full-function mode, the new user contacts the Central Authority to obtain an authorization code." (4:50-57).<br><br>"The new user then enters the authorization code into the user's computer to become an authorized user and the software product will operate in full-function mode." (5:10-12).<br><br>"The Authorization Code enables the transformation of an evaluation mode copy of the host software product 108a into a full-function mode copy of the host software product 110." (10:5-8). See also 12:67-13:2.<br><br>"Referring now to FIG. 6, there is illustrated the flow chart diagram of the Save Ownership Details Module 600 FIG. 2. The Save Ownership Details Module 600 is one of the four Manufacturer Modules. |

| Claim 17 | Court's Construction | Grundy '598 Patent |
| --- | --- | --- |
| | | "Once the user inputs into the host Software Product the Authorization code received from the Manufacture Control Agency 217 FIG. 2 it is passed to the Save Ownership Details Module 600 and a new ownership details record is created and stored… After the Authorization code is decrypted 603, the packed bit array is unpacked into its component record fields: owner data cross-reference, the software product identification number, the product version number, the hardware identification code, the new Owner Identification Number, and a checksum of the authorization record itself…The sub-fields of the Authorization code are then checked for validity. The validity checks ensure that the Authorization Code checksum matches a freshly calculated checksum 604 and 605, that the authorized hardware identification code matches the freshly generated hardware identification code 606 and 607, that the authorized product identification number matches the actual product identification number 608 as recorded in the specific software product during the Franking process 608, that the authorized product version number is greater than or equal to the software version number 609 as stored during the Franking process, and that the authorized owner data cross-reference corresponds to the owner data entered by the user 610 and 611. If any of these validity checks fail, the module returns to the host software product 613 and 218 with an authorization error indication 612. (See 218 and 219 of FIG. 2) If the Authorization code validates, a new ownership details record is constructed 614 comprising the new owner data (such as, for example, name, address and telephone number), the newly calculated hardware identification code, the new Owner Identification Number (as obtained from a |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | sub-field of the authorization record), **and an operational state field having the value "full-function"…If the update is successful 617, control returns to the host software product 621 at step 218 with a success status and the new ownership details record 620.**" (19:19-20:28).<br><br>*See also* Fig. 6.<br><br>Grundy discloses the structure of the mode switching means as program code that performs a comparison of two numbers (an owner data cross-reference code and a local checksum of the owner data):<br><br>"…and that the authorized owner data cross-reference corresponds to the owner data entered by the user 610 and 611." (20:3-5).<br><br>This operation is the same as the operation that matches the user data cross-reference code with the user data checksum on the remote server:<br><br>"**The user data cross-reference code and the second checksum 309 are compared 310. If these do not match it is an indication that the User Data as entered by the Manufacture Control Agency operator 301 does not match the User Details as originally entered by the new user at step 212.** There is also a possibility that the mismatch could have resulted from a mis-entry of the Registration Code 302. In the event of a mismatch, an error message is displayed 311 and the operator given the opportunity to correct the data entry problems." |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | (15:17-27) (emphasis added). |
| [c] said method further comprising providing *registration key generating means* adapted to generate a registration key which is a function of information unique to an intending user of the software; | "*registration key generating means*" - Function: to generate a registration key<br><br>Structure: a summation algorithm or a summer and equivalents thereof<br><br>(synonymous with "local licensee generating means"). | See discussion regarding structure of "local licensee generating means" and "local licensee ID" in Claim 1[c].<br><br>Grundy discloses the function of generating a registration key as a local checksum of the user (owner) data:<br><br>**If the user data validity check 502 passes, a checksum of the user data is created 505. This checksum will be used during the Authorization process as a cross-reference to validate the user data as communicated to the Manufacture Control Agency 310 FIG. 3. The cross-reference can be a hash value based on only the alphanumeric characters in the user data.** (All lower-case letters are converted to upper-case and white space is ignored before the hash value is calculated.)" (17:64-18:33) (emphasis added).<br><br>"The user data cross-reference code as extracted 309 is the checksum originally calculated (505 FIG. 5) from the owner data as entered by the user during the registration process (212 FIG. 2)." (15:10-13).<br><br>". . . and that the authorized owner data cross-reference corresponds to the owner data entered by the user 610 and 611." (20:3-5). |
| [d] said mode-switching means | "*fully enabled mode*" - A mode/version that allows full | Grundy discloses that the mode-switching means switches the software into fully enabled mode only if the enabling key (owner data cross-reference |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| switching said software into *fully enabled mode* only if an *enabling key provided to said mode-switching means by said intending user at the time of registration of said software has matched* identically with said registration key; | use of the digital data or software in accordance with the license<br><br>"*enabling key provided to said mode-switching means by said intending user at the time of registration of said software has matched*" - Provided to the mode-switching means by the person who intends to become a licensee<br><br>"*enabling key*" – A unique identifier associated with a licensee<br><br>(synonymous with licensee unique ID and registration key) | code) provided to the mode-switching means by the intending user at the time of registration of the software has matched identically with the registration key (checksum of the owner data).<br><br>See discussion regarding "licensee unique ID" in Claim 1[c].<br><br>The owner data cross-reference code is provided by the user to the mode-switching means as a part of the authorization code:<br><br>"Referring now to FIG. 6, there is illustrated the flow chart diagram of the Save Ownership Details Module 600 FIG. 2. The Save Ownership Details Module 600 is one of the four Manufacturer Modules.<br><br>"**Once the user inputs into the host Software Product the Authorization code received from the Manufacture Control Agency 217 FIG. 2 it is passed to the Save Ownership Details Module 600** and a new ownership details record is created and stored. The ownership details record is stored in the program code segment of the host software product, overwriting the previous ownership details record." (19:19-30) (emphasis added).<br><br>"**After the Authorization code is decrypted 603, the packed bit array is unpacked into its component record fields: owner data cross-reference**. . . . The sub-fields of the Authorization code are then checked for validity. **The validity checks ensure . . . that the authorized owner data cross-reference corresponds to the owner data entered by the user 610 and 611**. If any of these validity checks fail, the module returns to the host software product 613 and 218 |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | with an authorization error indication 612. (See 218 and 219 of FIG. 2) If the Authorization code validates, a new ownership details record is constructed 614 comprising the new owner data (such as, for example, name, address and telephone number), the newly calculated hardware identification code, the new Owner Identification Number (as obtained from a sub-field of the authorization record), and an operational state field having the value "full-function"." (19:53-20:16) (emphasis added).<br><br>See also, Fig. 6. |
| [e] and wherein said enabling key is *communicated to said intending user* at the time of registration of said software; | "*communicated to said intending user*" - Communicated to the person who intends to become a licensee | Grundy discloses that the enabling key (owner data cross-reference code) is communicated to the intending user at the time of registration of the software as a part of the authorization code:<br><br>"In an exemplary embodiment, the exchange of codes can take place directly between the Manufacture Control Agency's computer processor 10, which executes the host software product, via telephone line 20." (10:1-5).<br><br>"**The Authorization code is then displayed 319 on the input/output device 16 and the Manufacture Control Agency operator communicates it to the new user 320 and 108b.** If the version of the host software product which the new user is registering is older than the latest version of the product which is available, this fact is highlighted to the operator on this display so that the operator can advise the new user that the registration number being provided will also be useable if the user subsequently obtains a copy of a more current version." (16:1-10). |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| [f] said enabling key *generated by a third party means of operation of a duplicate copy of said registration key generating means.* | "*generated by a third party means of operation of a duplicate copy of said registration key generating means.*" - Generated by a third party's use of a duplicate copy of the registration key generating means | Grundy discloses that the enabling key (owner data cross-reference code) is generated by a third party means of operation of a duplicate copy of the registration key generating means.<br><br>In particular, Grundy discloses that the owner data cross-reference code is generated by a third party's (i.e., the Manufacture Control Agency or remote computer) use of a duplicate copy of the registration key generating means:<br><br>"A second checksum based on the user data as entered via the input/output device 16 by the Manufacture Control Agency operator is also calculated 309." (15:13-16).<br><br>"After the Owner Identification Number is allocated to the new user 317, an Authorization code is generated 318. The Authorization code is generated using a four step process. In the first step, an authorization record is assembled which **contains, in the representative embodiment, the owner data checksum**, the host software product identification code, the latest product Version Number, the hardware identification code, the newly allocated Owner Identification Number and a checksum of the authorization record itself. During the second step, the authorization record is packed into a bit array. The mapping between the fields of the authorization record and packed bit array ensures that the minimum number of bits necessary to represent the information content of each field is used. The third step provides for the bit array to be encrypted using the software product specific encryption/decryption key. Finally, in step four, the encrypted bit array is encoded in a format suitable for communication, e.g. "AAA-999-AAA-999-AAA"." |

| Claim 17 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | | (15:49-68).<br><br>Grundy discloses that the checksum algorithm used to calculate the owner data cross-reference code on the remote server is the same as the checksum algorithm used to calculate the checksum of the owner data on the local computer. |

| Claim 19 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| [a] A remote registration station incorporating *remote licensee unique ID generating means,* | "*remote licensee unique ID generating means,*" - Function: to generate a remote licensee unique ID; Structure: a summation algorithm or a summer and equivalents thereof | Grundy discloses a remote registration station (i.e., computer processor 15).<br><br>See discussion regarding "remote licensee unique ID generating means" in Claim 1[c]. |
| [b] said station forming part of a registration system for licensing execution of digital data in a *use mode*, | "*registration system*" - A system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed<br><br>"*use mode*" - A mode that allows full use of the digital data or software in accordance with the license. | Grundy discloses that the registration station (i.e., computer processor 15) forms part of a registration system for licensing execution of digital data in a use mode.<br><br>See discussion regarding "registration system for licensing execution of digital data in a use mode" in Claim 1[a]. |

| Claim 19 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| [c] said digital data executable on a platform, | | See discussion regarding Claim 1[b]. |
| [d] said system including *local licensee unique ID generating means,* | "*local licensee unique ID generating means,*" - Function: to generate a local licensee unique ID; Structure: a summation algorithm or a summer and equivalents thereof | See discussion regarding "local licensee unique ID generating means" in Claim 1[c]. |
| [e] said system further including *mode switching means* operable on said platform which permits use of said digital data in said use mode on said platform only if a *licensee unique ID* generated by said local licensee unique ID generating means *has matched* a licensee unique ID generated by said remote licensee unique ID generating means; | "*mode switching means*" – Function: to permit the digital data or software to run in a use mode/fully enabled mode if the locally generated licensee unique ID/registration key matches with the remotely generated licensee unique ID/enabling key.<br><br>Structure: program code which performs a comparison of two numbers or a comparator and equivalents thereof<br><br>"*licensee unique ID*" – A unique identifier associated | See discussion regarding Claim 1[d]. (Claim 19[e] does not include the temporal requirement.) |

| Claim 19 | Court's Construction | Grundy '598 Patent |
| --- | --- | --- |
| | with a licensee.<br><br>"*has matched*" - A comparison between the locally generated licensee unique ID/registration key and the remotely generated licensee unique ID/enabling key shows that the two are the same | |
| [f] and wherein said remote licensee unique ID generating means comprises software executed on a platform which *includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.* | "*includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.*" - Includes the identical algorithm used by local licensee unique ID generating means to produce the licensee unique ID | See discussion regarding Claim 1[e]. |

| Claim 20 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| [a] A method of registration of digital data so as to enable execution of said digital data in a *use mode*, | "*use mode*" - A mode that allows full use of the digital data or software in accordance with the license. | Grundy discloses a method of registration of digital data so as to enable execution of the digital data in a use mode.<br><br>See discussion regarding Claim 1[a]. |
| [b] said method comprising an intending licensee operating a *registration system* for licensing execution of digital data in a *use mode*, | "*registration system*" - A system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed<br><br>"*use mode*" - A mode that allows full use of the digital data or software in accordance with the license. | Grundy discloses that the method comprises an intending licensee operating a registration system for licensing execution of digital data in a use mode.<br><br>See discussion regarding Claim 1[a]. |
| [c] said digital data executable on a platform, | | See discussion regarding Claim 1[b]. |
| [d] said system including *local licensee unique ID generating means* and *remote licensee unique ID generating means*, | "*local licensee unique ID generating means*"/ "*remote licensee unique ID generating means*" - Function: to generate a local or remote licensee unique ID; Structure: a summation algorithm or a | See discussion regarding Claim 1[c]. |

| Claim 20 | Court's Construction | Grundy '598 Patent |
|---|---|---|
| | summer and equivalents thereof | |
| [e] said system further including *mode switching means* operable on said platform which permits use of said digital data in said use mode on said platform only if a licensee unique ID generated by said local licensee unique ID generating means *has matched* a licensee unique ID generated by said remote licensee unique ID generating means; | "*mode switching means*" - Function: to permit the digital data or software to run in a use mode/fully enabled mode if the locally generated licensee unique ID/registration key matches with the remotely generated licensee unique ID/enabling key.<br><br>Structure: program code which performs a comparison of two numbers or a comparator and equivalents thereof<br><br>"*has matched*" - A comparison between the locally generated licensee unique ID/registration key and the remotely generated licensee unique ID/enabling key shows that the two are the same | See discussion regarding Claim 1[d]. (Claim 20[e] does not include the temporal requirement.) |

| Claim 20 | Court's Construction | Grundy '598 Patent |
| --- | --- | --- |
| [f] and wherein said remote licensee unique ID generating means comprises software executed on a platform which *includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.* | "*includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID*" - Includes the identical algorithm used by local licensee unique ID generating means to produce the licensee unique ID | See discussion regarding Claim 1[e]. |

**U.S. Patent No. 4,796,220 (Wolfe): Claims 12, 13, 19 and 20 of the '216 Patent**

| Claim 12 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| [a] A *registration system* attachable to software to be protected, | "*registration system*" – A system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed. | Wolfe discloses a registration system attachable to software to be protected.<br><br>In particular, Wolfe discloses a system, attachable to software, that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed:<br><br>"This invention relates to a method of controlling the copying of computer software and more particularly, to such a method which allows an unlimited number of backup copies of a program to be made for the same machine, but selectively prevents the execution of such backup copies or the original on other unauthorized machines." (1:7-12).<br><br>**"In practice, the manner in which the invention is to be implemented is that the first time the application program is used, a prompt appears on the screen requiring the user to register the program for use on a defined user computer 10 with the owner or the authorizing agent of the owner.** This prompt may include the serial number of the program and a configuration code generated by the application program based on the configuration of user machine 10. The serial number of the program will have been previously assigned by the licensor or seller of the program and may include information relating to how many different machines have been authorized. For example, a serial number may allow the application program to be copied into two hard disks for |

| Claim 12 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | | execution on two different machines, or it may limit the copying to only a single machine configuration. The price the user pays for this privilege may be related to the number of machines upon which the application program is to operate. Alternatively, a purchaser or licensee of the application program may obtain a site license, allowing a certain number of copies to be made and that certain number is included as a part of the serial number. Further, in other situations, the software owner may inventory programs in a central location of a customer and only bill for the programs after distribution by the customer to its employees or other users. The billing amount could, in turn, be related to the number of programs actually in use." (4:40-68) (emphasis added).<br><br>"If the comparison is made, execution is allowed to continue; however, if no comparison is found, execution is stopped and an appropriate message is displayed informing the user that authorization for that computer has not been granted. A reauthorization procedure, beginning at block 40, may then be attempted and if use of the software on additional machines is authorized, a new permission code for the new machine will be given." (8:60-68). |
| [b] said registration system generating a *security key* from information input to said software *which uniquely identifies an intended* | "*security key*" - A unique identifier associated with a licensee<br><br>(synonymous with "licensee unique ID). | Uniloc contends that a security key is associated with a licensee if it is merely based on information derived from product serial number or hardware information. I disagree. However, if Uniloc's application of this claim term were to be accepted, then this element would be present in Wolfe.<br><br>Wolfe's permission code is based on hardware information: |

| Claim 12 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| *registered user* of said software on a computer on which said software is to be installed; | "*which uniquely identifies an intended registered user*" - Information that is uniquely associated with a person who intends to become a licensee so as to access full functionality of the digital data | "The configuration code is generated after the program is loaded into the machine is [sic] based on the particular hardware parameters of the machine. For example, the configuration code may be a multi-digit number, in which each group of one or more digits includes different hardware configuration information. Further, special information, unique to a particular machine, such as information unique to a disk, disk drive or RAM based on specific tests, may also be included as part of the configuration code…After computer 12 determines that a copy can be made, it generates a permission code based on the configuration code previously transmitted to it. This configuration code may be based on an algorithm defined only by the special, or configuration unique, code portion of the configuration code. Once the permission code is generated, it is transmitted to the user machine, either directly through modem 16, or to the operator of user machine 10 over the telephone 18. At that point, the user enters the permission code." (5:1-10 and 5:33-42).<br><br>"Next, according to block 44, the user communicates the serial number and configuration code to central computer 12 using either modem 16 or telephone 18, as previously explained. Additional information may also be communicated at this point, such as the telephone number of the user or a security code. Thereafter, according to block 46, central computer 12 checks its data base to be sure that a copy of the software is permitted. If not, then according to block 48, central computer 12 informs the user that no additional copies have been authorized and terminates the |

| Claim 12 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | | communication link. If central computer concludes that another machine is authorized to copy and execute the software, then, as indicated at block 50, central computer 12 stores the configuration data and updates its data base for the transmitted serial number. Next, central computer 12 calculates the permission code from the information contained in the transmitted configuration code and communicates the calculated permission code back to the user over the communication link." (8:30-49).<br><br>Microsoft Product Activation uses a Product Key or HWID. Uniloc contends that each of these pieces of information are associated with a licensee. I disagree. However, if Uniloc's application of this claim term were to be accepted, then Wolfe's permission code would disclose this feature.<br><br>Wolfe discloses the function of generating a permission code:<br><br>"Once the permission code is generated, it is transmitted to the user machine, either directly through modem 16, or to the operator of user machine 10 over the telephone 18. At that point, the user enters the permission code. **The control program portion of the software then recreates the generation of the permission code based on the hardware and can compare the internally generated code to the entered permission code.** If the two codes compare, execution of the program is allowed; if the two codes do not compare, then further execution of the application program is stopped and a message is displayed indicating to the user that execution on that machine has not been approved. This, of course, should only happen if the configuration of the |

| Claim 12 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | | machine upon which execution is attempted is not the same as the configuration of the machine which received the original permission code." (5:38-54) (emphasis added).<br><br>"**After the permission code generated by computer 12 is returned to and entered in user computer 10, user computer 10 is able to duplicate, with the appropriate additional information that may be contained in the permission code (or previously included in the control program) the recalculation of a permission code based on retesting the hardware configuration.** As long as the recalculated permission code and the originally entered permission code are the same, execution of the application program on the user computer 10 is allowed to continue. This is also be true for any backup copies of the application program which the user desires to create, since the regeneration of the permission code results in the same permission code as was originally entered." (7:42-56) (emphasis added).<br><br>"Thereafter, as indicated at block 52, the user enters the communicated permission code for storage with and subsequent use by the software. **The subsequent use, as indicated at block 54, is the recalculation of a permission code by user's computer 10 under the control of the software and, as indicated at block 56, a comparison between the originally entered permission code and the recalculated permission code occurs.** The recalculation may, in part, either include or be controlled by a unique response to information communicated from central computer 12 as a part of the original permission code. If the |

| Claim 12 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | | comparison is made, execution is allowed to continue; however, if no comparison is found, execution is stopped and an appropriate message is displayed informing the user that authorization for that computer has not been granted. A reauthorization procedure, beginning at block 40, may then be attempted and if use of the software on additional machines is authorized, a new permission code for the new machine will be given." (8:50-68) (emphasis added). |
| [c] and *wherein said registration system is replicated at a registration authority* and used for the purposes of *checking by the registration authority that the information unique to the user is correctly entered* at the time that the security key is generated by the registration system. | "*wherein said registration system is replicated at a registration authority*" – Wherein the registration system attachable to software to be protected is reproduced exactly at the registration authority<br><br>"*checking by the registration authority that the information unique to the user is correctly entered*" – Verification by the registration authority that information unique to the user and entered by the user is accurate. | Uniloc apparently contends that the limitation "wherein said registration system is replicated at a registration authority" is met when the algorithm that generates the security key is the same on both the local and remote sides. I disagree, as did the Court. However, if Uniloc's application of this claim limitation were to be accepted, then this element would be present in Wolfe:<br><br>"After the permission code generated by computer 12 is returned to and entered in user computer 10, user computer 10 is able to duplicate, with the appropriate additional information that may be contained in the permission code (or previously included in the control program) **the recalculation of a permission code based on retesting the hardware configuration**." (7:42-48) (emphasis added).<br><br>"Once the permission code is generated, it is transmitted to the user machine, either directly through modem 16, or to the operator of user machine 10 over the telephone 18. At that point, the user enters the permission code. **The control program portion of the software then recreates the generation of the permission code based on the hardware and can compare the internally generated code to the** |

| Claim 12 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | | **entered permission code.**" (5:38-47) (emphasis added).<br><br>"The subsequent use, as indicated at block 54, is the recalculation of a permission code by user's computer 10 under the control of the software and, as indicated at block 56, a comparison between the originally entered permission code and the recalculated permission code occurs." (8:52-58). |

| Claim 13 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| The registration system of claim 12, wherein said security key is generated by a registration number algorithm. | | Wolfe discloses that the permission code is generated by a registration number algorithm :<br><br>"Central computer 12 has many different algorithms it can use to calculate the permission code and the particular one selected relates to the unique Mode Number portion of the configuration code. For example, if the Mode Number is 75, then the algorithm to calculate the permission code may be the sum of the RAM size plus the hard disk size, times the percent of free space. For a different Mode Number, a different algorithm using different portions of the configuration code information is used to calculate the permission code. " (7:31-41). |

| Claim 19 | Court's Construction | Wolfe '220 Patent |
|---|---|---|

| Claim 19 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| [a] A remote registration station incorporating *remote licensee unique ID generating means,* | "*remote licensee unique ID generating means,*" - Function: to generate a remote licensee unique ID; Structure: a summation algorithm or a summer and equivalents thereof.<br><br>"*licensee unique ID*" – A unique identifier associated with a licensee.<br><br>(synonymous with "security key") | Wolfe discloses a remote registration station (e.g., central computer system 12).<br><br>Wolfe discloses the function of generating a permission code on a remote registration station:<br><br>"Then, central computer 12 calculates the permission code based on the hardware configuration information provided thereto. Central computer 12 has many different algorithms it can use to calculate the permission code and the particular one selected relates to the unique Mode Number portion of the configuration code." (7:29-35).<br><br>Wolfe discloses the structure for generating the permission code:<br><br>"Central computer 12 has many different algorithms it can use to calculate the permission code and the particular one selected relates to the unique Mode Number portion of the configuration code. For example, if the Mode Number is 75, then the algorithm to calculate the permission code may be the sum of the RAM size plus the hard disk size, times the percent of free space. For a different Mode Number, a different algorithm using different portions of the configuration code information is used to calculate the permission code. " (7:31-41).<br><br>The algorithm disclosed in Wolfe (e.g., the sum of the RAM plus the hard disk size times the percent of free space) is the same or equivalent to a summation algorithm.<br><br>See discussion regarding "security key" in Claim 12[b]. |
| [b] said station | "*registration system*" - A | Wolfe discloses that the remote registration station (i.e., central computer |

| Claim 19 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| forming part of a *registration system* for licensing execution of digital data in a *use mode*, | system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed<br><br>"*use mode*" - A mode that allows full use of the digital data or software in accordance with the license. | system 12) forms part of a registration system for licensing execution of digital data in a use mode.<br><br>See discussion regarding "registration system" in Claim 12[a]. |
| [c] said digital data executable on a platform, | | Wolfe discloses that the digital data is executable on a platform (e.g., a computer system):<br><br>"User computer system 10 may be any conventional computer system, from the smallest personal computer to the largest main frame system… In a typical operating environment, an application program is stored on either the disk associated with disk drive 20, or on a diskette inserted into on of the diskette drives 22. This program is then executed, on command of the user, that is, it is copied into the RAM 24 and controls the tasks performed by CPU 26 to cause a desired application to be performed." (3:55-4:2). |
| [d] said system including *local licensee unique ID generating means,* | "*local licensee unique ID generating means,*" - Function: to generate a local licensee unique ID; Structure: a summation algorithm or a summer and equivalents thereof | See discussion regarding "generating a security key" in Claim 12[b].<br><br>Wolfe discloses the same structure for generating the permission code on both the local and remote computers. See discussion regarding "remote licensee unique ID generating means" in Claim 19[a]. |
| [e] said system | "*mode switching means*" – | Wolfe discloses that the system further includes mode switching means |

| Claim 19 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| further including *mode switching means* operable on said platform which permits use of said digital data in said use mode on said platform only if a *licensee unique ID* generated by said local licensee unique ID generating means *has matched* a licensee unique ID generated by said remote licensee unique ID generating means; | Function: to permit the digital data or software to run in a use mode/fully enabled mode if the locally generated licensee unique ID/registration key matches with the remotely generated licensee unique ID/enabling key; Structure: program code which performs a comparison of two numbers or a comparator and equivalents thereof<br><br>"*licensee unique ID*" – A unique identifier associated with a licensee.<br><br>"*has matched*" - A comparison between the locally generated licensee unique ID/registration key and the remotely generated licensee unique ID/enabling key shows that the two are the same | operable on the platform which permits use of the digital data in the use mode on the platform only if a recalculated permission code generated locally has matched a permission code generated remotely.<br><br>Wolfe discloses the function of the mode switching means:<br><br>"Once the permission code is generated, it is transmitted to the user machine, either directly through modem 16, or to the operator of user machine 10 over the telephone 18. At that point, the user enters the permission code. The control program portion of the software then recreates the generation of the permission code based on the hardware and can compare the internally generated code to the entered permission code. **If the two codes compare, execution of the program is allowed; if the two codes do not compare, then further execution of the application program is stopped and a message is displayed indicating to the user that execution on that machine has not been approved.** This, of course, should only happen if the configuration of the machine upon which execution is attempted is not the same as the configuration of the machine which received the original permission code." (5:38-54) (emphasis added).<br><br>"After the permission code generated by computer 12 is returned to and entered in user computer 10, user computer 10 is able to duplicate, with the appropriate additional information that may be contained in the permission code (or previously included in the control program) the recalculation of a permission code based on retesting the hardware configuration. **As long as the recalculated permission code and the originally entered permission code are the same, execution of the application program on the user** |

| Claim 19 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | | **computer 10 is allowed to continue.** This is also be true for any backup copies of the application program which the user desires to create, since the regeneration of the permission code results in the same permission code as was originally entered." (7:42-56) (emphasis added).<br><br>Wolfe discloses the structure of the mode switching as a software comparison:<br><br>"**If the two codes compare**, execution of the program is allowed; **if the two codes do not compare**, then further execution of the application program is stopped and a message is displayed indicating to the user that execution on that machine has not been approved. This, of course, should only happen if the configuration of the machine upon which execution is attempted is not the same as the configuration of the machine which received the original permission code." (5:46-54) (emphasis added).<br><br>Fig. 3, block 56.<br><br>"As long as the recalculated permission code and the originally entered permission code **are the same**, execution of the application program on the user computer 10 is allowed to continue. This is also be true for any backup copies of the application program which the user desires to create, since the regeneration of the permission code results in the same permission code as was originally entered." (7:48-56) (emphasis added).<br><br>"Thereafter, as indicated at block 52, the user enters the communicated permission code for storage with and |

| Claim 19 | Court's Construction | Wolfe '220 Patent |
| --- | --- | --- |
| | | subsequent use by the software. The subsequent use, as indicated at block 54, is the recalculation of a permission code by user's computer 10 under the control of the software and, as indicated at block 56, **a comparison between the originally entered permission code and the recalculated permission code occurs**. The recalculation may, in part, either include or be controlled by a unique response to information communicated from central computer 12 as a part of the original permission code. If the comparison is made, execution is allowed to continue; however, if no comparison is found, execution is stopped and an appropriate message is displayed informing the user that authorization for that computer has not been granted." (8:50-65) (emphasis added).<br><br>The structure for the mode switching means disclosed in Wolfe is the same or equivalent to program code that performs a comparison of two numbers. |
| [f] and wherein said remote licensee unique ID generating means comprises software executed on a platform which *includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.* | "*includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.*" - Includes the identical algorithm used by local licensee unique ID generating means to produce the licensee unique ID | Wolfe discloses that the remote algorithm comprises software executed on a platform which includes the identical algorithm utilized by the local algorithm:<br><br>"After the permission code generated by computer 12 is returned to and entered in user computer 10, user computer 10 is able to duplicate, with the appropriate additional information that may be contained in the permission code (or previously included in the control program) **the recalculation of a permission code based on retesting the hardware configuration**." (7:42-48) (emphasis added).<br><br>"Once the permission code is generated, it is transmitted to the user machine, either directly through modem 16, or to the operator of user machine 10 over the telephone 18. At that |

| Claim 19 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | | point, the user enters the permission code. **The control program portion of the software then recreates the generation of the permission code based on the hardware and can compare the internally generated code to the entered permission code.**" (5:38-47) (emphasis added).<br><br>"The subsequent use, as indicated at block 54, is the recalculation of a permission code by user's computer 10 under the control of the software and, as indicated at block 56, a comparison between the originally entered permission code and the recalculated permission code occurs." (8:52-58). |

| Claim 20 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| [a] A method of registration of digital data so as to enable execution of said digital data in a *use mode*, | "*use mode*" - A mode that allows full use of the digital data or software in accordance with the license. | Wolfe discloses a method of registration of digital data so as to enable execution of the digital data in a use mode.<br><br>See discussion regarding "registration system" in Claim 12[a]. |
| [b] said method comprising an intending licensee operating a *registration system* for licensing execution of digital data in a *use mode*, | "*registration system*" – A system that allows digital data or software to run in a use mode on a platform if and only if an appropriate licensing procedure has been followed<br><br>"*use mode*" - A mode that allows full use of the digital | Wolfe discloses that the method comprises an intending licensee operating a registration system for licensing execution of the digital data in a use mode.<br><br>See discussion regarding "registration system" in Claim 12[a]. |

| Claim 20 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| | data or software in accordance with the license. | |
| [c] said digital data executable on a platform, | | Wolfe discloses that the digital data is executable on a platform (e.g., a computer system).<br><br>See discussion regarding Claim 19[c]. |
| [d] said system including *local licensee unique ID generating means* and *remote licensee unique ID generating means*, | "*local licensee unique ID generating means*"/ "*remote licensee unique ID generating means*" - Function: to generate a local or remote licensee unique ID/registration key; Structure: a summation algorithm or a summer and equivalents thereof | See discussion regarding "local licensee unique ID generating means" and "remote licensee unique generating means" in Claim 19[a] and [d]. |
| [e] said system further including *mode switching means* operable on said platform which permits use of said digital data in said use mode on said platform only if a licensee unique ID generated by said local licensee unique ID generating means has matched a | "*mode switching means*" – Function: to permit the digital data or software to run in a use mode/fully enabled mode if the locally generated licensee unique ID/registration key matches with the remotely generated licensee unique ID/enabling key; Structure: program code which performs a comparison of two numbers or a comparator and equivalents thereof | See discussion regarding Claim 19[e]. |

| Claim 20 | Court's Construction | Wolfe '220 Patent |
|---|---|---|
| licensee unique ID generated by said remote licensee unique ID generating means; | "*licensee unique ID*" – A unique identifier associated with a licensee.<br><br>"*has matched*" - A comparison between the locally generated licensee unique ID/registration key and the remotely generated licensee unique ID/enabling key shows that the two are the same | |
| [f] and wherein said remote licensee unique ID generating means comprises software executed on a platform which *includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.* | "*includes the algorithm utilized by said local licensee unique ID generating means to produce said licensee unique ID.*" - Includes the identical algorithm used by local licensee unique ID generating means to produce the licensee unique ID | See discussion regarding Claim 19[f]. |