UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNILOC USA, INC. and
UNILOC SINGAPORE PRIVATE LIMITED,

Plaintiffs,

v.

MICROSOFT CORPORATION,

Defendant.

Civil Action No. 03 440 (WES)

REDACTED

**DECLARATION OF SUNIL SWAMI IN SUPPORT OF MICROSOFT CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

I, Sunil Swami, declare and state as follows:

1. I am a Development Manager for Microsoft Corporation. I have been employed by Microsoft since January 1998. From April 2001 to December 2003, I worked extensively on product activation in Microsoft's Clearinghouse, and I am familiar with how product activation functions on the Clearinghouse.

2. I am over the age of 18. I make this declaration based on my own knowledge and could and would competently testify as to the matters set forth below if called upon to do so.

3. In Microsoft's product activation, when a license request or IID is received by the Clearinghouse, a check is performed to determine if the PID that is received is already stored in the Clearinghouse database. If the PID is valid and not yet in the database, a license or Confirmation ID will be generated and sent back to the user's computer. If the PID is already in the database, the Clearinghouse checks the HWID that is stored with the PID in the database against the HWID that was sent with the PID from the user's computer. If the HWIDs match, or if they have enough similarities that the Clearinghouse considers them to be "in tolerance," a license or Confirmation ID will also be generated and sent back to the user's computer. If the HWIDs are not in tolerance,

a license may not issue, depending on how many installations on separate computers are allowed for that particular software.

4. If the Clearinghouse determines that a license should issue, in the case of internet activation, the Clearinghouse generates a license that consists of a license ID provided by the Clearinghouse, various flags that may provide instructions to the user's computer, as well as the PID and HWID that were sent to the Clearinghouse from the user's computer as part of the license request. In some cases, other information is also included in the license.

5. If the Clearinghouse determines that a license should issue, in the case of telephone activation, the Clearinghouse generates the Confirmation ID, which consists of the license ID and flags described above. In some cases, other information is included in the CID. The CID is encrypted with a key that is derived from the PID and HWID that were sent to the Clearinghouse from the user's computer in the IID and then signed with the clearinghouse private key.

6. If the Clearinghouse later receives another request to activate the same PID, it uses logic to decide whether the request is coming from the original computer, or from a different computer. It generally does so by evaluating the HWID previously stored for that PID. If the HWID sent with the new request is close enough to the stored HWID, it assumes the request is bona fide, and issues a license. If not, it assumes that the request is from a copier, and denies the activation request.

7. In neither internet nor telephone activation does the Clearinghouse generate the PID, HWID and/or IID that were generated by the user's computer.

8. The "FullPID" identified in Uniloc's infringement theories as the output of the algorithm PIDStringtoPIDStruct is merely a different format of the PID. While the "PID" is a human-readable string, the "FullPID" is a binary-encoded data structure. The algorithm PIDStringtoPIDStruct has not been used on the Clearinghouse since a new Clearinghouse code

base was implemented on or about March of 2003, long prior to the filing of this lawsuit. The PID was put into "FullPID" format using this algorithm only during telephone activation as part of the process of generating the CID on the Clearinghouse. The output of PIDStringtoPIDStruct on the Clearinghouse was not compared against anything for matching purposes. Specifically, it was not compared against the output of PIDStringtoPIDStruct on the user's computer.

9. The values abConfID and i64ConfID identified by Uniloc as alleged licensee unique IDs have also not been used on the Clearinghouse as part of generating a CID since a new Clearinghouse code base was implemented on or about March of 2003.

10. During telephone activation, when a Confirmation ID using the code that was replaced in March of 2003 was generated, temporary values called the i64ConfID and abConfID were used to hold the data used to generate the CID as it went through various mathematical transformations.

11. The algorithm Uniloc identifies as generating i64ConfID / abConfID, FEncryptDecryptUsingPIDHWID, encrypted data at the Clearinghouse.

12. The output of FEncryptDecryptUsingPIDHWID was not compared against anything generated by the user's computer for matching purposes. Specifically, it was not compared against the output of FEncryptDecryptUsingPIDHWID on the user's computer.

13. In the Office context for internet activation, when a license is created, the license data is hashed . The result of the hash operation is then encrypted with a private key known only to Microsoft. The encrypted entity is called a signature. Both the license and the signature are sent back to the user's computer.

14. A similar hashing process , is used to sign the CID in Office telephone activation.

REDACTED

15. In the Windows context for internet activation the protocol for creating a license is somewhat different from what it is in the Office context. However, as in the Office context, creating a license includes creating a digital signature for the license. The signature is created by hashing license data and then encrypting the hashed data.

REDACTED

16. A similar hashing process, , is used to sign the CID in Windows telephone activation.

17. When Microsoft Office products are reactivated over the internet, the license or Confirmation ID that was sent to the user's computer from the Clearinghouse is sent back to the Clearinghouse along with the PID and HWID as part of the license request. The user's computer does not generate the license or CID in this scenario; it merely sends back to the Clearinghouse what it received from the Clearinghouse. In the case of most reactivation requests, the Clearinghouse does not do anything with the license or CID that is sent back. Office XP was formerly sold on a subscription basis, and in requests to reactivate Office XP software due to a subscription renewal, the license or CID that is sent to the Clearinghouse with the request is compared against the license or CID originally generated at the Clearinghouse.

18. Beginning with Microsoft Windows Service Pack 1, and in all subsequently released accused Windows products, Microsoft introduced the feature of Product Key Hash into Product Activation for Windows products only.

19. In internet activation for Microsoft Windows Service Pack 1 and later versions of Windows, the Product Key input by the user during installation is sent to the Clearinghouse. The Clearinghouse processes the Product Key with a hashing algorithm to generate a Product Key hash. This Product Key hash is compared against a table of valid Product Key hashes that has

been provided to the Clearinghouse by Microsoft. If the Product Key hash generated by the Clearinghouse does not match one of the Product Key hashes on the table, activation will not proceed. If activation proceeds, the Product Key hash from the table is sent back to the user's computer.

20. In telephone activation, a shorter version of a Product Key hash is sent to the Clearinghouse as part of the Installation ID. The Clearinghouse compares this Product Key hash against the table of valid Product Key hashes, and if activation proceeds, sends the Product Key hash found in the table back to the user as part of the Confirmation ID.

21. All Product Key hash comparisons on the Clearinghouse are between a hash value on the table provided to the Clearinghouse by Microsoft and either (1) a hash value calculated on the user's computer (in telephone activation) or (2) a hash value calculated on the Clearinghouse (in internet activation).

22. LicCryptHashData and CryptHashData are not algorithms, but instead are application program interfaces (APIs) that call various functions.

23. The means for (1) allowing the software to continue to operate in its fully functional mode after the expiration of the grace period if the software has been activated and the HWID remains within tolerance of the HWID used during activation and for (2) restricting use of the software if these requirements are not met (and the grace period has expired), which is included on the user's computer, is not reproduced at the registration authority.

24. The product activation user interface that is provided on the user's computer and offers options for activating over the internet or over the telephone is not reproduced at the registration authority.

25. If a licensee sells his computer to another party, and thereby transfers his license under Microsoft's software to another party, although the licensee has changed, Microsoft has no way of knowing that this has occurred, and there is no need to reactivate the software.

26. If a licensee upgrades his computer hardware to the point where the HWID goes "out of tolerance," then he will have to reactivate the software, even though the licensee remains unchanged.

27. The figure attached as Exhibit A to this declaration depicts the general operation of Microsoft's product activation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: September 21, 2006

Sunil Swami

Sunil Swami

# PRODUCT ACTIVATION OVERVIEW

