UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC U.S.A., INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Civil Action No. 03-CV-440 (WES)<br><br>**[REDACTED]** |

**MICROSOFT CORPORATION'S STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56(a)(4), defendant Microsoft Corporation ("Microsoft"), submits this statement of disputed facts material to Uniloc U.S.A., Inc. and Uniloc Singapore Private Ltd.'s ("Uniloc") motion for partial summary judgment on the issue of inequitable conduct and undisputed facts that Microsoft contends preclude partial summary judgment on this issue.

**DISPUTED FACTS**

Microsoft disputes the following facts listed in Uniloc's statement of undisputed facts material to its motion:

9. The Grundy patent was more material to the PTO's examination of the '216 patent application than the letter from Mr. Grundy to Mr. Richardson dated October 13, 1993.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and

because of the facts set forth in Microsoft's statement of material undisputed facts that preclude summary judgment ("MUF") ¶¶ 25-28, Microsoft disputes this allegation.

10. The letter from Mr. Grundy to Mr. Richardson dated October 13, 1993 was, at best, cumulative of the Grundy patent.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶ 26, Microsoft disputes this allegation.

11. Microsoft has not presented clear and convincing evidence that Uniloc intended to deceive the PTO into granting the '216 patent because of the letter from Mr. Grundy to Mr. Richardson dated October 13, 1993.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 25-29 and 31-34, and Microsoft's statement of material facts as to which there is a genuine issue precluding summary judgment ("MF") ¶ 6, Microsoft disputes this allegation.

16. The Grundy patent was more material to the PTO's examination of the '216 patent application than the letters from Mr. Coorey dated November 20,1994 and January 11, 1995.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶ 28, Microsoft disputes this allegation.

17. The letters from Mr. Coorey to the Australian Patent Office dated November 20, 1994 and January 11, 1995 were, at best, cumulative of the Grundy patent.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶ 28, Microsoft disputes this allegation.

18. Microsoft has not presented clear and convincing evidence that Uniloc intended to deceive the PTO into granting the '216 patent because of the letters from Mr. Coorey to the Australian Patent Office dated November 20,1994 and January 11, 1995.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 25-29 and 31-34 and MF ¶ 6, Microsoft disputes this allegation.

22. The patent examiner responsible for examining the '216 patent application was free to accept or reject the applicant's attorney's arguments regarding the Grundy patent.

Disputed. Richardson's focus on less relevant portions of the Grundy patent dealing with "registration" and "authorization" codes and failure to address those portions of the Grundy patent dealing with the highly relevant "user data cross-reference code," i.e., a checksum derived from the user's personal information that corresponds to the "licensee unique ID" of the '216 patent, misled the examiner into focusing on the less relevant portions of Grundy. (MF ¶¶ 3 & 7; MUF ¶¶ 29-30; Glitzenstein Decl., Ex. 20, Response 12/21/94). In order to overcome the examiner's rejection of his claims based on Grundy, Richardson repeatedly and unequivocally mischaracterized the Grundy patent, further misleading the patent examiner. (MF ¶¶ 5 and 7; MUF ¶¶ 31-34; (Glitzenstein Decl., Ex. 22, Response 6/30/95 at 6-7; Glitzenstein Decl., Ex. 16,

Grundy, 15:10-27; 17:64-18:34, 19:23-20:25; 12:26-38; 15:13-27; Ex. C to the September 20, 2006 Declaration of Dan S. Wallach in Support of Microsoft's Motion for Summary Judgment ("Wallach Decl."), Dkt. 161, at 3-10 & 19-22.)

23. Microsoft has not presented clear and convincing evidence that Uniloc intended to deceive the PTO into granting the '216 patent because of the argument made to the PTO by the applicant's attorney regarding the Grundy patent.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 31-34 and 47 and MF ¶ 5, Microsoft disputes this allegation.

30. The Grundy patent was more material to the PTO's examination of the '216 patent application than the German patent application number 4019652.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 37-39 and 44-45, Microsoft disputes this allegation.

31. The German patent application number 4019652 was, at best, cumulative of the Grundy patent.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 37-39 and 44-45, Microsoft disputes this allegation.

32. Microsoft has not presented clear and convincing evidence that Uniloc intended to deceive the PTO into granting the '216 patent because of the German patent application number 4019652.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 39-45 and 48, and MF ¶ 8, Microsoft disputes this allegation.

36. Neither Mr. Higgs nor Mr. Bell has claimed that they should have been named as inventors on the '216 patent.

Disputed. While Mr. Higgs and Mr. Bell have not pursued formal claims that they should be named as inventors on the '216 patent, both have claimed to have contributed to the conception of the invention of the '216 patent [redacted] (Glitzenstein Decl., Ex. 11, Higgs Tr. at 34-35; 49-50; 56-57.). [redacted] (Glitzenstein Decl., Ex. 13, Higgs Exhibit 6.) [redacted]. (Glitzenstein Decl., Ex. 9, Bell Tr. at 12-14.) [redacted] (*Id.* at 13.)

37. Microsoft has not presented clear and convincing evidence that either Mr. Higgs or Mr. Bell should have been named as inventors on the '216 patent.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the

reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 10-22 and 49-50, Microsoft disputes this allegation..

38. Microsoft has not presented clear and convincing evidence that Uniloc or its patent attorney believed, knew or should have known that either Mr. Higgs or Mr. Bell should have been named as inventors on the '216 patent.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 10, 12, 19-20, 22, and 49-50, Microsoft disputes this allegation..

39. Microsoft has not presented clear and convincing evidence that Uniloc intended to deceive the PTO into granting the '216 patent by naming Mr. Richardson as the sole inventor on the '216 patent.

Disputed. In violation of LR Cv 56(a)(2), Uniloc does not identify any evidence establishing this alleged fact. Uniloc's statement is attorney argument rather than fact. For the reasons set forth in Microsoft's opposition to Uniloc's motion for partial summary judgment, and because of the facts set forth in MUF ¶¶ 10-13, 15-23, and 49-50, and MF ¶ 2, Microsoft disputes this allegation..

## MATERIAL UNDISPUTED FACTS THAT PRECLUDE PARTIAL SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

6. Uniloc did not disclose the secret algorithm it used to generate a licensee unique ID in embodiments of its patent in the '216 patent. (Glitzenstein Decl., Ex. 1, '216 patent.)

[redacted]

[redacted]

[redacted]

10. A 1992 letter from Ric Richarson to Cary Dreelan stated the following:

[redacted]

(Glitzenstein Decl., Ex. 6, Letter to Dreelan (UNILOC 15870-15871).)

11. [redacted] (Glitzenstein Decl., Ex. 4, Dreelan Tr. at 26-27.)

12. [redacted] (Glitzenstein Decl., Ex. 9, Bell Tr. at 12-14.) [redacted] (*Id.* at 13.)

13. [redacted] (Glitzenstein Decl., Ex. 10, Richardson 7/20/05 Tr. at 241-246.)

14. The '216 patent discloses preferred embodiments in which a last modify date (for the software) is combined with unique user data (as typed into a start up screen) to produce a modification date number that can be hidden from the user and then used to unlock the software for full use. (Glitzenstein Decl., Ex. 1, '216 patent, 4:6-11.)

15. [redacted] (Glitzenstein Decl., Ex. 11, Higgs Tr. at 34.)

16. [redacted] (Glitzenstein Decl., Ex. 11, Higgs Tr. at 38-41; Glitzenstein Decl., Ex. 12, Higgs Exhibit 8.)

17. [redacted] (Glitzenstein Decl., Ex. 11, Higgs Tr. at 35.)

[redacted]

19. [redacted] (Glitzenstein Decl., Ex. 14, Richardson Notebook (UNILOC 11775).)

20. [redacted] (Glitzenstein Decl., Ex. 5, Richardson

3/31/05 Tr. at 207:23-219:23; Glitzenstein Decl., Ex. 14, Richardson Notebook (UNILOC 11778).)

21. [redacted] (Glitzenstein Decl., Ex. 11, Higgs Tr. at 55-59.)

22. [redacted] (Glitzenstein Decl., Ex. 11, Higgs Tr. at 56-57; see also Glitzenstein Decl., Ex. 15, Clubb Ex. 2 ([redacted]).)

23. Richardson never disclosed to the PTO the contributions made by Allan Bell and Peter Higgs to the conception of the invention of the '216 patent. ('216 patent file history.)

24. U.S. Patent No. 5,291,598 to Grundy ("the Grundy patent") was filed on April 7, 1992, and issued on March 1, 1994 and is therefore prior art to the '216 patent. (Glitzenstein Decl., Ex. 16.)

25. [redacted] (Glitzenstein Decl., Ex. 14, Richardson Notebook (UNILOC 11833); Glitzenstein Decl., Ex. 5, Richardson 3/31/05 Tr. at 220:24-222:6.)

26. [redacted] (Glitzenstein Decl., Ex. 17, Letter to Richardson (UNILOC 10739).)

27. [redacted] (Glitzenstein Decl., Ex. 18, Letter to Richardson and Uniloc (UNILOC 10561-10562).)

[redacted]

29. Richardson did not disclose the Grundy patent to the PTO until December 21, 1994. When submitting the reference to the PTO, Richardson included a preemptive discussion of the Grundy patent, pointing the PTO Examiner to less relevant portions of the Grundy patent dealing with "registration" and "authorization" codes, and never addressing those portions of the Grundy patent dealing with the highly relevant "user data cross-reference code," i.e., a checksum derived from the user's personal information that corresponds to the "licensee unique ID" of the '216 patent. (Glitzenstein Decl., Ex. 20, Response to PTO 12/21/94.)

30. On March 30, 1995, the Examiner rejected a majority of the pending claims of the '216 application based on the Grundy patent. The Examiner based the rejection on the "registration" and "authorization" codes Richardson had directed him to, rather than the "user data cross-reference code." (Glitzenstein Decl., Ex. 21, Office Action 3/30/95.)

31. In responding to the Examiner's March 30, 1995, rejection of the claims, Richardson argued that, unlike in his invention, Grundy lacked the same algorithm used locally and remotely to generate a unique ID. (Glitzenstein Decl., Ex. 22, Response 6/30/95 at 7.)

32. Grundy discloses a checksum – called a "user data checksum" – that is a unique ID which is generated from the same algorithm locally and remotely, compared for matching purposes at the local location, and used to confirm user details. (*See, e.g.*, Glitzenstein Decl., Ex. 16, Grundy, 15:10-27; 17:64-18:34, 19:23-20:25; Ex. C to the September 20, 2006 Declaration of Dan S. Wallach in Support of Microsoft's Motion for Summary Judgment ("Wallach Decl."), Dkt. 161, at 3-10 & 19-22.)

33. In responding to the Examiner's March 30 ,1995, rejection of the claims, Richardson also argued that Grundy required the use of remotely generated data to generate the unique ID. (Glitzenstein Decl., Ex. 22, Response 6/30/95 at 6-7.)

34. The Grundy patent discloses that the user data checksum is a unique ID that is generated entirely from local data, i.e., user data. (*See, e.g.*, Glitzenstein Decl., Ex. 16, Grundy, 12:26-38; 15:13-27; Ex. C to the Wallach Decl., Dkt. 161, at 6.)

35. An international search report performed in conjunction with Uniloc's European/PCT application that claimed priority from the same two Australian applications as the '216 application did, dated December 30, 1993, cited five references (Frezza, Wolfe, Joshi, Ogaki and Tau Systems) as category "A" prior art references (defining the general state of the art which is not considered to be of particular relevance). (Glitzenstein Decl., Ex. 24, International Search Report.)

36. On February 16, 1994, Richardson disclosed the international search report and the prior art cited therein to the PTO. (Glitzenstein Decl., Ex. 25, IDS 2/16/94.)

37. During the prosecution of the European/PCT counterpart application, the European examiner issued a supplemental European search report, dated October 27, 1995, designating a published German patent application DE 40 19 652 A1 (the "Kuhn reference") as being of the highest "X" category of relevance ("particularly relevant if taken alone") to Uniloc's claims 1, 8-14 and 30. (Glitzenstein Decl., Ex. 26, Supplemental European Search Report at UNILOC 987 – 989.)

38. The Kuhn reference was published on January 2, 1992 and is prior art to the '216 patent. (Glitzenstein Decl., Ex. 27, Kuhn reference and translation.)

39. On January 5, 1996, Josef Fiener, Uniloc's German patent attorney, sent Peter Maxwell, Uniloc's Australian patent attorney, the supplemental European search report, the Kuhn

reference, and a letter explaining the materiality of the Kuhn reference. Mr. Fiener wrote to Mr. Maxwell that the Kuhn reference anticipated claims 13 and 14 of Uniloc's European/PCT counterpart application. (Glitzenstein Decl., Ex. 26, Fiener Letter at UNILOC 984 - 986.)

40. Peter Maxwell was substantively involved in the prosecution of the '216 patent. (Glitzenstein Decl., Ex. 5, Richardson 3/31/05 Tr. at 20:5-20:24; Glitzenstein Decl., Ex. 7, Cox Tr. at 12-16.)

41. On January 17, 1996, Mr. Maxwell forwarded the information to Steve Cox who was also substantively involved in the prosecution of the '216 patent. (Glitzenstein Decl., Ex. 5, Richardson 3/31/05 Tr. at 197:18-200:4; Glitzenstein Decl., Ex. 7, Cox Tr. at 12-16.)

42. Mr. Maxwell's letter to Mr. Cox made no mention of Mr. Feiner's statements regarding claims 13 and 14 in the European/PCT counterpart application, and stated that Mr. Feiner had concluded that the Kuhn reference should not cause any real problems. (Glitzenstein Decl., Ex. 26, Maxwell Letter at UNILOC 983.)

43. Richardson never disclosed the supplemental European search report and the Kuhn reference to the PTO, despite the fact that the European search report issued on October 27, 1995, fourteen weeks before the issuance of the '216 patent on February 6, 1996. ('216 patent file history; Glitzenstein Decl., Ex. 26, Supplemental European Search Report at UNILOC 987 – 989; Glitzenstein Decl., Ex. 1, '216 patent.)

44. Subsequently in the European prosecution, the European examiner rejected a majority of the pending claims in the European/PCT counterpart application as lacking novelty and/or an inventive step over the Kuhn reference. (Glitzenstein Decl., Ex. 28, European Office Action.)

45. Uniloc acquiesced in this rejection, amending the claims as suggested by the European examiner to overcome the Kuhn reference. (Glitzenstein Decl., Ex. 29, Uniloc response.)

46. Uniloc has not provided any explanation of why the '216 patent discloses a "summer" that does not accomplish the intended purpose of the invention, instead of the "secret algorithm" that was actually used by Uniloc. (*See* Uniloc's Motion for Partial Summary Judgment.)

47. Uniloc has not provided any explanation of why Richardson made preemptive statements directing the Examiner to less relevant portions of the Grundy patent, misrepresented the Grundy patent, and withheld information that conflicted with his misrepresentation of the Grundy patent. (*See* Uniloc's Motion for Partial Summary Judgment.)

48. Uniloc has not identified any further analysis of the Kuhn reference that called into question Fiener's analysis or provided any other explanation why the Kuhn reference was not disclosed to the PTO. (*See* Uniloc's Motion for Partial Summary Judgment.)

[redacted]

[redacted]

## MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE PRECLUDING PARTIAL SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT

1. Richardson and his patent counsel intentionally withheld Uniloc's "secret algorithm" for generating a licensee unique ID from the PTO. This intent is implied by the facts set forth at MUF ¶¶ 1-2, 4, and 6-9.

2. Richardson and his patent counsel intentionally withheld information about the contributions of Mr. Bell and Mr. Higgs to the invention of the '216 patent from the PTO in order to deceive the PTO into granting the patent solely to Mr. Richardson. This intent is implied by the facts set forth in MUF ¶¶ 10-13, and 15-23.

3. By submitting the Grundy patent along with a preemptive discussion focusing on less relevant portions of the Grundy patent, and by misrepresenting the Grundy patent, Richardson left the Examiner with the impression that the Examiner did not need to conduct any further investigation of the Grundy patent, leading the Examiner to believe that the Grundy patent was not relevant and that Richardson had pointed out the most relevant portions of the Grundy patent. This fact is implied by the facts set forth in MUF ¶¶ 29-34.

4. Richardson intentionally misled Examiner into focusing on the less relevant portions of the Grundy patent. This intent is implied by the facts set forth in MUF ¶¶ 25-29 and 47.

5. Richardson intentionally mischaracterized the Grundy patent in responding to the Examiner's March 30, 1995 rejection. This intent is implied by the facts set forth in MUF ¶¶ 31-34 and 47.

6. Richardson intentionally withheld information provided to Richardson by Mr. Grundy and his attorneys regarding the materiality of the Grundy reference from the PTO. This intent is implied by the facts set forth in MUF ¶¶ 25-29 and 31-34.

7. Richardson intentionally withheld the Kuhn reference from the PTO in order to avoid negatively impacting the issuance of the '216 patent. This intent is implied by the facts set forth in MUF ¶¶ 39-45 and 48.

Dated: October 16, 2006

By: /s/ Joseph V. Cavanagh, Jr.

Joseph V. Cavanagh, Jr. #1139
**BLISH & CAVANAGH**
Commerce Center
30 Exchange Terrace
Providence, Rhode Island 02903
(401) 831-8900 (Telephone)
(401) 751-7542 (Facsimile)

Frank E. Scherkenbach
Kurt L. Glitzenstein
Laura R. Braden
**FISH & RICHARDSON P.C.**
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Isabella Fu, Esq.
**MICROSOFT CORPORATION**
One Microsoft Way
Redmond, WA 98052-6399
Telephone: (415) 882-8080
Facsimile: (415) 936-7329

Attorneys for Defendant
MICROSOFT CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2006, I caused the foregoing to be filed with the Court's CM/ECF system for service on all counsel of record.

/s/ Joseph V. Cavanagh, Jr.