REDACTED

# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC USA, INC. and<br><br>UNILOC SINGAPORE PRIVATE LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | ***REDACTED***<br><br>Civ. A. No. 03-CV-440 (WES) |

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECUSAL

Sheri L. Pizzi (RI Bar #5720)
Taylor Duane Barton & Gilman, LLP
10 Dorrance Street; Suite 700
Providence, RI 02903
Telephone: (401) 273-7171
Facsimile: (401) 273-2904

**OF COUNSEL:**

Paul J. Hayes, Esq.
Dean G. Bostock, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Plaintiffs, Uniloc USA, Inc. and Uniloc Singapore Private Limited (together, "Uniloc"), respectfully submit this Reply in Support of their Motion for Recusal. For the reasons set forth below, Uniloc requests that the motion be granted.[1]

## I. INTRODUCTION

At the hearing on May 2, 2007, Judge Smith directed that Uniloc either "accept on the record the fact that I'm going to continue to work on this case, and I'm going to do so with the assistance of Mr. Eddon, this intern, and you're going to place on the record that you have absolutely no objection to me doing that" or, in the alternative, file a motion to recuse Judge Smith. Ex. A, p. 8, 12.[2] Given this choice, and Microsoft does not dispute that this was the choice given to Uniloc by the Court, Uniloc filed the motion for recusal.

In its opposition, defendant Microsoft Corporation ("Microsoft") now proposes that the Court do exactly what the Court told Uniloc could not be done, i.e. recuse Mr. Eddon from the case. *See*, Microsoft opp., pp. 4, 5. It would, Uniloc submits, appear manifestly unjust to allow Microsoft to argue for a position that the Court has already told Uniloc is unavailable to the parties.

On page 1 of its opposition, Microsoft asserts that Mr. Eddon's connections "are *not* imputed to the Court, and so do not in any way warrant the sweeping remedy that Uniloc now requests" (emphasis by Microsoft). This statement, of course, ignores the Court's order to treat Judge Smith and Mr. Eddon as one for present purposes. As set forth below, Mr. Eddon has received, and may still be receiving, [redacted] in royalties from Microsoft. If Judge

---

[1] Microsoft's assumption, expressed in the first paragraph of its Introduction, that recusal will be tantamount to a "waste" of the Court's efforts to date, is presumptuous at best. If the present motion is granted, the successor Judge will enjoy the fruits of Judge Smith's prior labors in this case and will not need to start the case over anew.

[2] Exhibits A-S were filed with Uniloc's opening brief.

Smith and Mr. Eddon are treated as one, in accordance with the Court's instruction, it is self-apparent that these payments, when so imputed to Judge Smith, necessitate recusal.

## II. ARGUMENT

The exhibits filed with Microsoft's opposition brief further underscore the need for recusal due to objective doubts about Mr. Eddon's impartiality. The exhibits confirm that Mr. Eddon has entered into numerous contractual arrangements with Microsoft's press division, [redacted] pursuant to the agreements, and divides the royalties derived from the sale of the books with Microsoft Press. For example, in just one of the publishing agreements, Mr. Eddon received [redacted]. Microsoft opp., Ex. 2, pp 3-4. Thus, for this one publication alone, Mr. Eddon would receive approximately [redacted] sales of this one book.[3] Microsoft absurdly characterizes these directs payments of [redacted] by Microsoft to Mr. Eddon as "tenuous connections". Microsoft opp., p. 6. On the contrary, these ongoing contractual publishing relationships alone warrant recusal.

Microsoft does not dispute any of the factual assertions made by Uniloc regarding the extensive contacts over the years between Mr. Eddon and Microsoft/Microsoft Press. Instead, Microsoft attempts to trivialize these contacts. *See*, Microsoft opp., p. 2 ("Microsoft Press paid Mr. Eddon modest advances"); p. 2 n. 2 ("one of the contracts concerns a book that was never published"), pp. 6-7 (Mr. Eddon was paid "a nominal fee"), p. 7 (contracts are "stale" and "old"). However, Uniloc has established, and Microsoft has not denied, the following:

---

[3] Microsoft has not provided the amount of actual royalties paid to Mr. Eddon. Neither does Microsoft disclose whether or not royalties are still being paid. Instead, Microsoft coyly refers to ongoing royalties "if any". Microsoft opp., p. 6.

1. Numerous publishing contracts between Mr. Eddon and Microsoft Press and books published thereunder generating [redacted] payable by Microsoft Press to Mr. Eddon (*see*, Uniloc Exs. G-J, Microsoft Exs. 1-6);

2. Assignments of copyright from Mr. Eddon to Microsoft Press (*see*, Ex. K);

3. Joint copyright ownership between Mr. Eddon and Microsoft Press (*see*, Ex. L);[4]

4. Via licensing agreements, Mr. Eddon has entrusted Microsoft to protect his copyrights in the CDs sold with his books (*see*, Exs. M-P);

5. Direct or indirect funding of Mr. Eddon by Microsoft (*see*, Ex. B, p.1), and

6. Mr. Eddon's numerous publications through *Microsoft Systems Journal* and MSDN expressing admiration for Microsoft and its technology (*see*, Exs. R, S) for which he receives payment from Microsoft (*see*, Microsoft opp., Ex. 6).

Notwithstanding this unchallenged evidence, Microsoft argues (incredibly) that "Uniloc's motion present *no factual basis* upon which an objective observer could reasonably doubt Mr. Eddon's impartiality." Microsoft opp., p. 6 (emphasis added). Notably, however, *none* of the cases Microsoft relies upon involved such numerous, mutual, contractual and financial relationships as those between Mr. Eddon and Microsoft and Microsoft Press.[5] Likewise, none of the cases cited by Microsoft involved direct payments of [redacted] from one of the parties by imputation to the judge or to a law clerk as is the case here. As a result, Microsoft's argument and characterization of the relationships should be rejected. *Liteky v. United States*, 510 U.S. 540, 548

---

[4] Microsoft does not dispute the argument found on page 7 of Uniloc's opening brief that this joint copyright ownership renders Mr. Eddon and Microsoft tenants in common with respect to the copyrights. *See*, *e.g.*, *Berge v. Bd. of Trustees, Univ. of Alabama*, 104 F.3d 1453, 1461 (4th Cir. 1997).

[5] Microsoft does not dispute the argument found on page 8 of Uniloc's opening brief that Mr. Eddon's subjective belief of his own ability to be impartial is not relevant. *See*, *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997).

(1994) ("[q]uite simply and quite universally, recusal [is] required whenever 'impartiality might reasonably be questioned'") (quoting § 455(a)).[6]

On page 9 of its opposition, Microsoft argues that, as with the two law clerks in *In re Allied-Signal*, Mr. Eddon is one of the few persons having specialized expertise who should, therefore, be allowed to work on this case. Microsoft misconstrues *Allied-Signal* in several respects. For a start, the First Circuit noted that *Allied-Signal* "[wa]s not an ordinary case. *In re Allied-Signal, Inc.*, 891 F.2d 967, 971 (1st Cir. 1989). A motion to recuse was filed mid-trial because two law clerks were related to lawyers in firms involved or interested in the case. *Id.* at 969. Contrary to Microsoft's argument, the Court of Appeals first noted that, ordinarily, such relationships would present an appearance of undue influence. *See*, *id.* at 970.

In addition, unlike this case, *Allied-Signal* involved "hundreds of lawyers [and] thousands of parties" (*id.* at 971), 2,200 depositions had been taken and there were 12,000 docket entries. *Id.* at 969. Thus, given the relatively small size of the Puerto Rico bar, and the high percentage of local lawyers involved in the case, the Court found it was not unlikely that a clerk would be related to an attorney in one of the local firms. *Id.* at 971 ("[t]he risk that a law clerk, or some other staff member, will have a brother or sister or some other family member involved in this case is a likely concomitant of trying such a large case in such a small district"). These facts do not exist in the present case.

The First Circuit also noted that, unlike in this case, the moving party had been dilatory in filing the motion to recuse. *Id.* at 972. More importantly, however, the First Circuit stated that it

---

[6] It is apparent from Microsoft's opposition that it is *sub silentio* placing the burden on Uniloc to prove actual, rather than the appearance of, bias. This would be improper. *See*, *United States v. Chantal*, 902 F.2d 1018, 1023 (1st Cir. 1990), *overruled on other grounds by Liteky*, 510 U.S. 540 (1994) ("in the First Circuit, § 455(a) is an independent basis for mandatory disqualification which requires no determination of bias in fact").

would not then insist that the trial judge disqualify his clerks because the appeals court was "uncertain about the extent to which these particular clerks are needed at this stage of the proceedings, and [the First Circuit] would not risk disruption without such knowledge." *Id.* at 973. The Court did expressly state that the district judge "may wish to reconsider the continued use of clerks with a 'sibling relationship'". *Id.* As a result, when read in context, *Allied-Signal* does not provide support for allowing Mr. Eddon to participate in this case. Technical expertise does not trump the requirement of an appearance of impartiality.

By instructing Uniloc to treat Mr. Eddon and the Court as one, the relationships between Mr. Eddon and Microsoft described above are necessarily imputed to Judge Smith. Microsoft has cited no case, and Uniloc is aware of none, wherein a judge has been permitted to preside over a case in which the judge is by imputation or in fact receiving ongoing royalty payments and other stipends from one of the parties.[7] Thus, Microsoft's attempts to erode Uniloc's right to the appearance of impartiality should be rejected.

## III. CONCLUSION

For the reasons set forth above, Uniloc requests that this motion be granted.

---

[7] Although unpaid, Mr. Eddon would nevertheless appear to be subject to the obligations set forth in the Code of Conduct for Judicial Employees, including Canon 2 (avoidance of appearance of impropriety) and Canon 3 (performance of duties in fair and nondiscriminatory manner and avoidance of conflicts of interest).

Dated: June 1, 2007

**UNILOC USA, INC. and**
**UNILOC SINGAPORE PRIVATE LIMITED**

By: /s/ Sheri L. Pizzi

Sheri L. Pizzi (RI Bar #5720)
Taylor Duane Barton & Gilman, LLP
10 Dorrance Street; Suite 700
Providence, RI 02903
Telephone: (401) 273-7171
Facsimile: (401) 273-2904

Dated: June 1, 2007

**OF COUNSEL:**

By: /s/ Dean G. Bostock

Dean G. Bostock, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on June 1, 2007.

/s/ Dean G. Bostock