# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNILOC USA, INC. and<br><br>UNILOC SINGAPORE PRIVATE LIMITED<br><br>　　　　　Plaintiffs,<br>vs.<br><br>MICROSOFT CORPORATION,<br><br>　　　　　Defendant. | Civ. A. No. 03-CV-440 (WES)<br><br>**REDACTED** |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS, BRIAN W. NAPPER

Plaintiffs, Uniloc USA, Inc. and Uniloc Singapore Private Limited (together "Uniloc"), respectfully submit this memorandum of law in support of their motion to preclude the testimony of Brian W. Napper, the proposed expert witness for defendant Microsoft Corporation on the issue of damages. The testimony fails to meet the reliability standards of Fed. R. Evid. 702 as articulated in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and is instead the product of unfounded speculation. Accordingly, Uniloc requests that this motion be granted.

## I.   BACKGROUND

Uniloc alleges that Microsoft's anti-piracy technology known as Product Activation infringes Uniloc's U.S. patent number 5,490,216 ("the '216 patent"). Retail versions of Microsoft's popular Windows and Office software products use Product Activation protection to prevent casual copying. During the period of its infringement (October 2003 to March 2009),

-1-

27407-001 4524780

Microsoft will have sold ███████ worth of the accused Windows, Office and other products.

For its damages in this case, Uniloc requests that it be awarded a reasonable royalty pursuant to 35 U.S.C. § 284. As the accused technology in this case is Microsoft's Product Activation procedure, Uniloc has based its reasonable royalty calculation upon a running royalty, which takes the number of infringing activations of Microsoft's retail Windows and Office products and multiplies it by a royalty rate determined in accordance with the *Georgia-Pacific* case factors. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971). Thus, as the number of infringing activations of the accused products increases, so does the dollar amount of the reasonable royalty calculation.

Uniloc's calculated royalty damages in this case amounts to ███████████████████████████████████████████████████████████████████ This methodology of basing the royalty upon the number of successful activations is consistent with the purpose of the patent damages statute which is expressly compensatory in nature:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty *for the use made of the invention by the infringer*, together with interest and costs as fixed by the court.

35 U.S.C. § 284 (emphasis added).

In contrast, Microsoft's expert (Mr. Napper) opines that Microsoft would not pay more than ███████████████ for its infringement of the '216 patent. *See* Ex. A, p. 3. According to Mr. Napper, damages would not exceed ███████ irrespective of the number of infringing activations that have taken place, i.e.

-2-

27407-001 4524780

irrespective of whether ▆▆▆▆▆▆▆▆▆▆ activations have occurred. Thus, Mr. Napper's damages theory is contrary to the patent statute because it is not compensatorily based on the extent of Microsoft's infringement of the '216 patent. As a result, and for the reasons stated below, Mr. Napper's testimony should be precluded under Fed. R. Evid. 702 as construed by the *Daubert* and *Kumho Tire* cases.

## II.  LEGAL STANDARD

Fed. R. Evid. 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) require the district court to act as a "gate-keeper" to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the fact in issue." *Daubert*, 509 U.S. at 592-93. Those factors that may assist the district court in making this determination include: whether the theory/technique can be and has been tested; whether the theory/technique has been subject to peer review and publication; the known or potential rate of error; and the level of acceptance within the relevant scientific community. *Id.* at 593-94.

"Although the approach is flexible by its nature (after all, expert testimony and the peculiar facts of each case so demand), an overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony." *Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.*, 295 F. 3d 68, 81 (1st Cir. 2002) (quoting *Daubert*, 509 U.S. at 595). In *Kumho Tire*, the

Supreme Court held that the gate-keeping function applies to technical and other specialized knowledge in addition to scientific testimony. 526 U.S. at 441. The Court stressed that a district court must have "considerable leeway" in both "how to determine reliability" and "its ultimate conclusion.". *Id.* at 152-53.

### III. ARGUMENT

Mr. Napper's conclusion regarding a reasonable royalty is as follows:

[REDACTED]

Ex. A, p. 3.

Mr. Napper's opinion is contrary to law, factually unsupported, and thus should be precluded.

#### A. MR. NAPPER'S THEORY IS CONTRARY TO THE PATENT STATUTE

Section 284 of the patent statute states that a reasonable royalty is the minimum amount of damages that may be awarded in a patent case:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty *for the use made of the invention by the infringer*, together with interest and costs as fixed by the court.

35 U.S.C. § 284 (emphasis added).

As Mr. Napper admitted at his deposition in this case, this damages provision of the patent statute is compensatory in nature. *See* Ex. B, p. 8, line 20 - p. 9, line 2. Thus, as common sense would suggest, the amount of damages increases as the number of infringing acts by the defendant increase.

Mr. Napper's theory of damages in this case is purportedly based upon a reasonable royalty. However, Mr. Napper's theory is that a reasonable royalty in this case would be a [REDACTED]  irrespective of the amount of infringing acts

committed by Microsoft. In other words, according to Mr. Napper, the reasonable royalty would be a fixed amount of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ infringing activations occurred during the period of infringement in this case. As testified by Mr. Napper:



Ex. B, p. 47, lines 11-21. Thus, Mr. Napper's methodology is not compensatory and, therefore, is contrary to the patent damages statute set forth above.

No Federal Circuit case has endorsed the lump-sum theory espoused by Mr. Napper in this case and Mr. Napper cites to no such case. The number of infringing activations and resulting value to Microsoft are known in this case. Thus, a running royalty based upon the number of activations can be calculated *"for the use made of the invention by the infringer"* as required by the patent statute set forth above. Mr. Napper's lump-sum theory is wholly unrelated to the number of activations and fails to take into account the extent of Microsoft's use of the invention. Accordingly, Mr. Napper should be precluded from testifying at trial.

**B.    MR. NAPPER PICKED A NUMBER OUT OF THIN AIR AND
ATTEMPTS TO JUSTIFY THE NUMBER UNDER *GEORGIA-PACIFIC***

As Mr. Napper agrees (Ex. A, p. 7), for the purpose of calculating a reasonable royalty in a patent case, it is mandatory that an expert presume that the accused products infringe. *See, e.g., Mobil Oil. Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1352-53 (D. Del. 1995). Infringement occurs each time the accused software is made, used, sold, or offered for sale. *See*

35 U.S.C. § 271(a). Thus, each activation is a separate act of infringement. In his expert report, instead of mathematically calculating a royalty based upon the extent of Microsoft's infringement, Mr. Napper picks the lump-sum amount of ▮▮▮▮ out of thin air.

There is no royalty base in Mr. Napper's report upon which the royalty is calculated. There is no calculation done by Mr. Napper to arrive at the ▮▮▮▮. There is no consideration given to the extent of infringement. *See* Ex. B, p. 47, lines 11-21. There is no quantification by Mr. Napper of the value Microsoft received as a result of its infringing use of the patented software. Ex. B, p. 50, lines 3-23. There is no consideration by Mr. Napper of the billions in revenue or the profits derived from the sale of the infringing products. Ex. B, p. 90, line 4 - p. 91, line 21. Also, after conceding that profit is obviously a consideration in determining a reasonable royalty (Ex. B, p. 93, line 23 - p. 94, line 6), Mr. Napper fails to consider the extremely high net-profit margin associated with the accused products ▮▮ Ex. B, p. 91, line 9 - p. 92, line 10.

Instead, Mr. Napper attempts to support his ▮▮▮▮ by back-filling with the *Georgia-Pacific* factors. *See* Ex. B, pp. 48-49. This is precisely the type of analysis that led this Court to preclude the testimony of plaintiff's damages expert in the *Bowling v. Hasbro* case. As this Court stated in *Hasbro*, the expert's "report and testimony reveal that no rigorous analysis was performed [there]; rather the witness engaged in a superficial and result oriented application of the *Georgia-Pacific* methodology." *See* Ex. D, p. 9. As in *Hasbro*, Mr. Napper's analysis "lacks sufficient reference to facts, data, or any relevant information at all." *Id.* at 9-10. More particularly, as in *Hasbro*, Mr. Napper fails to analyze relevant facts, data, or information. Mr. Napper fails to analyze the price, profitability, or value of the accused products, does not

27407-001 4524780

provide any royalty base or rate, and totally ignores the extent of the infringement. He simply picked a low number favorable to his client, Microsoft.

As in *Hasbro*, "[a]nalysis of [Napper's] treatment of a few of the fifteen *Georgia-Pacific* factors reveals the problem. The third factor requires analysis of the 'nature and scope' of the license, and how that might affect the royalty rate." Ex. D, p. 11. Mr. Napper's damages theory does not even include a royalty rate and, therefore, does not and cannot attempt to justify any such rate under *Georgia-Pacific*.

### C.  MR. NAPPER HAS AN OBVIOUS BIAS IN FAVOR OF MICROSOFT

As in *Hasbro*, "[i]n addition to his failure to tie his opinions to facts or data, [Napper's] report is marred by an obvious bias in favor of [plaintiff]." Ex. D, p. 13. The Court based this finding in *Hasbro* on the fact that the expert in that case "concluded that twelve of the fifteen factors would favor an increased royalty to [defendant], while the remaining three would be neutral." *Id.* at 13. In other words, the plaintiff's expert in *Hasbro* found that none of the *Georgia-Pacific* factors favored the defendant. Similarly, in this case, Mr. Napper concludes that none of the *Georgia-Pacific* factors favors Uniloc. Instead, he finds that they are all favorable to Microsoft or neutral. Ex. A, pp. 7-32. Thus, Mr. Napper has "an obvious bias" in favor of Microsoft. In contrast, Uniloc's damages expert (Mr. Gemini) states in his expert report that several of the *Georgia-Pacific* factors favor Microsoft in this case:

> The basis for my opinion is described above and includes consideration of certain factors that would favor Microsoft which include non-exclusivity, the fact that Uniloc and Microsoft do not compete, that Uniloc generally has a policy of licensing, and that Microsoft incurs annual costs to maintain the M[icrosoft] P[roduct] A[ctivation] process.

*See* Ex. C, p. 13 (Factor 15).

Mr. Napper's obvious bias disqualifies him from testifying as a purported independent expert in this case.

## IV. CONCLUSION

For the reasons set forth above, Uniloc requests that this motion be granted.

Respectfully submitted,

**UNILOC USA, INC.**
**UNILOC SINGAPORE PRIVATE LIMITED**

Dated: January 26, 2009            By: _____
Sheri L. Pizzi (R.I. Bar No. 5720)
**TAYLOR DUANE BARTON**
**& GILMAN, LLP**
10 Dorrance Street, Suite 700
Providence, Rhode Island 02903
(401) 273-7171 (Telephone)
(401) 273-2904 (Facsimile)

OF COUNSEL:

Paul J. Hayes, Esq.
Dean G. Bostock, Esq.
**MINTZ, LEVIN, COHN, FERRIS,**
   **GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
(617) 542-6000 (Telephone)
(617) 542-2241 (Facsimile)

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and accurate copy of the foregoing document was served on counsel for Microsoft Corporation via hand-delivery to Joseph V. Cavanagh, Jr., Esq. of Blish & Cavanagh, located at Commerce Center, 30 Exchange Terrace, in Providence, Rhode Island, 02903, and via first class mail, postage prepaid to Frank E. Scherkenbach, Esq. of Fish & Richardson, P.C., located at 225 Franklin Street in Boston, Massachusetts 02110 on January 26, 2009.

_____
Sheri L. Pizzi

27407-001 4524780