# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

UNILOC USA, INC. and

UNILOC SINGAPORE PRIVATE LIMITED,

                    Plaintiffs,

          vs.                                        Civ. A. No. 03-CV-440 (WES)

MICROSOFT CORPORATION,

                    Defendant.

## PLAINTIFFS' PRETRIAL MEMORANDUM

Sheri L. Pizzi (RI Bar #5720)
Taylor Duane Barton & Gilman, LLP
10 Dorrance Street; Suite 700
Providence, RI  02903
Telephone:      (401) 273-7171
Facsimile:      (401) 273-2904

**OF COUNSEL:**

Paul J. Hayes, Esq.
Dean G. Bostock, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
One Financial Center
Boston, MA  02111
Telephone:      (617) 542-6000
Facsimile:      (617) 542-2241

## TABLE OF CONTENTS

I.      EXPECTED PROOF IN SUPPORT OF CLAIM ................................................. 1

    A.    Infringement.................................................................................................1

    B.    Willful Infringement ...................................................................................4

    C.    Damages.......................................................................................................4

    D.    Attorneys' Fees, Costs, Expenses ...............................................................6

    E.    Injunctive Relief..........................................................................................6

II.     MEMORANDUM OF SUPPORTING LAW ................................................... 6

    A.    Infringement.................................................................................................6

        1.    Direct Infringement..........................................................................6

        2.    Indirect Infringement ...................................................................... 7

    B.    Willful Infringement ...................................................................................8

    C.    Damages.......................................................................................................8

    D.    Validity .....................................................................................................12

        1.    Anticipation................................................................................... 12

        2.    Obviousness .................................................................................. 13

    E.    Inequitable Conduct ..................................................................................14

III.    EXHIBIT LIST ................................................................................................ 17

IV.     MOTIONS IN LIMINE ................................................................................... 17

V.      JURY INSTRUCTIONS .................................................................................. 17

VI.     JURY VOIR DIRE ........................................................................................... 17

VII.    LENGTH OF TRIAL ....................................................................................... 17

VIII.   ADDITIONAL MATTERS .............................................................................. 18

27407-001 4067082

# TABLE OF AUTHORITIES

## CASES

*Acromed Corp. v. Sofamor Danek Group, Inc.,*
253 F.3d 1371 (Fed. Cir. 2001)........................................................................16, 17

*Akzo N.V. v. U.S. Intern. Trade Com'n,*
808 F.2d 1471 (Fed. Cir. 1986)................................................................................16

*Al-Site Corp. v. VSI Intern., Inc.,*
174 F.3d 1308 (Fed. Cir. 1999)..........................................................................12, 13

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,*
725 F.2d 1350 (Fed. Cir.), *cert. denied,* 469 U.S. 821 (1984)...............................16

*Ashland Oil, Inc. v. Delta Resins & Refacs., Inc.,*
776 F.2d 281 (Fed. Cir. 1985).................................................................................14

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,*
586 F. Supp.2d 1083 (D. Az. 2008).........................................................................8

*Baxter Healthcare Corp. v. Spectramed, Inc.,*
49 F.3d 1575 (Fed. Cir. 1995), *cert. denied,* 516 U.S. 906 (1995).........................18

*Bd. of Trustees of Fla. State Univ. v. Am. Bioscience, Inc.,*
333 F.3d 1330 (Fed. Cir. 2003)................................................................................17

*Brooktree Corp. v. Advanced Micro Devices, Inc.,*
977 F.2d 1555 (Fed. Cir. 1992)..........................................................................12, 16

*Burlington Indus., Inc. v. Dayco Corp.,*
849 F.2d 1418 (Fed. Cir. 1988)................................................................................15

*Continental Can Co. USA, Inc. v. Monsanto Co.,*
948 F.2d 1264 (Fed. Cir. 1991)................................................................................14

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.,*
424 F.3d 1293 (Fed. Cir. 2005)..................................................................................7

*DSU Medical Corp. v. JMS Co., Ltd.,*
471 F.3d 1293 (Fed. Cir. 2006)...........................................................................7, 10

*Dayco Prods., Inc. v. Total Containment, Inc.,*
    329 F.3d 1358 (Fed. Cir. 2003)................................................................15

*Eolas Technologies Inc. v. Microsoft Corp.,*
    2004 WL 170334 (N.D. Ill. 2004), *vacated in part on other grounds by Eolas Techs.,*
    *Inc. v. Microsoft Corp.,* 399 F.3d 1325 (Fed. Cir. 2005)........................................11

*Fonar Corp. v. General Electric Co.,*
    107 F.3d 1543 (Fed. Cir.), *cert. denied,* 522 U.S. 908 (1997)..................................10

*Fromson v. Western Litho Plate and Supply Co.,*
    853 F.2d 1568 (Fed. Cir. 1988)...............................................................10

*General Electric Music Corp. v. Samick Music Corp.,*
    19 F.3d 1405 (Fed. Cir. 1994)................................................................15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970)...........................................................9

*Hanson v. Alpine Valley Ski Area, Inc.,*
    718 F.2d 1075 (Fed. Cir. 1983)...............................................................10

*Hartness Int'l, Inc. v. Simplimatic Eng. Co.,*
    819 F.2d 1100 (Fed. Cir. 1987)...............................................................12

*In re Hayes Microcomputer Products Patent Litigation,*
    982 F.2d 1527 (Fed. Cir. 1992)..............................................................7, 8

*Hebert v. Lisle Corp.,*
    99 F.3d 1109 (Fed. Cir. 1996)................................................................15

*Hess v. Advanced Cardiovacular Sys., Inc.,*
    106 F.3d 976 (Fed. Cir. 1997)..............................................................16, 17

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.,*
    62 F.3d 1512 (Fed. Cir. 1995)................................................................7

*KSR Int'l Co. v. Teleflex, Inc.,*
    127 S. Ct. 1727 (2007).....................................................................13, 14

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,*
    863 F.2d 867 (Fed. Cir. 1988), *cert. denied,* 490 U.S. 1067 (1989).........................14

*Kraft Foods, Inc. v. Int'l Trading Co.,*
    203 F.3d 1362 (Fed. Cir. 2000)...............................................................7

-iii-

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983)................................................................12

*Life Techs., Inc. v. Clontech Labs., Inc.*,
    224 F.3d 1320 (Fed. Cir. 2000)..............................................................16

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
    449 F.3d 1209 (Fed. Cir. 2006)................................................................8

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)..........................6

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339 (Fed. Cir. 2001).........................................................13, 14

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001)..............................................................15

*Micro Chemical, Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003)................................................................9

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995)................................................................15

*Monsanto Co. v. Ralph*,
    382 F.3d 1374 (Fed. Cir. 2004)..............................................................11

*Optical Discovery Corp. v. Del Mar Avionics*,
    208 F.3d 1324 (Fed. Cir. 2000)................................................................7

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)..............................................................17

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984)................................................................13

*Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*,
    225 F.3d 1315 (Fed. Cir. 2000)..............................................................15

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995)................................................................9

*Rockwell Intern. Corp. v. United States*,
    147 F.3d 1358 (Fed. Cir. 1998).........................................................12, 13

*Rosco, Inc. v. Mirror Lite Co.,*
    304 F.3d 1373 (Fed. Cir. 2002).........................................................................12

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997)...........................................................................7

*Scripps Clinic Research Found. v. Genentech, Inc.,*
    927 F.2d 1565 (Fed. Cir. 1991).........................................................................15

*In re Seagate,*
    497 F.3d 1360 (Fed. Cir. 2007), *cert. denied,* 128 S. Ct. 1445 (2008).......................8

*Sensonics, Inc. v. Aerosonic Corp.,*
    81 F.3d 1566 (Fed. Cir. 1996)...........................................................................12

*Smithkline Diagnostics, Inc. v. Helena Labs. Corp.,*
    926 F.2d 1161 (Fed. Cir. 1991).........................................................................11

*State Indus., Inc. v. Mor-Flo Indus., Inc.,*
    883 F.2d 1573 (Fed. Cir. 1989), *cert. denied,* 493 U.S. 1022 (1990)...................9, 11

*Stratoflex, Inc. v. Aeroquip Corp.,*
    713 F.2d 1530 (Fed. Cir. 1983).........................................................................14

*TWM Mfg. Co., Inc. v. Dura Corp.,*
    789 F.2d 895 (Fed. Cir.), *cert. denied,* 479 U.S. 852 (1986)................................11

*Trovan Ltd. v. Sokymat SA Irori,*
    299 F.3d 1292 (Fed. Cir. 2002).........................................................................17

*Unisplay, S.A. v. Am. Electronic Sign Co., Inc.,*
    69 F.3d 512 (Fed. Cir. 1995).............................................................................9

*United States v. Mendoza,*
    464 U.S. 154 (1984)........................................................................................12

27407-001 4067082

## **STATUTES**

28 U.S.C. § 1920...................................................................................................6

35 U.S.C. § 103....................................................................................................13

35 U.S.C. §§ 271(b).............................................................................................2, 7

35 U.S.C. § 282................................................................................................12, 16

35 U.S.C. § 283.....................................................................................................6

35 U.S.C. § 284................................................................................................4, 6, 9

35 U.S.C. § 285.....................................................................................................6

27407-001 4067082

Plaintiffs, Uniloc USA, Inc. and Uniloc Singapore Private Limited (together "Uniloc"), respectfully submit this Pretrial Memorandum pursuant to the Amended Pretrial Order herein.

## I.   **EXPECTED PROOF IN SUPPORT OF CLAIM**

### A.   **Infringement**

Uniloc is the owner of U.S. Patent No. 5,490,216 ("the '216 patent") which is entitled "System for Software Registration" and was granted by the U.S. Patent & Trademark Office ("PTO") on February 6, 1996.  The inventor named on the '216 patent is Mr. Ric Richardson who made his invention in Australia in around 1991/92.  Mr. Richardson assigned his inventions and ultimately the '216 patent to Uniloc Singapore Private Limited which, in turn, has granted Uniloc USA, Inc. the exclusive right to use the patented inventions in the United States.

The inventions disclosed in the '216 patent are directed to reducing the unlicensed use of software.  More particularly, the invention reduces a form of software piracy known as "casual copying."  Casual copying occurs when the purchaser of a piece of software attempts to use the software on more computers than is permitted by the software license.  One aspect of the '216 patent relevant to this case is using information both from the software vendor and about the user's computer to link the individual piece of software to the user's computer, a technique now known as "machine locking.".

In 1993, Uniloc's inventor, Mr. Richardson, provided a piece of software protected with Uniloc's patented security feature to the Microsoft Institute in Australia for defendant Microsoft to evaluate.  As a condition of that arrangement, Microsoft signed an agreement that it would not attempt to reverse-engineer or decompile Uniloc's software code.  Nonetheless, in early 1994, Uniloc learned that Microsoft had indeed reverse-engineered Uniloc's software in violation of the signed agreement not to.

27407-001 4067082

Thereafter, in 1997 and 1998, Microsoft began implementing pilot programs in Brazil and Hungary using machine locking, then known as "Forced Registration", to protect its products against casual copying. Theretofore, Microsoft had never used machine locking in any of its products. In 2000/2001, Microsoft began using machine locking, renamed "Product Activation" in the U.S. and elsewhere in the world. Uniloc alleges that Microsoft products that require the user to activate using Product Activation, including Windows and Office products, infringe claims 12 and 19 of the '216 patent.

Uniloc alleges that the accused products directly infringe the '216 patent literally and under the doctrine of equivalents because the accused products incorporate each element of the asserted claims or an equivalent thereof. The claim charts of Uniloc's expert filed with Uniloc's summary judgment opposition brief demonstrate this element-by-element infringement. Uniloc also alleges that the accused products indirectly infringe the '216 patent because Microsoft: (1) induces its customers to infringe by requiring the customers to use the Product Activation feature, and (2) contributes to its customers infringement by requiring the customers to use the Product Activation feature which has no substantial non-infringing use. *See* 35 U.S.C. §§ 271(b), (c).

Uniloc expects to call the following witnesses in support of its infringement claim:

Mr. David Klausner

Mr. Klausner is Uniloc's technical expert witness who previously presented Uniloc's Technology Tutorial in this case. Mr. Klausner will testify regarding the patent, casual unlicensed use of software, and the accused technologies and products. Mr. Klausner will demonstrate that the accused products incorporate each and every element of the asserted claims or a substantial equivalent of such elements. Mr. Klausner will also demonstrate that Microsoft

-2-

indirectly infringes the '216 patent by, with knowledge of the '216 patent, requiring its customers to use the infringing Product Activation feature which is not a staple article of commerce and has no substantial non-infringing uses.

<u>Mr. Brad Davis</u>

Mr. Davis will testify regarding ownership of the '216 patent, Uniloc's general business, licensing activities and history.

<u>Mr. Ric Richardson</u>

Mr. Richardson will testify regarding his inventions and his communications with Microsoft regarding his inventions and the '216 patent.

<u>Mr. Dymytriy Dushkevych</u>

Mr. Dushkevych will testify that he activated an accused product from Ukraine via the Microsoft ClearingHouse in Redmond, Washington.

The following witnesses are either current or former employees/designees of Microsoft. Each of these witnesses will testify regarding one or more technical features and benefits of the accused Product Activation technology that infringes the '216 patent, and documents used in their respective depositions relating to product activation:

Mr. Michael Negrin

Mr. Alan Nieman

Mr. Caglar Gunyakti

Mr. Greg Peiker

Ms. Susan Cole

Mr. Hakan Olsson

Mr. David Pearce

Ms. Veronica Richards

Mr. Jim Harkins

Mr. Aidan Hughes (including trial testimony given in *z4 Techs., Inc. v. Microsoft Corp. et al.*, Civil Action No. 6:06-CV-142, Eastern District of Texas)

Mr. Jeffrey Raikes (via prior testimony to the United States Senate).

**B.     Willful Infringement**

The patent laws provide for an award of increased damages where a party willfully infringes another's patent rights.  Uniloc claims that Microsoft's infringement was willful because Microsoft intentionally used Uniloc's technology, knowing it to be patented, and without first obtaining any opinion of counsel that its action were lawful.  For example, as set forth above, in 1993, Uniloc provided a sample of its patented technology to Microsoft Institute in Australia with the *proviso* that Microsoft agreed in writing not to "reverse engineer" the software code to discover how the patented technology worked.  Nonetheless, Microsoft sent the Uniloc software to Microsoft headquarters in Washington state where the software was reverse-engineered by Microsoft.  Shortly thereafter, Microsoft developed and began testing its own version of the Uniloc technology.  Microsoft then introduced the accused products without ever obtaining an opinion of counsel that it was free to do so in light of Uniloc's patent rights.  Such conduct constitutes textbook willful infringement.

Uniloc expects to call the same witnesses as identified above in support of its willful infringement claim.  In addition, Uniloc expects to call Vance Gledhill and Daniel Petre, formerly of the Microsoft Institute in Australia.

**C.     Damages**

Uniloc claims a reasonable royalty measure of damages pursuant to 35 U.S.C. § 284. The most common and accepted method of determining a reasonable royalty in a patent case is by using the so-called *Georgia-Pacific* factors set forth in the supporting law section below.

Pursuant to an analysis of the *Georgia-Pacific* factors, Uniloc claims a reasonable royalty in the amount of $2.50 for each infringing activation of an accused Microsoft product since the inception of this case in October, 2003.

Uniloc expects to call the following witnesses in support of its damages claim:

Mr. Joseph Gemini

Mr. Gemini is an expert witness who will testify regarding the value that Microsoft ascribes to the accused Product Activation technology, including how it reduces piracy and casual copying. Mr. Gemini will discuss the *Georgia-Pacific* factors and opine that a reasonable royalty for Microsoft's infringement is $2.50 per successful activation using the accused Product Activation system. Mr. Gemini will also calculate pre-judgment interest on the damages.

The following witnesses are either current or former employees of Microsoft. Each of these witnesses will testify regarding the value that Microsoft places on the accused "Product Activation" technology, including how it reduces piracy and casual copying and other substantial benefits that the patented technology provides to Microsoft:

Mr. Michael Negrin

Mr. Alan Nieman

Mr. Caglar Gunyakti

Mr. Greg Peiker

Ms. Susan Cole

Mr. Hakan Olsson

Mr. David Pearce

Ms. Veronica Richards

Mr. Jim Harkins

-5-

Mr. Aidan Hughes

Mr. Robert Moline (via testimony from *Arendi v. Microsoft*)

Uniloc expects to call experts Richard Apley and David Klausner (and possibly others in rebuttal) to testify at the bench trial on the equitable issue of inequitable conduct.

### D.   **Attorneys' Fees, Costs, Expenses**

Uniloc claims that, should it prevail at trial, it is entitled to an award of increased damages pursuant to 35 U.S.C. § 284, attorneys' fees pursuant to 35 U.S.C. § 285, and costs and expenses pursuant to 28 U.S.C. § 1920. These are matters to be determined by the Court post-trial.

### E.   **Injunctive Relief**

Uniloc has requested pursuant to 35 U.S.C. § 283 that, should it prevail at trial, Microsoft be permanently enjoined for the life of the '216 patent from any further infringement thereof.

## II.   **MEMORANDUM OF SUPPORTING LAW**

Set forth below is Uniloc's memorandum of law in support of the foregoing claims and also addressing Microsoft's invalidity and inequitable conduct defenses:

### A.   **Infringement**

#### 1.   **Direct Infringement**

A determination of infringement entails two steps: construing the meaning of the claims language and then comparing the properly construed claims to the accused products. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*in banc*), *aff'd*, 517 U.S. 370 (1996). The Court has construed the claims in this case and that construction has been affirmed by the Federal Circuit. Thus, only the second step remains to be determined.

There are two types of direct infringement. Literal infringement exists "when the accused device literally embodies each limitation of the claim." *Kraft Foods, Inc. v. Int'l Trading*

*Co.*, 203 F.3d 1362, 1370 (Fed. Cir. 2000)  Alternatively, "[a] device that does not literally

infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in

the claim is literally or equivalently present in the accused device." *Optical Discovery Corp. v.*

*Del Mar Avionics*, 208 F.3d 1324, 1335 (Fed. Cir. 2000) (quoting *Sage Prods., Inc. v. Devon*

*Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997)).

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact."

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1520 (Fed. Cir. 1995) (en

banc).  Infringement must be proved by a preponderance of the evidence. *See, e.g., In re Hayes*

*Microcomputer Products Patent Litigation*, 982 F.2d 1527, 1541 (Fed. Cir. 1992).  Infringement

is a strict liability tort and, therefore, evidence of intent, culpability or motivation is not required.

*Hilton Davis v. Warner-Jenkinson*, 62 F.3d at 1527.

## 2.    **Indirect Infringement**

Under Section 271(b), "[w]hoever actively induces infringement of a patent shall be

liable as an infringer." 35 U.S.C. § 271(b).  As the Federal Circuit has recently stated, to

establish liability under section 271(b), a patent owner must demonstrate that the defendant knew

of the patent and actively and knowingly thereafter aided and abetted another's infringement of

the patent. *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

Evidence that the inducer encouraged another's infringement suffices. *Id.* at 1306.

To prove contributory infringement, a patent owner must establish that defendant's

components have no substantial non-infringing uses and that defendant knew the combination for

which its components were made was patented and infringing. *See*, 35 U.S.C. § 271(b); *Cross*

*Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

Indirect infringement may be proved by direct or circumstantial evidence. *See, e.g.,*

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) (noting also

-7-

that circumstantial evidence may be preferred). The burden of proof of infringement is by a preponderance of the evidence. *See, e.g., In re Hayes Microcomputer Products Patent Litigation*, 982 F.2d 1527, 1541 (Fed. Cir. 1992).

### B.   Willful Infringement

"To establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 1445 (2008). "The state of mind of the accused infringer is not relevant to this objective inquiry." *Id.* "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

The Federal Circuit stated in *Seagate* that it would "leave it to future cases to further develop the application of this [new willfulness] standard." *Id.* Numerous cases since *Seagate* have addressed the issue of willful infringement under this new standard. For example, in *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 586 F. Supp.2d 1083, 1088-89 (D. Az. 2008), the court upheld a jury's willfulness finding on facts similar to this case. In *Bard*, the court found that defendant's reliance upon the same prior art for its invalidity argument as previously found by the PTO not to invalidate the patent-in-suit was evidence of willfulness. *Id.* Similarly, in the present case, Microsoft argues that the '216 patent is invalid in view of the Grundy patent which the PTO found did not invalidate the '216 patent.

### C.   Damages

Pursuant to 35 U.S.C. § 284, a patent owner is entitled to recover damages "in no event less than a reasonable royalty. This statute mandates that a claimant receive damages 'adequate'

-8-

to compensate for infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (*in banc*). The royalty may be based "upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Id.* at 1554. The hypothetical negotiation is deemed to take place at the time infringement began. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990).

As often noted by the Federal Circuit, factors relevant to the hypothetical negotiation include those set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). *See, e.g., Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003); *Unisplay, S.A. v. Am. Electronic Sign Co., Inc.*, 69 F.3d 512, 517 n. 7 (Fed. Cir. 1995) (*Georgia-Pacific* factors comprise "[a] comprehensive list of relevant factors in determining a reasonable royalty"). These factors are generally described as follows:

1.    royalties received by the patent owner for licensing the patent in suit that may prove an established royalty exists;

2.    royalty rates paid by the defendant/licensee for the use of other comparable patents;

3.    nature and scope of the license;

4.    patent owner's established policy of licensing or not licensing the patent;

5.    the commercial relationship between the licensor and licensee;

6.    the effect of selling the patented product in promoting sales of other products;

7.    duration of the remainder of the patent term;

8.    established profitability of the licensed product, and its commercial success;

9.    utility and advantage of the licensed technology compared with prior technologies;

10.   nature and benefits of the patented invention;

-9-

11.  the extent to which the infringer has made use of the invention and the value of such use;

12.  the portion of the profit or selling price customary in the particular business;

13.  portion of the realizable profit that should be credited to the invention;

14.  the opinion testimony of experts, and

15.  the amount that a licensor such as the plaintiff and a licensee such as the defendant would have agreed upon for the license.

Any doubts about the amount of damages are to be resolved against the infringer. *See, DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006).

One method of determining a reasonable royalty that has been endorsed by the Federal Circuit is to base the royalty upon a percentage of the savings that result from the use of the patented invention. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983). In *Hanson*, the Federal Circuit approved of and affirmed a royalty in the amount of one-third of the estimated savings due to use of the patented snow making machines. *Id.* at 1081. *See also Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1553(Fed. Cir.), *cert. denied*, 522 U.S. 908 (1997) (testimony that "one-quarter to one-third of the anticipated profits on the sale of the infringing machines would have constituted a reasonable royalty" constitutes "substantial evidence").

It is also "sufficient to fix a reasonable royalty as a percentage of the dollar amount of profit made by the infringer from its use of the invention, whatever that dollar amount may have from time to time been." *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1578 (Fed. Cir. 1988). A reasonable royalty, however, does not have to permit the infringer to make a profit after payment of the royalty. *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004); *Mor-Flo*, 883 F.2d at 1580. *See also; TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895,

-10-

900 (Fed. Cir.), *cert. denied*, 479 U.S. 852 (1986) (affirming reasonable royalty of 30%). *See also Fuji Photo Film Co. Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) (affirming $0.56 royalty on incremental profit of $1.09, i.e. 51%); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167-68 (Fed. Cir. 1991) (affirming reasonable royalty in the amount of 25% of sales price).

In *Eolas Technologies Inc. v. Microsoft Corp.*, 2004 WL 170334 at *1 (N.D. Ill. 2004), *vacated in part on other grounds by Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005), Judge Zagel stated:

> Microsoft argues against the validity of any damage calculation wherein the value of a complex, multi-functional product is the base from which a percentage is extracted - the percentage being the commercial value of a single infringing functionality.  Microsoft has an institutional concern over such calculations because, as is widely known, it bundles together all of its Windows functionality as seamlessly as it can.  It argues that this bundling is good engineering; others argue that it has a more nefarious purpose.  Whatever the truth, the bundling makes it very difficult for either party to assess the value of each individual component. [Footnote omitted]  Since Microsoft has created this difficulty for itself, it must bear the legal risks attendant to its way of business.

*Id.* 2004 WL 170334 at *2.

Judge Zagel recognized that Microsoft's theory, repeated in this case, if accepted, would allow an infringer to avoid paying "a cent in royalties" by bundling the infringing feature(s) with non-infringing features:

> At times, Microsoft's arguments seemed to border on proposing that an infringer could wrap together, in a single product, 150 technological innovations without having to any [*sic*] pay a cent in royalties so long as each innovation contributed only a small part of the product's overall value and was not itself a standalone product. But, few would be willing to adopt this position explicitly.

*Id.*

"When the calculation of damages is impeded by incomplete records of the infringer, adverse inferences are appropriately drawn". *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566,

1572 (Fed. Cir. 1996). *See also*, *Hartness Int'l, Inc. v. Simplimatic Eng. Co.*, 819 F.2d 1100,

1111 (Fed. Cir. 1987) ("[a]ny adverse consequences from [the infringer's] failure to keep

accurate records must rest on [the infringer]"); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d

1056, 1065 (Fed. Cir. 1983) ("any adverse consequences must rest on the infringer when the

inability to ascertain lost profits is due to the infringer's own failure to keep accurate or complete

records").

### D.    Validity

Patents are presumed by statute to be valid. 35 U.S.C. § 282.  In infringement

proceedings such as this, the presumption of validity is "strong". *See Al-Site Corp. v. VSI Intern.,*

*Inc.*, 174 F.3d 1308, 1326 (Fed. Cir. 1999).  One of the reasons underlying this presumption is

the assumption that the skilled patent examiners in the PTO have performed their duties

properly. *Al-Site v. VSI Intern.*, 174 F.3d at 1323; *Brooktree v. Advanced Micro Devices*, 977

F.2d at 1574.  Thus, the defense of patent invalidity requires proof by clear and convincing

evidence. *See, e.g., Rockwell Intern.*, 147 F.3d at 1362.

### 1.    Anticipation

When determining the validity of the claims of a patent, each claim must be considered

separately. *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1379-80 (Fed. Cir. 2002).

"Anticipation under 35 U.S.C. § 102 requires the disclosure in a single piece of prior art of each

and every limitation of a claimed invention." *Rockwell Intern.*, 147 F.3d at 1363.  Thus, to

anticipate, the single prior art reference must disclose "all of the same elements" in "exactly the

same situation and united in the same way" as the patent being challenged. *Perkin-Elmer Corp.*

*v. Computervision Corp.*, 732 F.2d 888, 894 (Fed. Cir. 1984).  Whether the prior art is

anticipating is a question of fact. *Rockwell Intern.*, 147 F.3d at 1363.  What the prior art discloses

is also a question of fact. *Id.* at 1363-64.

27407-001 4067082

## 2.   **Obviousness**

Under 35 U.S.C. § 103, a patent is rendered invalid when "the differences between he subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *See, generally, KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (2007).  As a patent retains its statutory presumption of validity throughout the obviousness determination, *Rockwell Intern. Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998), obviousness must also be proved by clear and convincing evidence. *Id.*.  The patent challenger's burden is "especially difficult" when the prior art was before the patent examiner during prosecution of the patent. *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999).

"Although it is well settled that the ultimate determination of obviousness is a question of law, it is also well understood that there are factual issues underlying the ultimate obviousness decision." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001). Specifically, the obviousness analysis is based upon four factual inquiries:

1.   the scope and content of the prior art;

2.   the differences between the claims and the prior art;

3.   the level of ordinary skill in the prior art, and

4.   secondary considerations of nonobviousness.

*McGinley v. Franklin Sports*, 262 F.3d at 1349.

It is impermissible to conclude that an invention would have been obvious solely because it is a combination of elements that were known in the art at the time of the invention. *KSR v. Teleflex*, 127 S. Ct. at 1741 ("a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art").

-13-

It is important "to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed invention [] does." *Id.*   It is legal error to place the burden on the patentee to prove that the references would not be combined. *Ashland Oil, Inc. v. Delta Resins & Refacs., Inc.*, 776 F.2d 281, 293 (Fed. Cir. 1985).   Prior art references must be considered in their entirety, including disclosure that teaches *away from* the patented invention. *Id.* at 296.

The secondary considerations, also referred to as objective evidence of nonobviousness include commercial success of the invention, long-felt need for the invention, failure of others to solve the problem, copying of the invention by others and unexpected results stemming from the invention. *Ashland Oil*, 776 F.2d at 291.   These factors "must" be considered because they "often establish that an invention appearing to have been obvious in light of the prior art was not." *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991) (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983)).

### E.   Inequitable Conduct

Inequitable conduct is an equitable issue committed to the discretion of the trial court. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (*in banc*), *cert. denied*, 490 U.S. 1067 (1989)).   "The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for the jury to decide." *Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000). *See also, General Electric Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed. Cir. 1994) ("[t]he disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature"). Thus, the issue of inequitable conduct should be the subject of a bench trial following the jury trial.

-14-

As the Federal Circuit has previously observed, the habit of defendants charging inequitable conduct in patent cases has become "an absolute plague". *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995) (citing *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)). Moreover, as explained by the Federal Circuit, "unjustified accusations of inequitable conduct are offensive and unprofessional" and "should be condemned." *Molins*, 48 F.3d at 1182.

To prevail on the issue of inequitable conduct, Microsoft must prove that: (1) Uniloc, its patent attorneys or the inventor failed to disclose material information, or submitted false or misleading material information, to the PTO, *and* (2) that Uniloc, its attorneys or the inventor acted with an intent to deceive the PTO. *Scripps Clinic Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1574 (Fed. Cir. 1991) (summary judgment of no inequitable conduct). These elements must be proved by clear and convincing evidence. *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362 (Fed. Cir. 2003).

"Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent". *Hebert v. Lisle Corp.*, 99 F.3d 1109 (Fed. Cir. 1996). "[O]pinions regarding a prior art device known to the examiner are not within the domain of material that must be submitted to the PTO." *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1378 (Fed. Cir. 2001). The Federal Circuit has previously noted, on several occasions, that patent applicants are permitted to argue their view of the prior art to the PTO:

> First, in making the argument, the inventors merely advocated a particular interpretation of the teachings of the Johnson article and the level of skill in the art, which the Examiner was free to accept or reject.
>
> *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) (citing *Akzo N.V. v. U.S. Intern. Trade Com'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986)).

-15-

> The mere fact that Du Pont attempted to distinguish the Blades process from the prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion regarding the Blades process based on the art in front of him.

*Akzo N.V. v. U.S. Intern. Trade Com'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986), *cert. denied*, 482 U.S. 909 (1987).

Patent examiners are assumed "to be familiar from their work with the level of skill in the art" and their duty "is to only issue valid patents". *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir.), *cert. denied*, 469 U.S. 821 (1984). Thus, the statutory presumption of patent validity (35 U.S.C. § 282) is based in part "on the expertise of patent examiners presumed to have done their job." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992).

Invalidity for incorrect inventorship requires proof by clear and convincing evidence. *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001). Once again, Microsoft relies primarily upon snippets of deposition testimony that fail to provide any basis to support an inequitable conduct claim based on wrong inventorship. *See, e.g., Hess v. Advanced Cardiovacular Sys., Inc.*, 106 F.3d 976, 981 (Fed. Cir. 1997) ("snippets of doctors' testimony" insufficient to prove inventorship).

The inventor(s) named in an issued patent are presumed to be correct. *Id.* at 980 (citing *Amax Fly Ash Corp. v United States*, 514 F.2d 1041, 1047 (Ct. Cl. 1975)). Thus, the burden of proving non-joinder of an inventor by clear and convincing evidence is "a heavy one". *Id.* at 980 (quoting *Garrett Corp. v. United States*, 422 F.2d 874, 880 (Ct. Cl. 1970), *cert. denied*, 400 U.S. 951 (1970)). "One does not qualify as a joint inventor by merely assisting the actual inventor." *Bd. of Trustees of Fla. State Univ. v. Am. Bioscience, Inc.*, 333 F.3d 1330, 1338 (Fed. Cir. 2003).

As stated by the Federal Circuit, once the claims have been construed, the next step in the inventorship analysis is as follows:

-16-

The second step is then to compare the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim to then determine whether the correct inventors were named.

*Trovan Ltd. v. Sokymat SA Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).

Beyond conception, a purported inventor must show that he made "a contribution *to the claimed invention* that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and [did] more than merely explain to the real inventors well-known concepts and/or the current state of the art."

*Acromed*, 253 F.3d at 1379 (emphasis added) (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344,

1351 (Fed. Cir. 1998)).

## III.   EXHIBIT LIST

Pursuant to the pre-trial schedule set forth at the hearing on January 12, 2009, exhibits

lists are due to be filed on March 13, 2009.

## IV.   MOTIONS IN LIMINE

Motions *in limine* have been filed.

## V.   JURY INSTRUCTIONS

Uniloc's proposed jury instructions are attached as Exhibit A.  An electronic copy is

being forwarded to the Court in WordPerfect format via email.

## VI.   JURY VOIR DIRE

Uniloc's proposed Jury *Voir Dire* has been filed.

## VII.   LENGTH OF TRIAL

Uniloc anticipates that it will need 4 full trial days to present its case-in-chief and one

half of a trial day to present its case in rebuttal to Microsoft's assertion of invalidity on which

Microsoft has the burden of proof.

27407-001 4067082

## VIII.   <u>**ADDITIONAL MATTERS**</u>

Microsoft's claim of inequitable conduct presents an equitable issue to be decided by the Court rather than the jury. *See, e.g., Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1584 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 906 (1995) (inequitable conduct is a matter for the trial judge, and not the jury).  Accordingly, this issue should be the subject of a separate bench trial following the jury trial.

27407-001 4067082

Dated:   February 27, 2009

**UNILOC USA, INC. and
UNILOC SINGAPORE PRIVATE LIMITED**

By:     /s/ Sheri L. Pizzi
            Sheri L. Pizzi (RI Bar #5720)
            Taylor Duane Barton & Gilman, LLP
            10 Dorrance Street; Suite 700
            Providence, RI  02903
            Telephone:   (401) 273-7171
            Facsimile:   (401) 273-2904

Dated:   February 27, 2009

**OF COUNSEL:**

By:     /s/ Dean G. Bostock
            Paul J. Hayes, Esq.
            Dean G. Bostock, Esq.
            Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
            One Financial Center
            Boston, MA  02111
            Telephone:   (617) 542-6000
            Facsimile:   (617) 542-2241

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on February 27, 2009.

          /s/ Dean G. Bostock

27407-001 4067082