# Exhibit M

<pre>
 1                IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF RHODE ISLAND
 3
 4
 5   * * * * * * * * * * *  *   C.A. NO. 03-440
     UNILOC USA, INC., et al *
 6                           *
     VS.                     *   FEBRUARY 27, 2009
 7                           *   10:26 A.M.
     MICROSOFT CORPORATION,  *
 8   et al                   *
                             *   PROVIDENCE, RI
 9   * * * * * * * * * * *  *
10
11            BEFORE THE HONORABLE WILLIAM E. SMITH
12                         DISTRICT JUDGE
13              (Daubert Hearing/Motions in Limine)
14
15   **APPEARANCES**:
16
     FOR THE PLAINTIFFS:      PAUL J. HAYES, ESQ.
17                            DEAN G. BOSTOCK, ESQ.
                              Mintz, Levin, Cohn, Ferris,
18                            Glovsky & Popeo, P.C.
                              One Financial Center
19                            Boston, MA  02111

20                            SHERI L. PIZZI, ESQ.
                              Taylor, Duane, Barton & Gilman,
21                            LLP
                              10 Dorrance Street
22                            Suite 700
                              Providence, RI  02903
23
24
25
</pre>

1  cross-examine Mr. Napper, he'll deal with them, fine.
2  But I don't want you to take it at face value
3  because I don't think it's productive for me to go
4  through every document that Mr. Hayes put up and show
5  you chapter and verse why none of those means what he
6  says they mean, okay? Except to say that there's
7  another side to the story there, which they're entitled
8  to bring out.
9  THE COURT: All right. Well, we need to wind
10 this up. So I don't know if you want to say a few
11 words about Gemini. But, I mean, I've read your brief.
12 I understand your argument here. Gemini is an easier
13 challenge in the sense that it is -- it's a pretty
14 straightforward question. I mean, it's this rule of
15 thumb, and you're saying it doesn't stand up to 702 in
16 Daubert, and there's never been a serious analysis done
17 on that, and, you know, Mr. Hayes is saying it's been
18 used for a thousand years.
19 MR. SCHERKENBACH: Right.
20 THE COURT: And, you know, this isn't the time
21 to throw it out. I understand the issue.
22 MR. SCHERKENBACH: There's a -- and, Your Honor,
23 I won't go over that again. We've talked about the 25%
24 part, but there's actually a very important -- oops,
25 excuse me -- second part to the motion on Mr. Gemini

```
 1    that has nothing to do with the 25% rule.  And,
 2    frankly, if you're inclined to just let that one go
 3    because it's been used in other cases, albeit without
 4    challenge, you know, so be it.
 5          But there -- in this case, whatever you think of
 6    the 25% rule, Mr. Gemini's theory can't go to the jury
 7    because it rests on a fundamental assumption that's
 8    just wrong.  There's absolutely no evidentiary basis
 9    for it.
10          I'm projecting here the magic sentence from this
11    product support services memo -- I have it up on your
12    screen, if you want to see it --
13          THE COURT:  Yep.
14          MR. SCHERKENBACH:  Okay.  This memo, and
15    specifically Page 25 of this memo, under Security, two
16    sentences, I guess, this is the heart of his analysis,
17    and it's completely bogus, okay?
18          THE COURT:  Yeah, this is the 10-$10,000, okay.
19          MR. SCHERKENBACH:  Yes, this is the 10-10,000
20    issue.  Obviously, it was briefed in detail, so I'm not
21    going to go over everything that's in the brief.  But,
22    in round numbers, you have a man who -- well, first of
23    all, they studiously avoided asking the relevant
24    witnesses what this really meant in deposition, plain
25    and simple, okay?  Because they know it doesn't mean
```

1  what that Microsoft document means?  He's not, okay?
2  And it doesn't matter whether the document itself is
3  independently admissible or any of that.  All those
4  arguments by them are just misdirection.
5       They have to lay the foundation that somebody --
6  that there's some evidence that somebody thought these
7  numbers were reflective of the value of product
8  activation, and there is absolutely none.
9       THE COURT:  Well, there's the words themselves.
10 I mean, that's the problem you have.  Now, I -- you
11 know, somebody at Microsoft wrote this.
12      MR. SCHERKENBACH:  Right.
13      THE COURT:  Obviously, they weren't thinking of
14 this case when they wrote it, but they wrote what they
15 wrote, and so the plain meaning of the words, Product
16 key is worth anywhere between $10 and $10,000,
17 depending on usage, I mean --
18      MR. SCHERKENBACH:  The product key.
19      THE COURT:  Right.  But the product key -- I
20 mean, a reasonable reading of the product key is
21 product activation.  It's under the term, Security,
22      I'm not disputing that he's wrong.  You may be
23 able to show that he's wrong, but you're saying how is
24 he entitled to say that, that's what this means?  Well,
25 I think he can just read it and conclude that it means

1   what it says.  You might be able to show that he's
2   being clever, but it does say what it says.
3           MR. SCHERKENBACH:  Well, I mean, arguing with
4   you, I know it's going to get me nowhere, but I mean,
5   it -- a document that's written before product
6   activation exists that talks about a product key?  I
7   mean, I don't see that.  I mean, it would be one thing
8   if they had some evidence somewhere from some witness
9   that made that link, but they don't.
10          And whether it's a reasonable argument or not
11  even isn't actually even the point.  It's a fundamental
12  failure, as a factual matter, as an evidentiary matter,
13  to link -- to try to link this up.
14          They could have asked Ms. Richards, hey,
15  Ms. Richards, I know you said you don't know much --
16  never mind the fact that she said she didn't know
17  anything about product activation, they could have
18  asked her, they could have said, Ms. Richards, isn't it
19  fair to read this to suggest that the value of product
20  activation, as used in Microsoft Office, was 10 to
21  $10,000?
22          I know for sure what she would have said, but
23  they could have asked her.  They could have asked
24  Jim Harkins that question.  They could have deposed the
25  other people on the face of the memo, they could have